1  Richard G. McCracken SBN 2748
   Andrew J. Kahn, SBN 3751
2  Paul L. More, SBN 9628
   McCRACKEN STEMERMAN & HOLSBERRY
3  1630 S. Commerce St.
   Las Vegas, NV 89101
4  Telephone:    (702) 386-5132
   Fax:          (415) 597-7201
5  Email:        rmccracken@dcbsf.com
6                ajk@dcbsf.com
                 pmore@dcbsf.com
7
   *Attorneys for Plaintiffs*
8

9                    UNITED STATES DISTRICT COURT

10                        DISTRICT OF NEVADA

11

12  LAS VEGAS POLICE PROTECTIVE ASSOCIATION
    METRO INC.; LAS VEGAS POLICE PROTECTIVE
13  ASSOCIATION CIVILIAN EMPLOYEES, INC.; LAS     CASE NO.
    VEGAS METRO POLICE MANAGERS &
14  SUPERVISORS ASSOCIATION,
                                                  **DECLARATION OF MARK
15              Plaintiffs,                        CHAPARIAN IN SUPPORT OF
                                                  MOTION FOR PRELIMINARY
16        vs.                                     INJUNCTION**
17
    LAS VEGAS METROPOLITAN POLICE
18  DEPARTMENT;
19
                Defendant.
20

21

22  I, Mark Chaparian, declare:

23      1.  I am the Executive Director of Plaintiff Las Vegas Police Protective Association Metro

24          ("PPA) and a Metro officer who has been granted paid leave to work for the PPA

25          pursuant to our Association's collective bargaining agreement with Metro. The PPA

26          represents a bargaining unit of approximately 2835 officers, of which approximately

27          2400 are PPA members.  All the PPA's representational staff are like me, Metro officers

28          on leave (a total of 7 of us) except for our attorney David Roger. A true and correct copy

                                          1

of the applicable CBA leave provision is attached hereto as Exhibit A. Similar provisions have been in prior agreements for many years. Our agreement is set to expire June 30, 2016. Metro has made clear it will not continue those provisions in effect unless our Association directly reimburses Metro, even though we believe we have already given consideration for those provisions in prior agreements.

2.     A part of the PPA's activities is to direct the administration of health benefits for Metro officers and their families, as Metro does not have a single person performing benefit functions, unlike what most other employers do. Four of us on-leave Metro employees use some of our leave time to sit on the board of trustees governing the health plan; most of that work is nonadversarial in nature.

3.     If I and my fellow PPA representatives are deprived of this union leave, we do not have sufficient vacation time to cover more than a small percentage of the work we have been doing, and accordingly either the PPA will have to begin paying us directly or we will have to curtail our representational activities. Neither I nor my fellow representatives would want to go onto the Association's payroll because we would lose our commissioned status as a peace officer, be taken out of the health and PERS plans (which would cost us significantly but not in a way that could be readily calculated). Our Association cannot afford, except on a short-term basis to pay for all of us representatives without drastically curtailing our other representational activities such as lobbying and provision of legal counsel to members. To reimburse Metro or pay for us to be on the PPA payroll, PPA would have to increase dues receipts substantially, and that would require a vote of the membership, assuming members were not dropping out, and there would be significant opposition to a dues increase. Once members drop out, we will be less effective as an organization because we will speak for a smaller percentage of the department's officers, and not have much communication with the non-union officers (who will not be on our mailing lists and will not have the right to attend meetings or vote). If dues increase, members would demand the PPA seek higher wages at the bargaining table to cover this increase, which will increase the difficulty and cost of

2

1    negotiations for Metro and PPA, and consume more time and resources for both the PPA

2    and management.

3        4.    We on-leave representatives spend much of our time communicating with

4    legislators and managers about Metro employees' needs and problems, and we also

5    communicate with the employees about proposed legislation and proposed or past

6    management decisions, including bargaining issues and grievances. Much of our work

7    fulfills the Legislature's requirement in NRS 289.080 that a peace officer under

8    investigation for misconduct is entitled to have two representatives present during their

9    interrogation or hearing. If SB 241 is implemented by Metro we will likely not be able to

10   fully staff such interrogations and hearings.

11       5.    Some of what we do with our paid leave is to encourage Metro employees

12   to join the PPA, and we will no longer be able to do that to the same extent if we have our

13   leave hours cut, and hence the PPA is likely to lose dues revenue from that reduction in

14   organizing.

15       6.    We believe Metro has provided paid leaves within the past several years

16   for employees to work for and with the following groups that engage in advocacy work:

17   Nevada Chiefs and Sheriffs Associations; Police Athletic League; Ethnic labor groups;

18   DARE (now disbanded); and crisis intervention/advocacy groups such as PEAP. Metro

19   also has sent managers on paid status to lobby in Carson City and before the County and

20   various cities. We are aware of no legislative ban on such activities, but only on our paid

21   leave.

22       7.    Metro and the public benefit from us having paid leave: (a) Metro might

23   well have to pay more if it were to hire other individuals or entities to handle the health

24   benefit functions that we perform; (b) we are more familiar with Metro's current

25   conditions than someone hired from the outside to represent these employees would be,

26   and we have access to areas which a civilian is ordinarily barred from such as jails and

27   crime scenes where we do much of our work investigating use-of-force incidents; having

28   outside representatives take over for us would require Metro go through the process of

1    determining whether to grant them security clearances; (c) being on paid leave allows us

2    to conduct grievance meetings, investigative meetings, committee meetings and meet-

3    and-confer sessions during our managers' regular workdays rather than expecting them to

4    meet after hours or on their days off; both we and our management counterparts would

5    end up working excessive hours and becoming exhausted (and hence perhaps dangerous

6    to ourselves and others) if every meeting had to occur outside representatives' regular

7    work hours; (d) our being available immediately on the job allows meetings to occur

8    while or immediately after a problem occurs on the job (and at a time and place where we

9    representatives can directly observe conditions), rather than having to occur long after the

10   fact and away from the worksite because the representative was instead required at the

11   time of events to be on duty elsewhere at the agency.  This makes for more sound

12   decision making on the part of both management and our Association.

13          8.      We at the PPA reduce Metro's problems in recruitment and retention of

14   public employees and morale problems by gathering information from current and

15   prospective employees and the community and providing it to government officials, and

16   by communicating information to Metro employees.  Many times we have counseled

17   employees with performance issues to obtain outside help with their personal problems,

18   problems they never would have admitted to management representatives.

19          9.      I have read the Complaint in this action and it is true and correct of my

20   own personal knowledge.

21   I declare under penalty of perjury of the laws of the United States and Nevada that the foregoing

22   is true and correct. Executed this 7th day of October 2015.

23

24

25   MARK CHAPARIAN

26

27

28

4

# Exhibit A

# COLLECTIVE BARGAINING AGREEMENT

between

# Las Vegas Metropolitan Police Department

&

# LAS VEGAS POLICE PROTECTIVE ASSOCIATION

July 1, 2014 – June 30, 2016

# ARTICLE 5 – ASSOCIATION BUSINESS

*5.1 Leave Hours.* The Department agrees to provide 1000 hours each fiscal year, accumulative for the duration of this contract, for the use of PPA members to conduct Association business associated with the administration of the collective bargaining agreement which is inclusive of representation of bargaining unit employees and including day-to-day operations, i.e., conventions, seminars, training, and lobbying during the legislative session. Once the maximum yearly hours are exceeded, vacation leave will be used.

*5.2 Limits on Use.* No more than one individual from a section/unit/squad may use Association leave at any given time. Exceptions may be granted by the Sheriff/designee.

*5.3 Association Authorization.* The Executive Director, or his designee, will determine the use of Association leave.

*5.4 Application for Leave.* Members relieved from duty for purposes listed above will submit LVMPD 2 (Application for Leave) through the chain of command to Payroll. The application for leave will indicate the hours absented are for Association business.

*5.5 Full-Time Association Positions.* The Association will be allowed to maintain one full time employee representative for every 400 employees in the bargaining unit. The Association will be allowed to maintain eight (8) full-time employee positions until a successor collective bargaining agreement is signed into effect. During the term of this agreement, the PPA agrees not to request any additional full-time representatives. Such positions will be filled by appointment of the Executive Director and confirmation of the LVPPA Board of Directors. The LVPPA Board of Directors may also elect to reimburse the Department for hours used beyond the hours defined in 5.1 for one additional full-time position.

Employees who are assigned to the Association full time after July 1, 2009, will be entitled to ADP. Upon completion of the term, the Executive Director, Assistant Executive Director(s), and full time representatives shall return to the previously held classification, position, and work assignment within the Department, or any successor position such members would have been reclassified had they not been serving in this capacity. Seniority will apply as if the member remained in that assignment. Members serving in a full time capacity shall be assigned to the Office of the Deputy Chief, Professional Standards Division. The Deputy Chief will be informed of all annual, sick, and/or other leaves used by the members serving in a full-time capacity.

*5.6 Duties of Compensated Representatives.* The representatives so elected or appointed shall devote the full time provided by the Department to matters of collective bargaining or representation for Las Vegas Metropolitan Police Department's commissioned employees. Any time devoted by the representatives to employees of any other entity must be on other than the hours provided by the Department for this position.

*5.7 Bulletin Boards.* It is the right of the PPA Board of Directors or their designee to use the provided space on the bulletin boards for the posting of notices concerning legitimate Association business. A copy of all material to be posted will be sent to the Sheriff and/or his representative when posted.

It is understood that no material will be posted, distributed, or circulated by any employee while in or on LVMPD property which contains:

- Untrue personal attacks upon any member or any other employee;

- Untrue scandalous, scurrilous, or derogatory attacks upon Administration or the LVPPA;

- Untrue attacks on any other employee association regardless of whether the organization has local membership;

- Attacks on and/or favorable comments regarding a candidate for any public political office.

Any Association member claiming that this section has been violated is responsible for filing a Brief of Complaint.