# Exhibit A

# COLLECTIVE BARGAINING AGREEMENT

between

## Las Vegas Metropolitan Police Department

&

## LAS VEGAS POLICE PROTECTIVE ASSOCIATION

July 1, 2014 – June 30, 2016

# Table of Contents

PREAMBLE ............................................................................................................ 1

ARTICLE 1 - RECOGNITION ............................................................................ 1

ARTICLE 2 - SCOPE OF AGREEMENT ........................................................... 1

    2.1 Bargaining Unit. ........................................................................................ 1

    2.2 List of Eligible Classes. ............................................................................ 1

ARTICLE 3 - DEFINITIONS .............................................................................. 2

ARTICLE 4 - ASSOCIATION SECURITY ........................................................ 2

    4.1 Check Off. .................................................................................................. 2

    4.2 Hold Harmless. .......................................................................................... 2

    4.3 Errors. ......................................................................................................... 2

    4.4 Notice of Investigatory Interviews. ........................................................... 2

ARTICLE 5 - ASSOCIATION BUSINESS .......................................................... 4

    5.1 Leave Hours. .............................................................................................. 4

    5.2 Limits on Use. ............................................................................................ 4

    5.3 Association Authorization. .......................................................................... 4

    5.4 Application for Leave. ................................................................................ 4

    5.5 Full-Time Association Positions. ............................................................... 4

    5.6 Duties of Compensated Representatives. ................................................... 4

    5.7 Bulletin Boards. ......................................................................................... 4

    5.8 Access to Briefings. ................................................................................... 5

ARTICLE 6 - STRIKES AND LOCKOUTS ....................................................... 5

    6.1 Strike. ......................................................................................................... 5

    6.2 Lockout. ..................................................................................................... 5

ARTICLE 7 - MANAGEMENT RIGHTS ........................................................... 5

ARTICLE 8 - HOLIDAYS .................................................................................... 7

    8.1 Recognized Days. ....................................................................................... 7

    8.2 Weekend Holidays. .................................................................................... 7

    8.3 Eligibility. .................................................................................................. 7

    8.4 Holiday Work. ............................................................................................ 7

    8.5 Holiday Compensation. .............................................................................. 7

    8.6 Day Off Work. ........................................................................................... 7

    8.7 Compensation Options. .............................................................................. 8

ARTICLE 9 - VACATION LEAVE ..................................................................... 8

9.1 Purpose. .......................................................................................... 8
9.2 Accrual. ........................................................................................... 8
9.3 Accumulation. .................................................................................. 8
9.4 Approval. ......................................................................................... 8
9.5 Advance Leave. ................................................................................ 8
9.6 Death of Employee. .......................................................................... 8
9.7 Sellback. .......................................................................................... 8
9.8 Professional Leave Days. ................................................................. 9
ARTICLE 10 - SICK LEAVE ................................................................... 9
10.1 Accrual. ......................................................................................... 9
10.2 Pay. ............................................................................................... 9
10.3 Utilization. ..................................................................................... 9
10.4 Approval/Notice. ............................................................................ 9
10.5 Immediate Family. ......................................................................... 10
10.6 Family and Medical Leave .............................................................. 10
10.7 Reporting Requirements. ............................................................... 10
10.8 Residence Requirement. ................................................................ 10
10.9 Abuse or Excessive Use. ............................................................... 10
10.10 Bonus Time. ................................................................................ 10
10.11 Sick Buyback. .............................................................................. 10
10.12 Cash Out. .................................................................................... 11
10.13 Death. ......................................................................................... 11
10.14 Bridged Time. .............................................................................. 12
ARTICLE 11 - SPECIAL LEAVES ........................................................... 12
11.1 Military Leave. ............................................................................... 12
11.2 Leave Without Pay. ........................................................................ 13
11.3 Maternity/Paternity Leave. ............................................................. 14
11.4 Application and Examination Leave. ............................................... 14
11.5 Catastrophic Leave. ....................................................................... 14
ARTICLE 12 - GRIEVANCE PROCEDURE .............................................. 16
12.1 Grievance Procedure. ..................................................................... 16
(A) Purpose. ......................................................................................... 16
(B) Definition. ....................................................................................... 16
(C) Representation. ............................................................................... 16
(D) Process. .......................................................................................... 16

(E) Resolution. ................................................................................................................ 20

(F) Time Limits. ............................................................................................................. 20

(G) Documentation. ........................................................................................................ 21

ARTICLE 13 - COMPENSATION ....................................................................................... 22

13.1 Salaries. ................................................................................................................... 22

Funding. .......................................................................................................................... 22

13.2 Assignment Differential Pay. ................................................................................. 23

13.3 Longevity. ............................................................................................................... 23

13.4 Jury/Court Pay. ...................................................................................................... 24

Jury. ................................................................................................................................. 24

On-Duty Court ................................................................................................................ 24

Off-Duty Court. ............................................................................................................... 24

13.5 Retirement. ............................................................................................................. 24

13.6 Shift Differential. .................................................................................................... 24

13.7 Spanish Pay. ........................................................................................................... 24

13.8 K-9 Pay. ................................................................................................................... 25

13.9 Education Incentive. ............................................................................................... 25

13.10 Acting Pay. ............................................................................................................ 25

13.11 Field Training Officer Pay. ................................................................................... 26

ARTICLE 14 - CLOTHING/EQUIPMENT ALLOWANCE ................................................. 26

14.1 Clothing and Equipment Allowance. ..................................................................... 26

14.2 Entitlement. ............................................................................................................ 26

ARTICLE 15 - HEALTH & WELFARE BENEFITS ........................................................... 27

15.1 Health Insurance. ................................................................................................... 27

15.2 Contributions. ........................................................................................................ 27

15.3 Deductions. ............................................................................................................. 27

15.4 Flexible Spending Account. ................................................................................... 27

15.5 Retirement Medical Trust Fund. ........................................................................... 27

ARTICLE 16 - DISABILITY ............................................................................................... 28

16.1 Service Connected. ................................................................................................. 28

16.2 Compensation Integration. .................................................................................... 28

16.3 Sick Leave Utilization. ........................................................................................... 28

16.4 Compliance with Administrative Procedures. ....................................................... 28

16.5 Hours Computation. ............................................................................................... 28

ARTICLE 17 - REDUCTION IN FORCE ........................................................................... 28

17.1 Notice to Association. .................................................................................................. 28

17.2 Provisions. ..................................................................................................................... 28

17.3 Seniority Lists. ............................................................................................................... 30

17.4 Specialized Assignments. ............................................................................................. 30

ARTICLE 18 - HOURS ............................................................................................................. 30

18.1 Work Week. .................................................................................................................... 30

18.2 Tour of Duty. .................................................................................................................. 30

18.3 Tour of Duty Change ..................................................................................................... 30

18.4 Overtime. ....................................................................................................................... 30

Compensatory Time. ....................................................................................................... 31

18.5 Callback. ........................................................................................................................ 31

ARTICLE 19 - SENIORITY ....................................................................................................... 32

19.1 Definition. ...................................................................................................................... 32

19.2 Bridging Time. ............................................................................................................... 32

19.3 Application. .................................................................................................................... 32

ARTICLE 20 - ACCIDENT PREVENTION BANK ..................................................................... 35

20.1 Accident Prevention Bank. ........................................................................................... 35

20.2 Accrual and Use of Hours. ............................................................................................ 35

ARTICLE 21 - LABOR/MANAGEMENT COMMITTEE ............................................................. 36

21.1 Meetings. ....................................................................................................................... 36

21.2 Purpose. ........................................................................................................................ 36

21.3 Notice to Supervisors. .................................................................................................. 36

21.4 Compensation. .............................................................................................................. 36

21.5 Resolutions. ................................................................................................................... 36

ARTICLE 22 - DUTY WEAPON ............................................................................................... 36

22.1 Maintenance. ................................................................................................................. 36

22.2 Replacement. ................................................................................................................ 36

22.3 Stock. ............................................................................................................................ 36

ARTICLE 23 - TRANSFERS ..................................................................................................... 37

ARTICLE 24 - RANDOM DRUG TESTING .............................................................................. 37

24.1 Parameters. ................................................................................................................... 37

24.2 Voluntary Identification. ................................................................................................ 38

ARTICLE 25 - GENERAL PROVISIONS .................................................................................. 38

25.1 Savings Clause. ............................................................................................................ 38

25.2 Contract/Civil Service Rule Duplication. ...................................................................... 38

25.3 Personnel Files. ................................................................................................. 38

    Employee Access. .............................................................................................. 38

    Employee Copies. .............................................................................................. 38

    Rebuttal Statement. ........................................................................................... 38

    Access by Others............................................................................................... 38

    Purging. ............................................................................................................. 38

    Notice of Placement of Item in File.................................................................. 40

    Official File. ...................................................................................................... 40

    Information Contained in File............................................................................ 40

25.4 Performance Appraisals. ..................................................................................... 40

25.5 Legal Representation. ......................................................................................... 41

ARTICLE 26 - TERM OF AGREEMENT .................................................................. 42

ATTACHMENT A  Salary Schedule .......................................................................... 43

ATTACHMENT B  NRS 289.010 through 289.120 ................................................... 44

# PREAMBLE

**WHEREAS,** the Department is engaged in furnishing essential public services vital to the health, safety, and welfare of the population of the City of Las Vegas and the County of Clark; and

**WHEREAS,** both the Department and its employees have a high degree of responsibility to the public in so serving the public without interruption of essential services; and

**WHEREAS,** both parties recognize this mutual responsibility, they have entered into this Agreement as an instrument and means of maintaining the existing harmonious relationship between the Department and its employees and with the intention and desire to foster and promote the responsibility of a sound, stable, and peaceful labor relations between the Department and its employees; and

**WHEREAS,** the parties recognize that this Agreement is not intended to modify any of the discretionary authority vested in the Department by the statutes of the State of Nevada; and

**WHEREAS,** the parties have reached an understanding concerning wages, hours, and conditions of employment and have caused the understanding to be set out in this Memorandum of Agreement.

**NOW, THEREFORE,** the parties do agree as follows:

# ARTICLE 1 - RECOGNITION

Pursuant to the provisions of the Local Government Employee-Management Relations Act, Chapter 288, Nevada Revised Statutes as amended, the Las Vegas Metropolitan Police Department, hereinafter referred to as "Department", recognizes the Las Vegas Police Protective Association, Inc., hereinafter referred to as the "Association", as the exclusive representative of the eligible Department employees as hereinafter defined for the purpose of collective bargaining.  The Association makes the Agreement in its capacity as the exclusive bargaining agent for the Department employees in the bargaining unit.

Only members in good standing with the Association are eligible to vote on the contents of this contract drawn as the result of collective bargaining.

The Department and Association agree that members of the Department who have "Peace Officer" status are covered by N.R.S. 289 (Rights of Peace Officers) - Attachment B.  Both parties will also comply with future legislative changes to N.R.S. 289.  Those changes, if any, will supersede the rights listed in Attachment B.

# ARTICLE 2 - SCOPE OF AGREEMENT

*2.1 Bargaining Unit.*  The term "employee" as used in this Agreement applies to those persons having a regular commissioned Civil Service appointment to the work force of the Department, excluding, however, appointive and other administrative employees, supervisory employees, confidential employees, employees in other recognized bargaining units, and temporary employees, except as specified below.

*2.2 List of Eligible Classes.*

|                       | Salary Range |
| --------------------- | ------------ |
| Police Officer II     | 21           |
| Corrections Officer II | 21          |
| Police Officer I      | 20           |
| Corrections Officer I | 20           |

# ARTICLE 3 - DEFINITIONS

This Agreement is made pursuant to and in conjunction with the Local Government Employee-Management Relations Act of the State of Nevada, and all terms used herein which are terms used in the Local Government Employee-Management Relations Act shall have definitions ascribed to them by said Act.

# ARTICLE 4 - ASSOCIATION SECURITY

*4.1 Check Off.* The Department agrees to deduct from the paycheck of each employee within the bargaining unit who has signed an authorized payroll deduction card such amount as has been designated by the Association as Association dues and is so certified by the Treasurer of the Association. The Association will certify to the Department, in writing, the current rate of membership dues. The Department will be notified of any change in the rate of membership dues 30 days prior to the effective date of such change.

Such funds shall be remitted by the Department to the Treasurer of the Association within one (1) month after such deductions. Dues deduction authorization shall be irrevocable for a period of one (1) year and automatically renewed each year thereafter commencing October 1, except that authorization may be withdrawn by an employee during a period of 20 days each year ending October 20. Members of the bargaining unit who are promoted to sergeant may withdraw their payroll deduction authorization during the first 30 days following their promotion, regardless of the date, but thereafter are limited to the same withdraw period set forth above.

The Department will not be required to honor any pay period deduction authorizations that are delivered to the Payroll Section after the beginning of the pay period during which the deductions should start.

*4.2 Hold Harmless.* The Association agrees to indemnify and hold the Department harmless against any and all claims, suits, orders, or judgments brought or issued against the Department as a result of any action taken or not taken by the Department in conformance with the provisions of this Article.

*4.3 Errors.* The Association agrees to refund to the Department any monies paid to it in error on account of the payroll deduction provisions herein upon presentation of proper evidence thereof.

*4.4 Notice of Investigatory Interviews.* Whenever an employee covered by the collective bargaining agreement is a party to an internal investigation as a subject or witness and is so notified as per Department Procedure 5/101.26, such notice shall be e-mailed to the Association office.

Notification to the Association and employee shall be completed the same business day. If the notice is e-mailed to the Association anytime after 3:00 p.m. on the last business day of the week, the Association shall also receive telephonic notification. If no telephonic notification is provided, there shall be at least one intervening business day between the e-mailing of the notice and the interview.

A. The parties recognize the rights of all police officers under NRS 289 (Attachment B). The Association will receive a copy of all notices and summaries of any internal investigation of an employee at the time the notice and summary is sent to the employee via e-mail or 1000 miler.

B. Employees called for a witness interview in an investigation will have the same rights as subject employees and will be entitled to representation during any interview.

C. The parties agree that on any investigation conducted pursuant to NRS 289, a summary of facts will be provided to the subject employee who is to be interviewed. For purposes of this section, "summary" means a description of the allegation, with the locations, time, and date. If the location, time, or date are unknown, the notice will so state. If there are multiple allegations, then the summary of facts must address all of the allegations and include a description of the misconduct or performance problem.

The Association may raise issue with the named investigator as required by NRS 289 if it is believed there is a conflict of interest. In such instance, the matter shall be presented to the Bureau

Commander of Professional Standards and his/her decision regarding the matter shall not be appealable.

D. When alleged employee misconduct is discovered during the course of an internal investigation unrelated to the original matter under investigation, a second complaint number will be obtained and a separate investigation initiated into the unrelated misconduct. This provision will not apply if it is determined an employee was untruthful during the investigation. In such instances, the finding will be "misconduct not based on complaint".

E. When the Department receives notice of a complaint against an employee, that employee will be notified as to the existence of the complaint through the employee's chain of command as expeditiously as practicable. Such notice shall be made via e-mail or 1000 miler. In situations where covert actions may be necessary to properly engage an investigation, no notice will be given the employee until those actions are completed. Additionally, the parties agreed that notice will only be necessary when it is determined an investigation will be undertaken. This alleviates the need for any notice while a supervisor or IA is conducting a preliminary review to determine if an investigation should go forward.

F. Untruthfulness during an internal investigation is defined as the willful making of a knowingly false statement of material fact. This finding shall be reviewed and approved by the Assistant Sheriff responsible for the Office of Internal Affairs prior to a disposition being sent out.

G. When the Department possesses information or facts which contradict an employee's recollection of those facts under investigation, the investigator will allow the employee an opportunity to explain an answer or refute the negative implication of his/her recollection after informing the employee of the specific contradiction(s).

H. When the Department possesses information in an electronic, audio, video, or written format, the investigator will allow the employee an opportunity to explain an answer or refute the negative implication of his/her recollection after the employee is given the opportunity to review the media evidence.

I. On any statement, report, or document prepared at the direction of the Department for an internal investigation, the protections afforded to employees pursuant to NRS 289 and under the doctrines set forth in Garrity v. New Jersey, 385 U.S. 493 (1967), will apply to all employees.

J. Employees, whether a witness or subject employee, will receive 48-hours notice of an interview unless such notice is specifically waived in writing with the employee's signature. If a subject employee waives the notice period, this waiver must also be approved by the Association. A reasonable extension will be granted for a subject employee at the request of the Association.

K. As a guideline, no interview session will extend more than four (4) hours unless the employee agrees to more time in one 24-hour period. Regular breaks will occur during the interview based on any person's request attending the interview.

L. When charged with a criminal offense, the Department may, at the employee and the Association's request, waive an interview of the subject employee if there are sufficient facts present to make a fair determination in the case.

M. The Association, an employee or Labor Relations may suggest that a case meets the criteria where a formal investigation may be waived. If the parties agree to the alleged allegation and the appropriate level of discipline, the investigation and any subsequent right to the grievance procedure will be waived. This agreement will be reflected in a letter sent from the Association to the Internal Affairs Bureau Lieutenant through Labor Relations.

# ARTICLE 5 – ASSOCIATION BUSINESS

**5.1 Leave Hours.** The Department agrees to provide 1000 hours each fiscal year, accumulative for the duration of this contract, for the use of PPA members to conduct Association business associated with the administration of the collective bargaining agreement which is inclusive of representation of bargaining unit employees and including day-to-day operations, i.e., conventions, seminars, training, and lobbying during the legislative session. Once the maximum yearly hours are exceeded, vacation leave will be used.

**5.2 Limits on Use.** No more than one individual from a section/unit/squad may use Association leave at any given time. Exceptions may be granted by the Sheriff/designee.

**5.3 Association Authorization.** The Executive Director, or his designee, will determine the use of Association leave.

**5.4 Application for Leave.** Members relieved from duty for purposes listed above will submit LVMPD 2 (Application for Leave) through the chain of command to Payroll. The application for leave will indicate the hours absented are for Association business.

**5.5 Full-Time Association Positions.** The Association will be allowed to maintain one full time employee representative for every 400 employees in the bargaining unit. The Association will be allowed to maintain eight (8) full-time employee positions until a successor collective bargaining agreement is signed into effect. During the term of this agreement, the PPA agrees not to request any additional full-time representatives. Such positions will be filled by appointment of the Executive Director and confirmation of the LVPPA Board of Directors. The LVPPA Board of Directors may also elect to reimburse the Department for hours used beyond the hours defined in 5.1 for one additional full-time position.

Employees who are assigned to the Association full time after July 1, 2009, will be entitled to ADP.
Upon completion of the term, the Executive Director, Assistant Executive Director(s), and full time representatives shall return to the previously held classification, position, and work assignment within the Department, or any successor position such members would have been reclassified had they not been serving in this capacity. Seniority will apply as if the member remained in that assignment. Members serving in a full time capacity shall be assigned to the Office of the Deputy Chief, Professional Standards Division. The Deputy Chief will be informed of all annual, sick, and/or other leaves used by the members serving in a full-time capacity.

**5.6 Duties of Compensated Representatives.** The representatives so elected or appointed shall devote the full time provided by the Department to matters of collective bargaining or representation for Las Vegas Metropolitan Police Department's commissioned employees. Any time devoted by the representatives to employees of any other entity must be on other than the hours provided by the Department for this position.

**5.7 Bulletin Boards.** It is the right of the PPA Board of Directors or their designee to use the provided space on the bulletin boards for the posting of notices concerning legitimate Association business. A copy of all material to be posted will be sent to the Sheriff and/or his representative when posted.

It is understood that no material will be posted, distributed, or circulated by any employee while in or on LVMPD property which contains:

- Untrue personal attacks upon any member or any other employee;

- Untrue scandalous, scurrilous, or derogatory attacks upon Administration or the LVPPA;

- Untrue attacks on any other employee association regardless of whether the organization has local membership;

- Attacks on and/or favorable comments regarding a candidate for any public political office.

Any Association member claiming that this section has been violated is responsible for filing a Brief of Complaint.

LVMPD & LVPPA - July 1, 2014 - June 30, 2016                                    Page | 4

*5.8 Access to Briefings.* The Association is entitled to address members of the bargaining unit at briefing sessions on issues relating to the administration of this collective bargaining agreement. Discussions relating to the Association's recognition as the exclusive bargaining agent are not authorized. Access to briefing sessions will be approved by the Executive Director and the appropriate Division Chief who will mutually agree upon the schedule and amount of time taken by the Association during such briefing sessions.

When the elected bureau representative needs to address their members, they will notify the supervisor before briefing of the need to discuss Association matters. The elected bureau representative does not need to obtain prior approval from the Division Chief. The supervisor will conduct the briefing and upon conclusion allow the members of the Association appropriate time to meet with Association Representatives, so long as this does not impede with the regular operations of the Department.

*Annotation: This section was added to clarify when it is appropriate for the Association to attend and make presentations at Department briefing sessions. It was agreed between the parties that such Association business would be limited to contract administration and interpretation, legislative and insurance related issues.*

## ARTICLE 6 - STRIKES AND LOCKOUTS

*6.1 Strike.* The Association will not promote, sponsor, or engage in any strike or any slowdown, interruption of work or operation, concentrated stoppage of work, absence from work upon any pretext or excuse such as illness, which is not founded in fact, against the Department, or any other intentional interruption of the operations of the Department, regardless of the reason or reasons for so doing.

It is also understood that the Association and the Department will adhere to the provisions of N.R.S. 288.240, 288.250, 288.260, and 288.270.

*6.2 Lockout.* The Department will not lock out any employees covered hereunder as a result of a labor dispute or any other disagreement with the Association.

## ARTICLE 7 - MANAGEMENT RIGHTS

The Department and the Association agree that the Management officials of the Department possess the sole right to operate the Department and that all Management rights remain with those officials. These rights include, but are not limited to:

- Hire, direct, or transfer employees, except when such assignment or transfer is done as a part of disciplinary purposes.

- Reduce in force or lay off any employee because of lack of work or lack of money. Layoffs shall be conducted in accordance with the requirements of Article 17 - Reduction in Force.

- Determine appropriate staffing levels and work performance standards, except for employee safety considerations.

- Determine work schedules, tours of duty, and daily assignments.

- Determine quality and quantity of services to be offered to the public and the means and methods of offering those services.

- Determine the content of the work day, including, without limitation, workload factors, except for employee safety considerations.

- Take whatever action may be necessary to carry on its responsibilities in situations of emergency such as a riot, military action, natural disaster, or civil disorder. Such actions may include the suspension of this collective bargaining agreement for the duration of the emergency. Any action taken by the Department under the provisions of this subsection shall not be construed as a failure to negotiate or keep the intended good faith. A fiscal emergency does not constitute an

"emergency" for purposes of management rights.

- Manage its operation in the most efficient manner consistent with the best interests of all its citizens, taxpayers, and employees.

- Promote employees and determine promotional procedures, as provided in N.R.S. 280.310.

- Educate and train employees and determine corresponding criteria and procedures.

- The Department shall have such other exclusive rights as may be determined by N.R.S. 288.150.

- The Department's failure to exercise any right, prerogative, or function hereby reserved to it shall not be considered a waiver of that right, prerogative, or function.

Nothing contained herein shall supersede any provision of NRS 288.150.

# ARTICLE 8 - HOLIDAYS

**8.1 Recognized Days.** The Department and the Association agree that the legal holidays shall be:

| | |
|---|---|
| New Year's Day | Nevada Day |
| Martin Luther King Day | Veterans' Day |
| Presidents' Day | Thanksgiving Day |
| Memorial Day | Friday after Thanksgiving Day |
| Independence Day | Christmas Day |
| Labor Day | Day before Christmas |

Any legal holiday specifically appointed for local government employees by the President of the United States, except for any Presidential appointment of the fourth Monday in October as Veterans' Day.

**8.2 Weekend Holidays.** If any of the above holidays fall on Sunday, the following Monday shall be considered as the legal holiday. If any of the above holidays fall on Saturday, the preceding Friday shall be considered as the legal holiday.

**8.3 Eligibility.** All full-time employees shall be entitled to time off for such legal holidays. If an employee is off-duty on a scheduled work day, which is also a holiday, he/she will be considered off in lieu of the holiday. If an employee is on duty on a scheduled work day, which is a holiday, they will be eligible to receive the holiday benefit as described in section 8.4 Holiday Work. All full-time employees, in order to be entitled to a legal holiday as provided, shall be on full paid status on their scheduled work day immediately preceding and immediately following such holiday. Employees who are on partial leave without pay the day preceding or immediately following a holiday will receive a prorated benefit based on the hours in a paid status.

**8.4 Holiday Work.** Employees who work on a legal holiday shall receive their normal salary for the holiday(s) on a straight time basis for the hours worked. Also, employees shall receive an additional eight (8), nine (8), ten (10), or 12 hours of vacation leave, or straight time pay, depending upon their regular schedule.

Employees who are on administrative leave for use of force shall receive the holiday benefit as though he/she was working his/her regular work schedule. Employees who are off-duty on workers' compensation shall be considered off in lieu of the holiday.

Employees who call in sick on a holiday will be carried as sick and payroll will post off in-lieu of holiday-sick. Sick accruals will not be deducted, but this sick leave will count toward bonus time eligibility.

Employees that take a professional leave day will be carried as such. Employees who use their professional leave day will have the equivalent hours of vacation leave time added to the employee's annual leave accumulation for the holiday benefit. Employees will not have the option of pay for the holiday under this circumstance.

Employees who work in a section that is off on the holiday and work for a different section on same holiday, shall receive the holiday benefit as though he/she was working his/her regular work schedule. Overtime will only be paid for hours that an employee works outside of his/her regular work schedule.

**8.5 Holiday Compensation.** Employees whose regularly scheduled day off falls on a legal holiday shall receive eight (8), nine (9), ten (10), or 12 hours of vacation leave or straight time pay depending upon their regular work schedule.

*During the 2001 negotiations, it was agreed the receipt of vacation leave or straight time pay would be based upon the employee's regular schedule, not the light day; i.e., the 8 hour day in a regular 9 hour schedule or 12 hour schedule.*

**8.6 Day Off Work.** An employee required to work on a legal holiday which falls on his/her scheduled day-off shall be paid overtime (time and one half) for hours actually worked. Additionally, the employee will receive eight (8), nine (9), ten (10), or 12 hours of vacation leave or straight time pay depending upon their regular work schedule.

*Annotation: During 1997 negotiations, an issue regarding scheduling work on a holiday arose. The parties agreed scheduling was to be maintained as a management*

*right, but issues of equitable scheduling and flexibility could be raised with the chain of command and be discussed or resolved in a labor/management committee. As a result of this discussion, no changes were made in the contract regarding this issue.*

*During the 2001 negotiations it was agreed the receipt of vacation leave or straight time pay would be based upon the employee's regular schedule, not the light day, i.e., the 8 hour day in a regular 9 hour schedule or 12 hour schedule.*

**8.7 Compensation Options.** Pursuant to the provisions above, employees covered by this Agreement may twice a year select the option of pay or vacation leave for holidays. The employee's selection will remain in effect until a change is made. Any changes made are due in Payroll by June 5th to be effective on the July 4 holiday and due in Payroll by December 5th to be effective for the December 24 holiday. If selection is not made at time of employment, vacation leave will be given.

## ARTICLE 9 - VACATION LEAVE

**9.1 Purpose.** The Department and the Association agree that vacation leave is provided to employees for the purpose of rest and relaxation from their duties and for attending to personal business.

**9.2 Accrual.** Employees shall be eligible to take vacation leave after completion of six (6) months of continuous full-time service. Vacation leave shall accrue at the rate of 4.62 hours per pay period during which an employee is in a paid status, excluding overtime. Vacation leave does not accrue during periods of leave without pay or for employees who have exceeded 800 hours of workers' compensation. After 15 years of continuous service, vacation leave shall accrue at the rate of 6.15 hours per pay period during which an employee is in a paid status, excluding overtime. After 20 years of continuous service, vacation leave shall accrue at a rate of 7.68 hours per pay period during which an employee is in a paid status, excluding overtime.

**9.3 Accumulation.** Vacation leave may be accumulated up to a maximum of 320 hours during the first ten (10) years of service; upon completion of ten (10) years of service and up to 15 years of service will accumulate up to 360 hours, and upon completion of 15 years of service and thereafter will accumulate up to 400 hours. Any vacation leave which exceeds the allowed maximum shall be forfeited on December 31st of each calendar year.

Employees with more than six (6) months service who leave the service of the Department are entitled to payment for unused vacation leave which has not been forfeited in accordance with 9.3 and computed on the employee's rate of pay.

**9.4 Approval.** Application for vacation leave must be approved in advance of taking leave. An employee on authorized vacation leave may be granted an extension thereof upon his/her request.

Upon approval by the Department Head, an employee may be advanced vacation leave.

**9.5 Advance Leave.** An employee who has taken advance vacation leave beyond that accrued at the time of separation shall make restitution for such leave, either by deduction from any amount owed him/her by the Department or by cash refund.

**9.6 Death of Employee.** Upon the death of an employee, the Department will make a lump sum payment of accrued vacation leave due to the employee's most recently designated beneficiary on file or, if no designated beneficiary, to the employee's estate.

Employees on the Department's payroll as of June 30, 1982, who have had a break in service, shall have their vacation leave accrued as if their combined years of service were continuous and without break. For persons hired or rehired on July 1, 1982, or thereafter, any break in service shall not be bridged for the purpose of accruing vacation leave.

**9.7 Sellback.** Any employee who has completed his/her initial probation without a break in service in a Department position by the due dates listed below may elect to exchange up to 40 hours of vacation leave for up to 40 hours of gross salary, excluding overtime. The rate of pay will be the same as what is received if the employee were to work his/her regular shift.

Sellback of vacation leave shall only be paid on the first payday of each November. Employees shall submit their request for sellback by October 1st of each year.

*9.8 Professional Leave Days.* Employees are authorized two (2) professional leave days annually. These days must be used by June 30th of each fiscal year. Employees shall be eligible to use these leave days after completion of six (6) months of continuous full-time service. If the employee requests a professional leave day, the supervisor may not deny the request without approval of the Bureau Commander on a case-by-case basis.

If an employee has utilized any or all of this benefit for the current fiscal year under a different collective bargaining agreement, they are not entitled to additional professional leave days under this collective bargaining agreement.

The professional leave day is to be taken as a full day according to the employee's regular work schedule, eight (8), nine (9), ten (10), or 12 hours.

When an employee chooses to utilize and is granted a professional leave day on a holiday, the employee will receive their normal salary for the holiday on a straight time basis for the hours they would have worked. Also, the employee shall receive an additional eight (8), nine (9), ten (10) or 12 hours of vacation leave credited to their vacation account, depending upon his/her regular schedule. The employee will lose the professional leave day once it is exercised in this manner.

*Annotation: The last paragraph in this section was adopted in December 2006 (mid term) to ensure the proper use of professional leave days when granted on a designated holiday.*

## ARTICLE 10 - SICK LEAVE

*10.1 Accrual.* The Department and the Association agree that all full-time employees shall accrue four (4) hours of sick leave per pay period, or .05 hours for each hour of actual paid service in that pay period, excluding overtime.

*10.2 Pay.* Employees shall be paid their current rate of pay for each hour of sick leave used. The rate of pay will be the same as what is received if the employee were to work his/her regular shift.

*Annotation: This section was changed in 2001 to clarify that rate of pay is inclusive of all regular compensation the employee receives, exclusive of overtime.*

*10.3 Utilization.* Upon approval of the Department, sick leave may be used by employees who have:

- Illness or Injury. Incapacitated from the performance of their duties by illness or injury, or

- Public Health Requirements. Attendance is prevented by public health requirements, or

- Doctor Appointment. Required to absent themselves from work for the purpose of keeping an appointment with the doctor (up to a maximum of four (4) hours for any one appointment), or

- Bereavement. Required to absent themselves from work for bereavement subsequent to the death of a member of their immediate family (up to a maximum of 48 hours per occurrence). The Sheriff/designee may grant more than 48 hours, not to exceed 240 hours, upon request of the employee. Employees may utilize other paid leave for the purpose of bereavement, or;

- Medical Emergency. Required to absent themselves from work to personally care for a member of their immediate family in those medical emergencies which require the employee's prompt attention. Emergency leave shall be taken as sick leave, except for a one-time provision of 48 hours of vacation leave that may be used per fiscal year.

*Annotation: In 1997, the parties modified 10.3 Utilization to allow flexibility for employees to use sick leave for a significant other who they consider a mate. It was agreed this flexibility was not to be extended anywhere else in the contract. This section also allows for an extension of time by the Sheriff/designee in an extraordinary loss.*

*10.4 Approval/Notice.* All sick leave shall be approved by the designated Department representatives. Employees who do not become ill on the job shall call in as required by Department policy before the beginning of their shift when using sick leave.

**10.5 Immediate Family.** Immediate family shall be defined as a spouse, parent, sibling, child, grandchild, and grandparent (including legally adoptive relationships, current in laws and step relations), or any of the previously specified relationships to the employee's spouse, significant other, or domestic partner. This shall also apply to legal guardianship/dependent situations. For the purposes of section 10.3 utilization only, "significant other" shall be interpreted to apply when it involves a person the employee lives with who they consider a mate. The expansion of the immediate family definition to include a significant other or domestic partner is not extended to any other provisions in this contract.

**10.6 Family and Medical Leave.** Determination as to the eligibility of Family and Medical Leave must be made prior to, if foreseeable, or during the use of sick leave and the employee must be advised before returning to work of the status of that leave. Employees with questions about FMLA should consult with the Health Manager or his/her designee and/or the Association for clarification.

**10.7 Reporting Requirements.** Employees covered by this Agreement shall be subject to the following reporting requirements for payment of sick leave:

- Sick Leave Request: Employees are required to file and sign a sick leave request as evidence the reason for the employee's absence was a legitimate use of sick leave as outlined above, within 24 hours of returning to work.

- Certificate of Recovery and Fitness: A Certificate of Recovery and Fitness shall be submitted by an employee when requested to do so by the Sheriff or his designee. Such certificate shall be signed by a physician and shall state that the employee is capable of returning to work.

**10.8 Residence Requirement.** Employees shall be at their place of residence, a medical facility, or their doctor's office, or shall notify their supervisor of their whereabouts when using sick leave. Any gainful employment, pursuit of personal business, recreation, travel for recreation, or non-sick leave purpose, or other such activity when an employee is on sick leave is considered evidence of abuse of sick leave unless approved in advance in writing by the Sheriff or designee.

**10.9 Abuse or Excessive Use.** Utilization of sick leave for purposes other than those defined in this Contract shall be considered evidence of abuse. Supervisors may discipline employees when evidence of abuse exists and for excessive use of sick leave. Discipline will not be applied for extended illnesses or injuries. When a supervisor has concerns about an employee's use of sick leave, he/she shall consult with Labor Relations to ensure consistent application of this section.

*Annotation: This section was changed in 1997 to allow the parties the flexibility to apply progressive discipline to employees who are using sick leave in a manner that has a negative impact on other employees and operations. The parties agreed that, as a general rule, any person who uses eight (8) or more sick leave days per year is excessive. It was understood that eight (8) days is not a specific standard, but merely a guideline for supervisors when assessing circumstances surrounding the absences of employees (e.g., supervisors will look at historical attendance, patterns of use, etc.). For the purpose of an extended illness or injury, the FMLA standard will apply.*

*Contact with Labor Relations was made mandatory in 2005.*

**10.10 Bonus Time.** Employees who have taken no more than three (3) days sick leave (including FMLA) during his/her employment year shall receive three (3) shifts of bonus time hours based on the employee's regular work schedule (eight (8), nine (9), ten (10) or 12 hours) at the time of accrual (employee's hire date), which shall be credited to the employee's bonus leave account. An employee hired after January 1, 1982, may only accumulate 240 hours of bonus time.

Employees who leave the service of the Department are entitled to payment for unused bonus time computed on the employee's gross salary (base, longevity, assignment differential, and shift differential).

**10.11 Sick Buyback.** Employees hired or rehired between July 1, 1988, and July 1, 1994, are eligible for sick buy back. The Department shall buy back up to 50% of all sick leave hours accrued above the 1,250 hour maximum payoff limit, subject to provisions of the paragraph below. The sick leave accrual not bought back by the Department shall become a sick leave "bank" which can be used by the employee only after regular sick leave hours are exhausted. Banked sick leave shall not be eligible for payoff at any time, including at separation.

To be eligible for sick leave buy back, an employee must have used 80 hours or less of sick leave in the twelve-month period immediately preceding the buy back. If the employee used between 41 and 80 hours

of sick leave in the twelve-month period immediately preceding the buy back, the Department will buy 25% of the accumulated leave above the 1,250 hour cap. If the employee used 40 or fewer hours of sick leave in the twelve-month period immediately preceding the buy back, the Department will buy 50% of the accumulated leave above the 1,250 hour cap.

The buyback period will be from November 16th of the previous year through November 15th of the current year. The buyback will be paid on whichever paycheck for the pay period in which November 15th falls.

***10.12 Cash Out.*** If a permanent employee leaves the Department after ten (10) years of continuous service, the employee shall receive payment for 50 percent of the employee's allowable sick leave accumulation. After 15 years of continuous service the employee shall receive payment for 62.5 percent and after 20 years of continuous service payment for 75 percent of the employee's sick leave accumulation. After 25 years of continuous service the employee shall receive payment for 87.5 percent of the employee's sick leave accumulation. In all circumstances prior to 30 years of continuous service, payment for sick leave will be computed at the employee's base salary rate plus longevity. After 30 years of continuous service, payment shall be increased to 100 percent of the employee's sick leave accumulation at the employee's regular rate of pay. Regular rate of pay is defined as the rate of pay an employee would receive if he/she was actually working a shift and includes the following: base pay, step increases, longevity, shift differential, and Assignment Differential Pay.

| Years of Service | Hired before 07/01/88 Maximum Accrual Payout | Hired after 07/01/88 Maximum Accrual Payout |
|---|---|---|
| 0 - 9 | n/a | Not eligible |
| 10 - 14 | n/a | 50% of balance up to 1,250 hrs |
| 15 - 19 | n/a | 62.5% of balance up to 1,250 hrs |
| 20 - 24 | 75% of full balance | 75% of balance up to 1,250 hrs |
| 25 - 29 | 87.5% of balance up to 1,250 hrs | 87.5% of balance up to 1,250 hrs |
| | 75% of remaining balance | n/a |
| 30+ | 100% of balance up to 1,250 hrs | 100% of balance up to 1,250 hrs |
| | 75% of remaining balance | n/a |

*Annotation: The chart is for clarification purposes only and does not change the existing process.*

An employee hired or rehired after July 1, 1988, may utilize the benefit of this provision one (1) time only. Employees hired or rehired after July 1, 1988, may not receive payment for more than 1,250 hours of accumulated sick leave at time of termination, retirement, or resignation. Any hours exceeding the 1,250 hour limitation will be forfeited.

Employees hired prior to July 1, 1988, will only receive 87.5 percent or 100 percent payment on accumulated hours up to 1,250 hours, whichever is appropriate based on years of service. All other accumulated hours will be paid at 75 percent.

***10.13 Death.*** In the event of the death of an employee, the employee's beneficiary shall receive payment for sick leave accrued at the time of the employee's demise at the rate of 50% for zero to ten years; 75% for 11 to 20 years; and 100% for over 20 years of employment with this Department. The 1,250 hour cap for payout is applicable to this section except for employees that were hired prior to July 1, 1988.

In the event of an in-line-of-duty death, the employee's beneficiary will receive 100% payment for sick leave accrued at time of death.

*10.14 Bridged Time.*  Employees on the Department payroll as of June 30, 1982, who have had a break in service, shall have their sick leave payoff computed as if their combined years of service were continuous and without break.  For persons hired or rehired on July 1, 1982, or thereafter, the provisions of 10.11 Sick Buyback shall be applied and any break in service shall not be bridged for the purpose of determining total years of service.

## ARTICLE 11 - SPECIAL LEAVES

*11.1 Military Leave.*  An employee having a reserve status in any of the regular branches of the Armed Forces of the United States or the Nevada National Guard, upon request to serve on active duty or inactive duty for training as outlined in the provisions of N.R.S., shall be granted a maximum of 30 shifts of paid leave per calendar year.  The 30 shifts provided herein are meant to be used in conjunction with the statutory obligation. Any statutory time used will be deducted from the 30 shifts.

Any employee who is called to active duty by the President of the United States to serve in a national or international deployment of the United States Armed Forces shall be granted leave and pay as prescribed by Federal law.

In addition, an employee who is called to active duty by the President of the United States to serve in a national or international deployment of the United States Armed Forces shall suffer no loss of benefits. The Department will supplement the employee's military pay to ensure their gross pay is equal to his/her regular pay.  The employee's pay will be adjusted whenever normal increases occur to his/her salary.

At the beginning of each calendar year or after a change in status or assignment, the employee will provide their immediate supervisor with documentation establishing reserve status and unit assignment. Such documentation shall include the name and phone number of the reservist's commanding officer or designee as a contact point. The employee will provide an annual training schedule, or orders in case of active duty, by the first scheduled work day after such documentation becomes available to the employee.  These documents are to be maintained in the employee's bureau file.

The employee will provide an LVMPD 2, Application for Leave form, to his/her immediate supervisor two weeks prior to his/her scheduled military leave, when possible.  The supervisor will forward the form to Payroll for processing. A copy of the military duty documents must be given to the bureau of assignment for submission to Payroll (military duty documents required may be unit training schedules, earning statements, orders or DD214's).  Emails are not acceptable documentation but may be used to transmit PDF copies of above acceptable documents. If the employee was unable to provide the appropriate documentation prior to his/her military leave, the paperwork must be submitted within 30 days after deployment.

If an employee has an approved scheduled vacation leave, that leave will not be canceled because another employee has been granted military leave.

For the purpose of this section, an "approved scheduled vacation" means any vacation request submitted to the immediate supervisor 2 weeks or more in advance and is approved.

Employees may utilize vacation, bonus, or professional leave in lieu of leave without pay for military leave.  Use of these leaves for this purpose shall not be controlled by other policies, procedures, or rules that affect these leaves.

*Annotation: This provision was changed to clarify that most military leaves are not under specific written orders. Additionally, these changes will not impact the current practice allowing the flexible use of the 15 days prescribed by NRS in effect in 1997.  This section was changed in 2001 to increase the number of shifts an employee could use for military leave.  It is intended this time is inclusive of the number of days provided by the NRS.*

*Annotation: The Department recognizes that on a rare occasion an issue may arise in submitting the required paperwork within the above timelines. Such issues will be addressed by the Department on a case by case basis.*

**11.2 *Leave Without Pay*.**  Leave without pay may be granted an employee for purposes normally covered by sick, vacation, bonus, or professional leave when all paid leave balances have been exhausted or for other justifiable reasons.  At the option of the employee, he/she may be able to maintain a maximum of 40 hours of sick leave when granted leave without pay.

Except as provided in 11.1 <u>Military Leave</u> above, periods of leave without pay in excess of 160 work hours shall not be credited for purposes of completion of probation, salary increases, time in grade for promotion, seniority or computing longevity pay.  The employee's hire, longevity, seniority, and merit dates shall be adjusted accordingly and the employee shall receive credit for all time for which the employee was actively working for the Department.

Employees that exceed 14 continuous days of leave without pay will be notified in writing by the Payroll Section of the below requirements.  This notice will take seven (7) to ten (10) days after the end of the pay period in which the leave without pay occurred.

Continuous leave without pay for periods in excess of 160 work hours, exclusive of FMLA and/or ADA, must be approved by the employee's Bureau Commander.  Continuous leave without pay in excess of ninety (90) calendar days must also be approved by the Division Head and the Sheriff, or the Sheriff's designee in the Sheriff's absence.

Employee Requirement:

> The affected employee must make his/her request by completing the documents provided by Payroll and verification as set out below from the employee's treating physician prior to exceeding 160 work hours of leave without pay.  If the nature of the absence precludes the employee from completing this paperwork, the supervisor will ensure the chain-of-command and the Health Detail is notified of such; Health Detail will engage the appropriate parties for obtaining the necessary information.  Notice will be given to the Association regarding all employees falling under this paragraph.

> The request will include verification from the treating physician that:

> - The employee is under medical care;
> - Nature, severity and probable duration of condition; and
> - A date of return to work specified by the treating physician.

> The extended leave request and the physician verification shall be submitted to the Health Detail for processing.

In making the decision whether to grant extended leave, the Bureau Commander will consult with the Health Detail.

Additional leave granted cannot exceed one year.  Requests for extended leave without pay to seek other employment will be denied.

Continuous leave without pay for periods in excess of 160 work hours for reasons not related to a medical condition may only be approved by the Sheriff, or the Sheriff's designee in the Sheriff's absence.

If extended leave without pay is not granted or the employee does not request extended leave as specified above, the employee may resign, and may request re-employment within three (3) years from the date of his/her resignation, according to Civil Service Rule 350.5.  If the employee does not resign the Department

may make a request to the Sheriff to convene the preterm board.

Periods of leave without pay in excess of 160 work hours resulting from a job connected illness or injury shall be credited for purposes of seniority or computing longevity pay, and may be credited for purposes of completion of probation and/or salary increases on the recommendation of the Division Head and approval of the Division Head of Professional Standards.

***11.3 Maternity/Paternity Leave.*** Employees shall be entitled to take up to six (6) months of leave for maternity/paternity parent bonding purposes commencing as determined below within 12 months following the birth, placement of a son or daughter with the employee for purposes of adoption or foster care or adoption of the child.

An employee, upon becoming aware of her pregnancy, shall obtain a statement from her physician stating that the physician has reviewed the job specifications of the employee and that it will not be injurious to her health or the health of the expected child for her to continue working. After the initial statement has been presented to the employee's supervisor* and forwarded to Health Section, a similar statement shall be presented monthly, commencing with the sixth month of pregnancy. Employees complying with these provisions shall be entitled to work as long as they continue to present such monthly statements or until the date specified by their physician as the date beyond which they should not be permitted to work. If the employee fails to present any required monthly statement within five days of the date due, she may be placed on maternity leave after three (3) calendar days notice by the Department.

   *Acting Supervisor or next level in chain of command if the employee's supervisor is unavailable.

Employees will use FMLA leave time at the beginning of the maternity/paternity leave and exhaust such FMLA leave time concurrently with their accrued leave, beginning with compensatory leave. Once compensatory leave is exhausted, the type of leave used will be at the employee's discretion but the type will be designated in advance to Payroll. If the employee does not designate the leave usage in advance of using it, Payroll will use leave in the following order: sick, vacation, professional leave, then bonus leave for maternity/paternity leave purposes. All maternity/paternity leaves must be taken as one continuous leave period (unless special circumstances clearly show a legitimate need for broken periods of leave) with the leave without pay being the last to be designated. By the sixth month of pregnancy, employees should make an appointment with the Health Section, to develop a tentative plan for leave usage. Employees should submit a leave application request prior to taking leave to indicate the type of leave that will be utilized.

The parties agree that the provisions of this contract provide employees with time off beyond that provided by the Family Medical Leave Act. The Family Medical Leave Act would restrict time off to 12 weeks to be shared by the husband and wife. Under this contract, if husband and wife who both work for the Department and who both wish to take leave for the birth of a child, or adoption or placement of a child in foster care, they are each entitled to six months leave.

***11.4 Application and Examination Leave.*** An employee shall be permitted reasonable time off with pay during the employee's shift to make application and/or take an examination for Departmental promotional or transfer opportunity. In no case shall an employee become eligible for overtime as a result of competing for a promotional or transfer opportunity.

***11.5 Catastrophic Leave.*** When an eligible employee suffers a catastrophic illness or injury, and the eligible employee has exhausted all accrued leaves as a result of the illness/injury, then the eligible employee may file a request for donations of leave with the Association.

The request must be accompanied by:

- A medical statement from the attending physician explaining the nature of the illness/injury and an estimated amount of time the employee will be unable to work.

- Evidence of the Bureau Commander's approval of leave of absence.

The Executive Board of Directors for the Association will establish eligibility standards and will review the request to verify the employee's eligibility to receive leave donations.

The Association will conduct the solicitation of donations and will be limited to an information-only solicitation, with no personal lobbying by employees. Solicitations will be conducted for 30 calendar days and all donations will be submitted to the Association on the provided form.

Donations can be made from the donor's bonus hours, vacation leave, and/or professional leave. Sick leave cannot be donated. The minimum donation is four (4) hours. Employees must have a vacation leave balance of at least 40 hours after the donation.

The Association will forward donations to the Department Payroll Section, where the donated time will be converted to dollars at the hourly rate of the donor. The dollars will then be converted to sick leave at the hourly rate of the recipient. If any donated sick leave hours remain at the end of the catastrophic leave, they will be transferred to the Catastrophic General Fund Account (bank).

Bank hours, if any, may be approved by the Association Executive Board on a matching basis, if needed (e.g., a solicitation for an approved employee nets 100 hours - after the 100 hours are used, the Association Executive Board may approve up to another 100 hours from the bank, if hours are available). However, employees will be eligible to utilize up to 160 hours of bank time prior to applying the matching standards set out herein. From the date of ratification of this agreement forward, an employee may use no more than a total of 160 hours of bank time throughout the course of his or her career.

Eligible employees:

- The Catastrophic Leave Program is available to all collective bargaining unit employees who require a minimum of 80 hours leave after all accrued leaves have been exhausted. This may also apply to intermittent leave situations directly associated with the catastrophic leave request.

- Employees who have graduated the Academy and are covered by the collective bargaining agreement.

- Employees must meet the following definition of catastrophic illness/injury:

  "Catastrophic Illness/injury is an illness or injury that keeps an employee from performing the duties of their job (i.e., the employee is hospitalized, homebound, or is the primary care giver to a member of their immediate family). The illness or injury cannot be a result of an illegal act, nor can it be intentionally self-inflicted."

- Employees with work-related Worker's Compensation claims are not eligible for the Catastrophic Leave Program.

When an employee utilizes leave from the Catastrophic General Fund Account Bank, the employee will be required to reimburse the bank with accrued vacation at a rate of two (2) hours per pay period. This reimbursement will only be required for Bank hours utilized up to a maximum of 160 hours. If an employee separates from employment for any reason before reimbursing the bank for borrowed time, the balance of money owed the bank will be deducted from the employee's final paycheck, cashout check, or both.

The parties agree that should any problem or abusive practice arise, the parties will meet to make reasonable adjustments to facilitate the administration of the program or to eliminate these abusive practices.

## ARTICLE 12 - GRIEVANCE PROCEDURE

*12.1 Grievance Procedure.*

*(A) Purpose.* The purpose of the following provision is to set forth, simply and clearly, the methods and procedures to address the various types of disputes that may arise between the parties hereto.

*(B) Definition.* A grievance shall be defined as:

1. A dispute regarding the application of a written reprimand.

2. A dispute regarding the application or interpretation of any Department rule, regulation, policy, or procedure that governs the Department.

3. A dispute regarding the application of a disciplinary suspension.

4. A dispute regarding the application of a disciplinary transfer.

5. A dispute regarding the application or interpretation of any and all provisions of the Collective Bargaining Agreement between the Department and the PPA.

6. A dispute regarding the Sheriff's decision following a Use of Force Review Board (UOFRB) for something less than termination.

7. A dispute regarding a termination.

8. Note: The enforcement and establishment of Civil Service Rules promulgated by the Civil Service Board are expressly excluded from consideration as a grievance. Where Civil Service Rules are contrary to the terms of this Agreement, they shall have no force or effect on the employees covered by this Agreement. Civil Service Rules will apply in circumstances where the contract is silent. An alleged violation of a Civil Service Rule not covered by the terms of this Agreement may only be appealable through Civil Service Rules.

*Annotation: Any discipline solely from a Tactical Review Board shall be grieved following the procedures below, based upon the level of discipline.*

*(C) Representation.* A grievant may have representation of his/her choice at any or all steps.

*(D) Process.* Employees shall have the right to appeal all grievances defined above pursuant to the procedures described herein. If a dispute cannot be resolved informally, the employee shall hand deliver the grievance in writing within 15 calendar days from the employee's knowledge of the occurrence giving rise to the dispute. With regard to disciplinary appeals, this shall be the date the employee signed his or her Adjudication of Complaint and received a copy of the Adjudication. The grievance shall specify the information relevant to the employee's reason for appealing and the relief requested.

In the event the Association does not sanction a grievance to proceed to a Labor Management Board or arbitration, the employee shall have the right to request a hearing, but the employee will be responsible for expenses as set out in Step 2 of this procedure.

Step 1 - Grievances shall be hand delivered to and signed by the Bureau Commander, or his/her designee. However, if the matter giving rise to the grievance occurred at the Bureau Commander level, including a disciplinary transfer, the appeal will be sent to the next level of supervision above the Bureau Commander as Step 1.

Grievances regarding a recommendation by the UOFRB for suspensions shall be filed with the Sheriff.

All recommendations for termination, including those by the UOFRB, proceed directly to a Pre-termination Board.

If Labor Relations determines the grievance meets the definition of a grievance as described above and is timely, the reviewer shall initiate an investigation of the appeal. Within 15 calendar days of the filing of the grievance, the reviewer will hold a meeting with the grievant and his/her representative in an effort to explain the results of the investigation. The reviewer shall submit to the grievant and his/her representative a written response to the grievance, including a summary statement of the findings of the investigation, within 22 calendar days of the filing of the grievance

*Annotation: If there is a dispute as to whether a dispute meets the definition of a grievance, it shall be resolved by an arbitrator in a modified arbitration hearing pursuant to the arbitrator process described below.*

**Step 2.** *Deputy Chief Review:* **For disputes regarding a Written Reprimand:** If the grievant is not satisfied with the response in Step 1, the Association may request, within 30 calendar days of the Step 1 response, that the matter be resolved by a Deputy Chief in the grievant's chain-of-command. An alternate Deputy Chief will hear the grievance in the event the grievant's Deputy Chief is not available. The reviewer shall initiate an investigation of the appeal. Within 15 calendar days of the filing of the appeal, the reviewer will hold a meeting with the grievant and his/her representative in an effort to explain the results of the investigation. The reviewer shall submit to the grievant and his/her representative a written response to the appeal, including a summary statement of the findings of the investigation, within 22 calendar days of the filing of the appeal. This response shall be the final decision on the matter.

**Step 2.** *Labor Management Board:* **For disputes regarding the application or interpretation of any Department rule, regulation, policy, or procedure that govern the Department; a disciplinary suspension; a disciplinary transfer; or regarding the application or interpretation of any and all provisions of the Collective Bargaining Agreement between the Department and the PPA:** If the grievant and/or Association is not satisfied with the response provided in Step 1, the Association may request, within 30 calendar days of receipt of the Step 1 response, that the matter be resolved by a Labor/Management Board selected by the Department and Association. The decision of this Board shall be final and binding on the parties, but in no event shall the Board have any authority to exceed or alter any provisions of this contract. Expenses associated with the involvement of an arbitrator shall be equally shared by the parties.

The Labor/Management Board will be comprised of a five (5) member panel. The Board shall consist of two (2) Department employees from the rank of Lieutenant, Captain, or Deputy Chief and two (2) Department employees from the bargaining unit, all four (4) of whom shall be randomly selected by a mutually agreed upon method. The random selection shall occur as follows: One department member will be selected from the rank of Lieutenant (excluding Internal Affairs and Personnel) and the other Department member will come from Captain and Deputy Chief combined (excluding Internal Affairs, Personnel, and the Human Resources Deputy Chief); One bargaining unit member will be selected from the Association Board of Directors (excluding full-time representatives) and the other bargaining unit member will come from a designated pool to be determined by the Association. Each side will have an equal pool to draw from, which shall be reviewed and updated annually in March. If an employee is randomly selected to serve on his/her RDO or vacation, that employee may decline such service. If an employee serves when not on his/her regular tour of duty, that employee will be paid overtime or compensatory time for service or will have his/her shift adjusted. Employees selected for service during normal duty hours will be released without loss of pay. If an employee cannot be released because of operational considerations, another random selection will occur. In the event a board member must cancel up to seven (7) calendar days prior to the hearing, a new random selection will be made from the same pool as the member that canceled. In the event a board member must cancel less than seven (7) calendar days prior to the hearing, the opposite corresponding member (Lieutenants = Bargaining Unit; Captains and Chiefs = PPA Board) will also be canceled, leaving the board comprised of one department member, one bargaining unit member and the arbitrator.

The fifth (5th) member shall be an arbitrator from the parties arbitration panel, who shall serve as

chairperson of the hearing. The arbitrators will serve on a rotational basis. This rotation will be separate and apart from the rotation in disputes where there is an Arbitration hearing instead of a Labor Management Board. Arbitrators will be assigned based upon the rotation and notified in advance of their selected dates.

No member of the Board can be a party to the dispute, have participated in the dispute in any way whatsoever, be part of the grievant's squad or chain-of-command, or have any relationship with the grievant that would create an inherent conflict. The Board will have the authority to rule on procedural matters raised at the hearing with the basic understanding that the proceeding is intended to be informal and speedy, and that the procedural guidelines provided below shall be followed.

No member of the board can meet with the employee or the employee's chain of command ahead of time, have any discussions with the employee or the employee's chain of command, or meet with the Department and/or its counsel or Association and/or its counsel to prepare for the hearing.

### *Procedural Guidelines for Hearing:*

1.  The parties may designate who will represent them at the hearing. Each representative may have one other person present to provide administrative and/or consultation support. Other persons may be present at the hearing upon mutual agreement of the representatives.

2.  One hearing will be conducted on a specified day each month, as needed; the day shall be agreed upon by the parties to this collective bargaining agreement. All pending requests for a hearing that have been filed more than 30 days prior to the designated hearing date shall be heard. In the event all pending matters cannot be heard in one day, the parties will work with the arbitrator to schedule an additional hearing date.

3.  The party who bears the burden of proof in the hearing (the Department in a disciplinary appeal and the Association in a contract appeal) will provide the opposing side its exhibits at least 21 days prior to the hearing. Thereafter, the party who does not bear the burden of proof in the hearing will provide the opposing side its exhibits at least 14 days prior to the hearing. The parties will exchange witness lists and issue statements at least seven (7) days prior to the hearing. In the event these exchanges are not completed in a timely fashion and there is no agreement by the parties to accept the late submission, the Board will accept the exhibits, witnesses and issues, make a determination whether any prejudice might arise as a result of the late submission and, based upon that determination, may reset the hearing.

4.  Each party will have 90 minutes within which to present its case. This limitation shall include argument, presentation of witnesses, and cross-examination of witnesses. Extensions of these time frames must be mutually agreed to by the parties prior to the hearing date. Any such agreement shall specify the time period extension. If no agreement can be reached, the arbitrator may be petitioned for an appropriate extension which may include a separate hearing date if necessary.

5.  Meetings and hearings will be closed and there will be no taping or minutes taken. The individual representatives and support personnel may take individual notes for their own purposes.

6.  The Department has the burden of proof and will present its case first in disciplinary matters.

7.  The grievant has the burden of proof and will present his/her case first in contractual and policy matters.

8.  The Board may deny the appeal or grant the appeal.  If the appeal is granted, the Board will determine the appropriate remedy.  If the appeal is denied, the Board may increase the discipline imposed by a maximum of an additional one half (½) of the original discipline, if it deems appropriate, due to the factual circumstances resulting in the discipline.  (Note: In the event the level of suspension is not commensurate with the employee's shift, the additional time will be considered "with option".)

9.  Once the case is submitted to the Board, the Board shall deliberate and decide the appeal.  The arbitrator shall oversee deliberations to ensure that all Board members are heard.  Additionally, the arbitrator shall participate in the deliberations and shall participate in the vote regarding the outcome of the appeal.  The Board's decision need only be by a simple majority.  The actual vote shall not be shared with either the Department or the grievant.  The Board will announce its decision at the conclusion of the hearing including an explanation of why the Board reached the decision it did.  The decision will be placed in writing by the Department representative within ten (10) calendar days of the hearing.  The written decision will require approval from the Association representative.  If no agreement is reached on the decision, the arbitrator will prepare the written decision.

10.  The decision of the Board shall be final and binding on the parties and shall be submitted to the parties as set out above.  In no event shall the Board have any authority to exceed or alter any provisions of this contract or any rules, regulations, policy or procedure that govern the Department.

11.  Expenses of the arbitrator shall be shared equally by the parties.  However, in the event an employee pursues a grievance without the sanction of the Association, he/she shall be responsible for the costs associated with that grievance which includes all the arbitrator's fees and expenses.  In this case, the employee will be required to submit an advanced payment to the arbitrator 30 calendar days after the arbitrator selection and payment instructions, prior to the arbitration being scheduled.  This payment shall be dictated by the arbitrator based on his/her assessment of the time that will be involved in the case.  Any overpayment shall be refunded to the employee.  All other expenses incurred by either party in the preparation of its case are to be borne solely by the party incurring such expense.

***Step 2. Modified Arbitration:*** **For disputes regarding the Sheriff's decision following a UOFRB for something less than termination and to resolve a dispute as to whether a matter meets the definition of a grievance:** The Association may request, within 30 calendar days of receipt of either Labor Relations' determination that a matter does not meet the definition of a grievance, or the Sheriff's UOFRB decision for something less than termination, that the matter be resolved by an Arbitrator.  The selection process for the Arbitrator will follow the same guidelines and be part of the same rotation process set forth below.  Procedurally, the process will be the same as that set forth for the Labor Management process, except that there will be no five-member board, only a single Arbitrator from the list.

Expenses of the arbitrator shall be shared equally by the parties.  However, in the event an employee pursues a grievance without the sanction of the Association, he/she shall be responsible for the costs associated with that grievance, which includes all the arbitrator's fees and expenses.  In this case, the employee will be required to submit an advanced payment to the arbitrator 30 calendar days after the arbitrator selection and payment instructions, prior to the arbitration being scheduled.  This payment shall be dictated by the arbitrator based on his/her assessment of the time that will be involved in the case.  Any overpayment shall be refunded to the employee at the same time the arbitrator presents an award.  All other expenses incurred by either party in the preparation of its case are to be borne solely by the party incurring such expense.

**Step 2. *Arbitration:*** **For disputes regarding termination:** If the grievant wishes to appeal a termination, the Association may request, within 30 calendar days of the date on the Notice of

Termination, that the matter be resolved by an Arbitrator. A list of eligible Arbitrators will be utilized by the parties on a rotational basis, based upon their availability within 90 days of the date of selection. The first Arbitrator on the list will be notified of his appointment and the hearing will be scheduled within 90 days of the notice to the Arbitrator. If the selected Arbitrator cannot serve within 90 days, the next Arbitrator on the list will be scheduled under the same conditions. In the event an arbitrator is unavailable within the 90 day time period set forth above, the arbitrator's unavailability does not alter the arbitrator list rotation for subsequent grievances.

A list of Arbitrators will be maintained by the Association and the Labor Relations Section. There shall be five (5) Arbitrators on that list at all times; two (2) selected by the Association, two (2) selected by the Department, and a fifth (5th) Arbitrator who shall be approved by both the Association and the Department. If mutual agreement cannot be reached on the fifth (5th) Arbitrator, the list will remain at four (4) until the parties reach agreement on a fifth (5th) arbitrator. The Association and the Department may meet to review and update the above list as deemed necessary.

The decision of the Arbitrator shall be final and binding on the parties and shall be submitted to the parties within 30 calendar days of the close of this hearing. In no event shall the Arbitrator have any authority to exceed or alter any provisions of this contract or any rules, regulations, policy, or procedure that govern the Department. Expenses of the arbitrator shall be shared equally by the parties. However, in the event an employee pursues a grievance without the sanction of the Association, he/she shall be responsible for the costs associated with that grievance, which includes all the arbitrator's fees and expenses. In this case, the employee will be required to submit an advanced payment to the arbitrator 30 calendar days after the arbitrator selection and payment instructions, prior to the arbitration being scheduled. This payment shall be dictated by the arbitrator based on his/her assessment of the time that will be involved in the case. Any overpayment shall be refunded to the employee at the same time the arbitrator presents an award. All other expenses incurred by either party in the preparation of its case are to be borne solely by the party incurring such expense.

*(E) Resolution.*

*Reduction in Discipline* - At any level of review, if the decision is to reduce the level of discipline, the reviewer that reduced the discipline will have the Adjudication of Complaint rewritten. The new Adjudication of Complaint will show the new level of discipline in the appropriate place on the form. All original dates will be utilized on the written adjudication. If the grievant does not accept the reduction or removal, the matter can proceed to the next step of the procedure based on the original discipline.

*Exoneration of Discipline* - Exoneration of discipline or the sustained complaint or a change to the Internal Affairs sustained violation, can only be authorized by the Deputy Chief, a Labor Management Board, or arbitrator if the grievance has been appealed to that level. If the discipline and sustained complaint are reversed in favor of the employee, the Personnel file and the employee's bureau file will be purged of all references to the investigation. Additionally, the Internal Affairs file will be supplemented to show the new findings.

*(F) Time Limits.* In computing any period of time described or allowed in this procedure, the day of the act, event, or default from which the designated period of time begins to run shall not be included. The last day of the period so computed shall be included, unless it is a Saturday, Sunday, or a holiday, in which event the period runs until the end of the next day which is not a Saturday, Sunday, or holiday.

In the event that the employee and/or Association fails to appeal a discipline or answer given to the next step of the grievance procedure within the time allowed, or in the event that the Department fails to answer a grievance within the time required at any step of the grievance procedure, then the grievance will be considered settled against the side which has defaulted for failing to act in a timely fashion. Specifically, if an appeal is not filed or processed within the time limits set forth above, it will be deemed withdrawn with prejudice; if a grievance meeting is not held or an answer to a grievance or appeal is not filed or processed within the time limits set forth above, the appeal and requested relief will be deemed granted in its entirety,

so long as such remedy is within the confines of the dispute.  However, any of the time limits in a grievance procedure may be extended by mutual agreement of the parties, in writing.  Grievances settled by default cannot be the basis of establishing precedent for the settlement of any other grievances.

*(G) Documentation.*  A copy of all appeals shall be forwarded to the Association and the Labor Relations Section immediately upon filing with the Department.

# ARTICLE 13 - COMPENSATION

*13.1 Salaries.* The Department and the Association agree that the salaries paid the employees in the various classifications will be the salaries assigned to the salary ranges for each classification shown in the attached documents labeled Salary Schedules, which are attached hereto and incorporated thereby. The employees shall receive a 1.5% salary increase on July 1, 2014, and an additional 2% salary increase on July 1, 2015. The attached salary schedules shall remain in place through June 30, 2016. This is reflected in Attachment A.

In the event the parties tentatively agree, pursuant to Article 15.1, that the PPA's Health and Welfare Trust participants will join the Clark County self-funded health plan, then Article 13.1 will re-open for a 30 day window of time for the parties to negotiate a potential, but not guaranteed, increase in salary, above and beyond the aforementioned 2% that is scheduled for July 1, 2015. This time may be extended by mutual agreement of the parties if they believe more time may be productive. If an agreement as to salary is reached within 30 days (or longer by mutual agreement), the insurance change will occur. In the event there is no agreement as to salary, the insurance change will not occur and Article 15 will re-open immediately.

Effective July 1, 2013, all merit increases will be 4%.

In FY 2011-2012 and FY 2012-2013, the 4% merit increase employees were to receive in FY 2011-2012 was split over a two year period so that employees received 1% in FY 2011-2012 and 3% in FY 2012-2013 and the 4% merit for FY 2012-2013 was suspended. As a result of this modification to movement on the salary schedule, where an employee split a step advancement over a two-year period, the employee will still reach the last step on the salary schedule but, under normal circumstances, will reach the last step one year later than they normally would have.

All paychecks will be paid through direct deposit and the employee will be able to view and print his/her payroll information electronically.

*Funding.* In the event the percent increase in the consolidated taxes received by either the City of Las Vegas or Clark County from one fiscal year to the next is less than the increase in the consumer price index for the same period, this section will automatically reopen. The annual CPI change to be used is the U.S. City average, All Urban Consumers, for July each year. Consolidated taxes are those revenues distributed by formula to the City and County. These include sales, motor vehicle, cigarette, liquor, and property transfer taxes. Both CPI and actual tax revenue information will be available for comparison by October following the close of each fiscal year. Negotiations regarding this section will affect the fiscal year that begins the following July.

***13.2 Assignment Differential Pay.***  Assignment Differential Pay is temporary monetary compensation paid to commissioned personnel who are working in the assignment categories listed below.

Reimbursable overtime scheduled outside the ADP assignment shall be paid at the employee's overtime rate not including ADP except that in the situation where an employee normally receives ADP and is working an overtime assignment that is the same function for which he receives ADP, the overtime shall be paid at the employee's overtime rate including ADP.

Members transferring for the first time to the Traffic Section or any investigative unit will receive four percent (4%) increase in pay for the first year and another four percent (4%) increase in pay thereafter while so assigned.  Members who are transferring from one ADP assignment to another ADP assignment, regardless of bureau, will maintain their eight percent (8%) increase.

|  | First time assigned | After one year |
|---|---|---|
| Police Officer II (A-2) | 4% | 8% |
| Corrections II (A-2) * <br>(Applies to Intel and Policies and Procedures) | 4% | 8% |
| Motorcycle Officer | 4% | 8% |
| Helicopter Pilot | 8% | n/a |
| Resident CO/PO Officer | 20% | n/a |
| Police Field Training Officer (FTO) | 8% | n/a |
| Corrections Field Training Officer (CFTO) | 8% | n/a |

All resident officers currently receiving resident ADP, will continue to receive their 20% ADP so long as they remain in their current assignment.

Any new resident officers assigned to: Moapa, Logandale, Overton or Laughlin will receive resident officer 20% ADP.  Within six (6) months of the assignment, new officers assigned to these areas must establish residence in a location that will allow a 30 minute response time to the resident area of responsibility to retain the 20%.

*Annotation: Any new resident officers assigned to: Mt. Charleston, Blue Diamond, Jean, Stateline and Indian Springs after September 13, 2013, will no longer receive 20% ADP. Any new officers assigned to Sandy Valley after July 1, 2014, will no longer receive 20% ADP.*

*Corrections Officer IIs assigned where they work side-by-side and perform the same tasks as a Police Officer II who is receiving assignment differential pay will also receive assignment differential pay under the terms set out in this section.  Eligibility under this paragraph is based on an assignment greater than 30 calendar days.

ADP assignments are not promotional and, therefore, no property right exists.  Additionally, employees shall only be paid ADP for the duration of their ADP assignment.

***13.3 Longevity.***  The longevity pay for employees shall be paid on the following basis: Upon completion of ten (10) consecutive years of employment, covered employees shall be paid the equivalent of an additional five percent (5%) of their pay period base salary.

For each continuing year of consecutive service thereafter, each employee shall receive an additional one-half of one percent (0.5%) increase of the base salary until a maximum of 15% has been reached.

In FY 2011-2012 and FY 2012-2013, the .5% longevity increase employees were to receive in those years was reduced by half so that employees received .25% in FY 2011-2012 and .25% in FY 2012-2013. As a result of this modification where an employee received half of a longevity increase over a two-year period, the employee will still reach the maximum 15% but, under normal circumstances, will reach the total amount one year later than they normally would have.

Longevity pay shall become effective in the pay period in which the employee's date of hire falls.

Employees hired on or after October 24, 2011 will not be eligible for compensation under this section.

### 13.4 Jury/Court Pay.

*Jury* - Eligible members called to serve on jury duty on a normally scheduled shift shall receive their regular pay as well as all jury pay. Those persons called but not selected to serve on the jury shall report back to work when excused.

*On-Duty Court* - Eligible members subpoenaed to appear on duty as a witness in a criminal proceeding connected with official duties, and who are not a party in such criminal proceeding, shall receive their regular pay providing that all witness fees or pay are returned to the Department. Employees shall report to work when excused.

*Off-Duty Court* - Eligible members required to appear off-duty in court as a witness for the prosecution or defense, connected with official duties, shall be paid overtime for all hours while off-duty and no additional compensation once the employee begins his/her regular duty schedule. If the eligible member's entire appearance is made while off duty, he/she shall be paid with a minimum of two (2) hours overtime. If the eligible member's appearance commences while off-duty, but continues into his/her regular duty hours, he/she shall be paid either the actual overtime worked or the $25 witness fee, whichever is greater. In either event, the eligible member shall also receive an hour (1) straight-time for duces tecum subpoenas. All witness fees shall be returned to the Department, except as described herein.

### 13.5 Retirement.
The Department and the Association agree that all employees shall participate in the Public Employees Retirement System of the State of Nevada in accordance with the rules of that system. The Department shall comply with all the provisions of N.R.S. 286.421 for the purpose of paying the employees' retirement contribution, but will not pay for the purchase of eligible prior service.

For the duration of this contract, any decrease in the percentage rate of the retirement contribution will result in a corresponding increase to each member's base pay equal to one-half (½) of the decrease. Any such increase in pay will be effective from the date the decrease in the percentage rate of the retirement contribution becomes effective.

### 13.6 Shift Differential.

Shift differential is defined as the amount of compensation authorized to be paid to an employee in addition to his/her regular straight time hourly rate for working a regularly scheduled shift other than day shift. Any regularly scheduled shift that begins or ends outside the 5:00 a.m. or 8:00 p.m. time period shall be eligible for shift differential pay computed at four percent (4%) of base, longevity and assignment pay. Eligibility for shift differential pay will be determined on a shift by shift basis.

Non-probationary employees that work a shift where their hours of work fully encompass the hours of midnight to 5:00 a.m. will receive an additional 2% differential.

Clark County Detention Center employees that are assigned the 12-hour graveyard shift that encompass the hours defined above for a 6% shift differential will receive the same differential for their eight (8) hour workday even though it does not fully encompass the hours of midnight to 5:00 a.m.

*Annotation: The above paragraph was adopted in June 2006 (mid term) to clarify how this shift would be paid for corrections officers working the late 12-hour shift.*

### 13.7 Spanish Pay.
Employees who translate and/or speak Spanish as a second language and who meet the

criteria set forth in this section will receive additional compensation. The compensation level for these employees will be $46.00 per pay period for speaking conversational Spanish. Proficiency exams will be administered by the Personnel Bureau as needed.

Such employees must pass a Department approved proficiency examination on conversational Spanish to receive payment.

*13.8 K-9 Pay.* K-9 handlers will receive ten (10) hours of paid overtime per pay period for the at-home care, grooming, transportation, and feeding of the dog. The handler will receive an additional five (5) hours of overtime per pay period if assigned a second dog, effective July 1, 2006.

*13.9 Education Incentive.* Effective July 1, 2014, employees who hold the following degrees on July 1st of each fiscal year shall receive one of the following lump sum payments on the first payday in August:

> • Any employee in the Unit who has received an Associate's Degree from an accredited college or university shall receive a sum of $600 per year in addition to his/her annual salary.

> • Any employee in the Unit possessing a Bachelor's Degree from an accredited college or university shall receive a sum of $1,200 per year in addition to his/her annual salary.

> • Any employee in the Unit possessing a Master's Degree or higher from an accredited college or university shall receive a sum of $1,467 per year in addition to his/her annual salary.

To be eligible for this lump sum payment the employee must be covered by this collective bargaining agreement on July 1, 2014.

Effective July 1, 2015, employees who hold the following degrees shall receive compensation as outlined below:

> • Any employee in the Unit who has received an Associate's Degree from an accredited college or university shall receive $23.09 per pay period in addition to his/her annual salary.

> • Any employee in the Unit possessing a Bachelor's Degree from an accredited college or university shall receive $46.16 per pay period in addition to his/her annual salary.

> • Any employee in the Unit possessing a Master's Degree or higher from an accredited college or university shall receive $56.43 per pay period in addition to his/her annual salary.

As soon as an employee provides the Department with a copy of his degree from an accredited college or university, he will be entitled to this additional compensation on his next paycheck.

*Annotation: The term "accredited" shall mean any accrediting entity recognized by the Department of Education or the Council for Higher Education Accreditation and degrees obtained outside the U.S. if the applicant submits an original, certified, sealed report from an academic credential evaluation agency recognized by the National Association of Credential Evaluation Services, the Association of International Credential Evaluators, Inc., or the International Academic Credential Evaluators, Inc.*

*13.10 Acting Pay.* Employees officially required to assume operational responsibilities of an established position of a higher grade shall be paid in accordance with the following policies:

a) If the assignment is for seven (7) consecutive calendar days or less, the employee shall receive his own regular rate of pay.

b) If the assignment is for more than seven (7) consecutive calendar days, the employee shall be paid at the rate of one increment above his own regular rate of pay retroactive to the date of the acting assignment and during the balance of the assignment.

The start of the consecutive calendar days shall occur based on the first day the employee is actually working and has assumed the operational responsibilities.

*13.11 Field Training Officer Pay.* Field Training Officer Pay is temporary monetary compensation of 8% paid to commissioned personnel who are working in a Field Training Officer (FTO) assignment or a Corrections Field Training Officer (CFTO) assignment.

Police Field Training Officers' assignments will be for a continuous six-month cycle. The six-month cycle may be extended when deemed necessary by the Department. Extensions will only occur as a result of continuation of training with the academy class associated with the initial assignment and will be in one month increments. At the conclusion of any given cycle, the Department, at its discretion, can decrease or increase the number of FTOs as required. Any FTOs assigned at any point during an existing cycle will receive FTO pay for the remainder of that cycle. Selection and assignment to the FTO positions will be based upon established Departmental procedures.

Corrections Field Training Officers' assignments will be for a continuous ten week cycle. At the conclusion of any given cycle, the Department, at its discretion, can decrease or increase the number of CFTO's as required. Any CFTOs assigned at any point during an existing cycle will receive FTO pay for the remainder of that cycle. The ten week cycle may be extended when deemed necessary by the Department. Extensions will occur as a result of the continuation of training with the academy class associated with the initial assignment and will be in one month increments. Selection and assignment to the CFTO positions will be based upon established Departmental procedures.

The Department recognizes employees may need extra training due to extended absences or other issues, and may require re-orientation. Re-orientation FTO or CFTO assignments will be for the period of time of the re-orientation training as established by the Bureau Commander.

FTO and CFTO assignments and corresponding compensation will be discontinued if the employee leaves the assignment and is no longer available to act in that capacity. Employees who are relieved of duty are not eligible for selection and assignment to an FTO or CFTO position, except for administrative relief of duty not involving allegations of misconduct.

## ARTICLE 14 - CLOTHING/EQUIPMENT ALLOWANCE

*14.1 Clothing and Equipment Allowance.* Effective July 1, 2014, the Department and the Association agree that employees shall be paid a yearly clothing/equipment allowance of $1,000 on the second check in July.

Motor officers and Mounted Patrol Unit officers will receive an additional $100 per year for the purchase of specialty boots.

Effective July 1, 2015, employees shall be paid a bi-weekly clothing/equipment allowance of $38.47. This is approximately $1,000 per year.

Motor officers and Mounted Patrol Unit officers will receive an additional $100 per year for the purchase of specialty boots. This $100 boot allowance will be paid once per year on the second check in July.

*14.2 Entitlement.* Officers are entitled to a prorated clothing allowance upon completion of the police or corrections academy and promotion to Police or Corrections Officer. Allowances will be prorated in accordance with adopted policy. Officers who are rehired under Civil Service Rule 350.5 are also entitled to a prorated clothing allowance.

## ARTICLE 15 - HEALTH & WELFARE BENEFITS

**15.1 Health Insurance.** The PPA will participate in the Las Vegas Metropolitan Police Department Employee's Health and Welfare Trust through at least December 31, 2014.

By December 31, 2014, a determination will be made as to whether the PPA's Health and Welfare Trust participants will join the Clark County self-funded health plan rather than have their benefits provided by the Trust. The PPA, the Department, the County and/or the City have the right to refuse to have the PPA participants join the Clark County self-funded plan.

If any of the above mentioned parties does not agree to this change, then Article 15 will immediately automatically re-open. The parties shall conduct the first negotiation meeting within 2 weeks of the decision not to change plans, and meetings thereafter shall occur at least once every 2 weeks. If the transition is not going to occur, the contribution rate defined below will continue into the Trust until a new agreement regarding Article 15 is ratified and approved by Fiscal Affairs.

If the parties all agree to this change, the transition will be accomplished at the earliest by January 1, 2015. If the transition cannot be accomplished by January 1, 2015 but is going to occur, the contribution rate defined below will continue into the Trust until implementation is completed.

**15.2 Contributions.** Effective July 1, 2014, the Department shall contribute $883.50 per employee per month to the Las Vegas Metropolitan Police Department Employees Health and Welfare Trust.

**15.3 Deductions.** The Department and the Association agree the Trust is authorized and responsible to determine contribution amounts for employee dependents. Once the dependent contribution amounts are established, whether retroactive or prospective, the Department is hereby authorized to automatically deduct from the paycheck of each employee in the bargaining unit the dependent contribution amount specified by the Trust. Prior to such deductions being made, employees will be given 30 days notice of dependent contribution changes to allow for optional withdrawal of coverage for dependent(s). If the parties agree that the PPA's Health and Welfare Trust participants will join the Clark County self-funded health plan, upon transitioning to the County plan, this language will no longer apply.

**15.4 Flexible Spending Account.** The Department is responsible for administering and maintaining a flexible spending account.

**15.5 Retirement Medical Trust Fund.** Effective July 1, 2002, the Association did join a trust fund for the purpose of funding health insurance coverage for retirees.

The above-referenced Retirement Trust is established for the purpose of subsidizing the retiree's cost of health insurance coverage for those who retire after July 1, 2001. The Retirement Trust has been established in accordance with federal and State laws applicable to employee benefit trust funds (26 USC 501(c)(9)). The monies contributed to the Retirement Trust shall be used only for retiree health insurance premiums or health service expenses. The employee's contribution shall be made by automatically deducting the specified amount from the paycheck of eligible employees prior to any taxes being withheld. The amount of the payroll deduction shall be determined by the Trust.

To be vested in the Retirement Trust, an employee must meet the minimum contribution requirement established by the Trust. Upon retirement of an employee who has not met the minimum contribution requirement, the Department may, with the employee's consent, deduct from the employee's sick leave cash out and contribute to the Retirement trust the amount necessary (as determined according to the rules of the Retirement Trust) to meet the minimum contribution requirement of the Retirement Trust.

*Annotation: All issues regarding the operation of the Trust are exclusive of this collective bargaining agreement. Final decisions on contributions, benefits, and Trust operations are the sole responsibility of the trustees of the Retirement Medical Trust Fund.*

# ARTICLE 16 - DISABILITY

**16.1 Service Connected.**  In the event an employee is absent due to a service-connected injury or illness, the benefits afforded this employee will be as follows:

> If the benefits paid to such employee under the provision of the Department Workers Compensation Program does not equal the employee's gross salary, the Department should pay to the employee an amount equal to the difference between the compensation received under Workers Compensation and the employee's then present gross salary, excluding overtime.   This compensation will continue for a period of 800 hours from the first day of absence.

> Employees who have completed ten (10) to 15 years of continuous full-time employment on the date of injury will have their salary compensated for an additional 200 working hours.  Employees who have completed in excess of 15 years of continuous full-time employment will have their salary compensated for an additional 120 hours plus the above 200 hours, totaling 320 hours.

> After the initial 800 hour period, sick and vacation leave will not accrue. At the time of bonus time accrual (employee's hire date) if an employee has more than three (3) shifts of non-accrual workers' compensation, they will not be eligible for bonus hours. This also applies to any approved extended hours.

**16.2 Compensation Integration.**  It is the intent of the Department to pay the on-the-job injured employee (as outlined in this Article) the difference between full base salary and that provided by the Workers Compensation as salary continuance.   Therefore, compensation integration shall continue as set out by the Department's workers compensation administrator, Health Section, statute, or SIIS (for past claims).

**16.3 Sick Leave Utilization.**  Upon the expiration of the covered salary protection period, if the employee is still unable to work, the employee may elect to utilize accrued sick leave.

When accrued sick leave has been exhausted, if the employee is still, because of disability, unable to work, the employee will be permitted to use all accrued vacation, bonus, and professional leave as sick leave. Subsequent to exhausting these leaves, the employee shall receive no additional compensation from the Department; however, exceptions to this rule may be allowed by the Sheriff.

**16.4 Compliance with Administrative Procedures.**  Before the Department grants these benefits, the employee shall comply with reasonable administrative procedures established by the Department.  The Department may also request, at its option and expense, the employee be examined by a physician appointed by the Department.  The examining physician shall provide to the Department and the employee a copy of his medical findings and his opinion as to whether or not the employee is able to perform his/her normal work duties and/or whatever, if any, work duties the employee is able to perform or unable to perform. The Department may further require such injured employee make him/herself available for light duty work as soon as possible after release by a qualified physician which may be either Department or employee appointed.

**16.5 Hours Computation.**  Compensable hours are for each injury or illness and hours necessary for subsequent medical attention because of the same injury will be accumulative.

# ARTICLE 17 - REDUCTION IN FORCE

**17.1 Notice to Association.**  Whenever it is determined that a layoff of employees may occur because of lack of work or funds, the Department shall give written notice of the layoff, including the reason(s) such action is necessary and the estimated length of the layoff period, to the Association Executive Director at least seven (7) calendar days prior to the date of notification to employees.

**17.2 Provisions.**  The Department and the Association agree that reduction in personnel as it pertains to employees covered under the provisions of this contract shall be as hereinafter prescribed.   When

bargaining unit positions are abolished, reductions shall be accomplished in accordance with the following provisions:

A.   **Seniority.**  Employees will be laid off within the classification selected for layoff based upon the employee's date of classification as a Police Officer or Corrections Officer as set out in Article 19 - Seniority.

B.   **Probationary Positions.**  Initial employment probationary positions within the bargaining unit shall first be eliminated.

C.   **Notice of Layoff.**  All non-probationary employees to be laid off shall be given written notice of such layoff at least 14 calendar days prior to the effective date.

D.   **Re-employment.**

*List* - The name of the non-probationary employee who has been laid off shall be placed on a re-employment list by classification and by seniority within that classification and, if that employee has not separated his employment, shall be recalled in the inverse order in which the employee was laid off. Persons on such a list will be offered appointment to an opening in the job classification and no new employee in the classification where the layoff occurred will be hired until all qualified employees on layoff status desiring to return to work have been offered the position. The employee must provide the employer with any address change while waiting for recall.

*Notice* - Notice of recall will be made in writing by certified mail, return receipt requested, to the employee's address of record.

*Response* - An employee who is sent notice of recall must respond within 14 calendar days of the date notice was sent. In the event the employee fails to respond within the 14 calendar day period, he/she will be considered to have abandoned his/her recall rights.

*Reporting Date* - An employee recalled to the employee's former job classification will be subject to a background update covering the time the employee was on lay off status. The employee must report for re-employment on the date established by the Department or be considered to have abandoned the employee's recall rights.

*Accruals* – At the time of layoff, the employee's leave balances may be paid off in accordance with the provisions set out in this Agreement for employees separating from the Department. An employee on layoff accrues no additional sick leave or vacation time. When an employee is recalled from layoff and re-employed, the employee is considered to have continuous service credit less the time spent on layoff, for computation of future earned vacations. Sick and annual leave will be reinstated in an amount equal to that as of the date of the employee's layoff if the employee did not receive a payout as described in 10.12 Cashout. In the event the employee received sick leave payout at the time of layoff, he/she may elect to pay back all or some of the cashout at the time of recall. In the event full reimbursement is made, the employee will remain eligible for sick leave payout as described in 10.12 Cashout. In the event reimbursement is not made or is not made in the full amount, the employee will be eligible to accrue the balance of the maximum allowable sick leave pursuant to 10.12 Cashout and will be eligible for sick leave payout of this remaining balance accrued (the maximum allowable less the amount cashed out at the time of layoff).

*Period of Eligibility* - Persons on a re-employment list shall retain eligibility for appointment for a period of three (3) years from the date their name was placed on the list.

*Merit Increases* - Upon returning to the employee's original job classification within the period of eligibility, the employee will be credited with prior seniority for the purpose of further movement on the salary schedule, not including the time spent on layoff.

*Seniority Date* - Upon return of a laid off employee, said employee shall receive the seniority that the employee had from the date of the original hire less the period of time that the employee was laid off.

*Appeal* - Any employee who is separated by reduction in force pursuant to this Article shall have the right to an appeal in accordance with Article 12 - Grievance Procedure regarding the application or interpretation of the Collective Bargaining Agreement if the employee believes the Department has not adhered to the provisions of this Article.

*Annotation: Employees are paid off for balances as provided in this contract when laid off. Reinstatement of time remaining will only apply to sick leave accruals that are not subject to payout. For example an employee with less than 10 years of service that is not eligible for a payout.*

**17.3 Seniority Lists.**  Whenever it is determined that a layoff of employees shall occur, the Department agrees to supply current time in classification seniority lists to the Association for the jobs being affected.

**17.4 Specialized Assignments.**  Whenever it is determined that a reduction of employees in specialized assignments (including TADs) may occur because of lack of work or funds, the following order of reduction will apply:

> Employees with less than three (3) years in the unit, will be removed based upon Department seniority as set out in Article 19 – Seniority.

> If further reductions are necessary after all employees with less than three (3) years in the unit have been removed, employees with three (3) or more years in the unit will be removed based upon Department seniority as set out in Article 19 – Seniority.

The name of the employee who has been removed from a specialized assignment under this provision shall be placed on a re-assignment list which takes precedence over the existing transfer list. When moving employees back into the specialized assignment from this list, employees will be called back to the assignments in inverse order during the life of the existing transfer list. If no active list exists, or if an active list expires, then employees removed under this provision will be required to test for the position.

*Annotation: Any Correction Officers who have been removed from a TAD position shall be entitled to be recalled to complete the remaining time in the assignment.*

# ARTICLE 18 - HOURS

**18.1 Work Week.**  The Department and the Association agree that the normal paid weekly working hours shall be 40. However, if mutually agreed, an alternate work schedule of 80 hours bi-weekly may be utilized. The start of a work week for an employee begins following his/her regular days off, at the start of his/her scheduled shift; and ends upon the completion of the last scheduled shift before his/her next scheduled regular days off.

The Department has adopted the FLSA 7(k) exemption for officers working in the resident program and they, therefore, have a 28 day work period.

*Annotation:  The FLSA 7 (k) exemption has been Department policy since the Fair Labor Standards Act has applied to local government. The term "7(k)" refers to the section of FLSA, 29 USC 207(k), where these requirements are found.*

**18.2 Tour of Duty.**  A tour of duty or shift shall be defined as the span of hours during which an individual, or unit, is assigned to work.

**18.3 Tour of Duty Change.**  Employees will be notified of a tour of duty change at least 12 hours in advance of that change. Voluntary transfers and overtime shall be excluded. Involuntary transfers will require 14 days advance notice of the specific area, shift and RDO's of the new assignment. Any change to an employee's tour of duty with less than 12 hours advance notice is subject to either the overtime provision or callback provisions below.

**18.4 Overtime.**  Overtime pay is defined as additional compensation earned by an employee who is held over on his regularly scheduled tour of duty, or is requested to return to duty at a time that is more than 12

hours after notice is given. The employee will be compensated at time and one-half (1½) for their regular rate of pay. Regular rate of pay is defined as the rate of pay an employee would receive if he/she was actually working a shift and includes the following: the employee's base pay, longevity, shift differential, and Assignment Differential Pay. The Department has adopted the FLSA 7 (k) exemption for law enforcement officers. Under this exemption, officers working in the resident program will receive overtime for any hours over 171 hours in a 28 day work period. This exemption for resident officers does not apply to reimbursable overtime assignments. Eligibility for reimbursable overtime ADP is addressed under Article 13.2.

An employee will not earn overtime unless they have worked or been in paid status for 80 hours in the pay period.

Officers who voluntarily sign up for overtime and are called to work the overtime, are not entitled to travel time or callback pay.

***Compensatory Time.*** Overtime (excluding callback and reimbursable hours) may be paid in the form of compensatory time off. Employees will have the option of choosing whether overtime hours worked will be paid or accumulated as compensatory time - this selection is irrevocable except under the following circumstances:

    A.    Death of the employee (in this event, payment will be made to the beneficiary);

    B.    Involuntary separation of the employee;

    C.    The Department may specify that some voluntary overtime assignments may only be paid as compensatory time; or

    D.    In some circumstances, such as New Year's Eve, where overtime is mandatory, the Department may require that the overtime be paid.

Compensatory time will be accumulated at one and one-half (1½) times hours worked and will not accumulate beyond 48 hours. The scheduling of compensatory time off will be done in the same fashion as vacation leave scheduling.

All time off scheduling will default to compensatory time first unless it would result in the loss of vacation leave accrual. Compensatory time will also be used as a first default when sick leave is exhausted.

Accumulated compensatory time must be utilized prior to separation from the Department. In the event an employee cannot be scheduled this time off prior to separation, the employee will be paid for accumulated comp time remaining on the books.

*Annotation: The FLSA 7 (k) exemption has been Department policy since the Fair Labor Standards Act has applied to local government.*

**18.5 Callback.** When required, the Department Head or his designated representative may call back one or more members of the Department. For purposes of this paragraph, callback is defined as compensation earned for returning to duty after an employee has completed his/her regular tour of duty, is off duty for any period of time, and is requested to return to duty with less than 12 hours notice. When an employee is called back to work, the employee shall be paid overtime on a time and one-half (1½) rated basis. The employee will be paid for a minimum of four (4) hours regardless of having worked less than four (4) hours or the employee will be paid for the amount of time actually worked over the four (4) hours; however, in the event the period of call back runs into an employee's normal tour of duty, such employee shall be paid time and one-half (1½) for only those hours worked outside of his/her normal tour of duty.

An employee who works less than four (4) hours on the initial call-out and is then called out a second time during the initial two-hour period shall not be entitled to any additional overtime pay unless the aggregate time worked for both occurrences shall exceed four (4) hours, in which case he/she shall be paid for the aggregate time so worked. In the event an employee is called out for a second time after the expiration of four (4) hours from the first call-out, he/she shall be paid for a minimum of four (4) hours for each call-out except as provided in the previous paragraph.

# ARTICLE 19 - SENIORITY

***19.1 Definition.***   Seniority shall be determined based upon the employee's date of classification as a Police Officer or Corrections Officer. In the event of any sort of reduction-in-grade, this determination will include any time the employee accrued in the class series as a Sergeant, Lieutenant, or Captain, so long as there has not been a break in service.

Where employees are hired on the same date, seniority will be determined by their placement on the Civil Service eligibility list. Placement on the eligibility list is determined by overall score in the entry examination process. In the event of ties, the date and time of the employee's application for employment with respect to the eligibility list in question will be the determining factor.

Seniority for police officers will be based on promotion to a Police Officer 1 and ranked in the following order:

1.   Corrections officers reducing in grade to Police Recruit;
2.   Military deferrals from previous eligibility lists;
3.   Cadets promoting to recruit;
4.   Recycled recruits;
5.   Ranking on the eligibility list.

Seniority for corrections officers will be based on promotion date to a Corrections Officer 1 and ranked in the following order:

1.   Military deferrals from previous eligibility lists;
2.   Recycled corrections recruits;
3.   Ranking on the eligibility list.

Employees who have been rehired as a police or corrections officer, the seniority date will be the employee's current hire date. In the event there are two or more rehires on the same day, the officers will be ranked according to prior service time in classification.

***19.2 Bridging Time.***   Employees on the Department's payroll as of June 30, 1982, who have had a break in service, shall have seniority determined as if their combined years of service were continuous and without break. For persons hired or rehired on July 1, 1982, or thereafter, any break in service shall not be bridged for the purpose of determining seniority. Except as provided in this section, seniority shall be calculated based upon the employee's current date of hire. Ties regarding seniority ranking are resolved as provided in the Civil Service Rules.

***19.3 Application.***   In the selection of days off, in lieu of holiday, compensatory time, bonus time, professional leave and vacation leave preference, first choice shall be given those employees holding the greatest amount of seniority as determined in 19.1 Definition and 19.2 Bridging Time.

*Annotation: In 2005, the parties added the ability to use seniority for the selection of in lieu of holidays; however, once the holidays are scheduled no bumping can occur.*

A.   Patrol Division Bump

Upon graduation from FTEP, and once placed in their initial assignment on a scheduled bloom transfer date, officers assigned to the Patrol Division may use their seniority to select shifts and days off within their Area Command, once annually. The parameters for bidding for available shifts and days off will include the following:

- If there is a supervisory employee bump, the Patrol Division Bump shall not occur until all supervisory employees have completed their bump and their new assignments have been published. Once all new assignments have been published, all employees including supervisors will move on the same date.

- Bidding will be allowed for all Patrol officers. However, those officers, other than regular patrol, who are assigned to special units and/or assignments (e.g., activated FTO, bike, utility PSU, and COP, etc.) shall bid within their own special unit and/or assignment.

- Bidding outside the Patrol Division does not fall within this requirement, but when bidding for shifts is an option, the Section/Unit supervisors may establish the process they deem appropriate.

- As a rule, no bumping will be allowed during the bid year, but accommodations can be made where applicable. Employees will be allowed to move during the bid year based upon their seniority and openings within the area command.

- At anytime between bids, the Department retains the right to change an officer's shift and/or days off based on a documented special or operational need.

- In the event an officer transfers from a special assignment to Patrol, the officer would move to an open position in Patrol. The Patrol Deputy Chief will designate which positions are open and available. Under this circumstance, the employee will be allowed to bid during the next regularly scheduled cycle. When transferring to Patrol from a specialized assignment, an officer will have a choice of area command if a position is available. Seniority shall also apply when exercising such choice.

- Patrol will maintain an on-going registration for area command to area command transfers, with special emphasis on opportunities for accommodating requests at or near the time of the FTEP graduations. If, at any time during the year, there are available positions as determined by the Deputy Chief of Patrol, transfers will be accommodated and an officer can utilize seniority to affect such transfers. Additionally, patrol will continue the practice of allowing officers to make a one-to-one swap in area commands as governed by the Deputy Chief of Patrol.

B.    Detention Services Division Bump

Upon graduation from CFTEP, and once placed in their initial assignment on a scheduled bloom transfer date, officers assigned to Detention Services Division (DSD) may use their seniority to select the bureau, shift and days off within the DSD, once annually.  The parameters for bidding for available bureaus, shifts and days off, will include the following:

- Bidding will be allowed for all DSD officers.  However, those officers, other than regular DSD officers, who are assigned to special units and/or assignments (e.g., Field Services Section, Classification, House Arrest, etc.) shall bid by seniority within their own special unit and/or assignment.

- As a rule, no bumping will be allowed outside the annual bid during the bid year, but accommodations can be made where applicable.  Employees will be allowed to move during the annual bid year based upon their seniority and available openings within the bureau.

- At anytime between bids, the Department retains the right to change an officer's shift and/or days off based on a documented special or operational need.

- When an officer is scheduled to transfer out of a special or temporary assignment to duty (TAD) during the annual bump, that officer will complete a Detention Division bid sheet (12 slots) and be placed according to their seniority to bid for bureaus, shift, and days off within the DSD.

- DSD will maintain an on-going registration for bureau to bureau transfers within the DSD, with special emphasis on opportunities for accommodating requests at or near the time of the CFTEP graduations.  If, at any time during the year, there are available positions as determined by the Deputy Chief of Detention, transfers will also occur.  When executing transfers, preference will be given to those within the bureau, by seniority, over those from outside the bureau.  Additionally, DSD will continue the practice of allowing officers to make a one-to-one swap in bureaus as governed by the Deputy Chief of Detention.

- In the event an officer transfers out of a special or TAD assignment at a time other than the annual bump:

  o   Those officers leaving a completed TAD assignment will be allowed to use their seniority to select from the open and available positions within DSD (as determined by the Deputy Chief) and will be considered to be in all the bureaus, thus eliminating the "in-bureau preference provision."

  o   Officers requesting to transfer from a TAD assignment prior to its completion will select from the open and available positions within the DSD as determined by the Deputy Chief.

Use of seniority will be allowed for Corrections Officers coming out of special assignments to bid between annual bumps for open available positions.   The Deputy Chief of Corrections will designate which positions are open and available.

*Annotation: It is recognized that the North Valley Complex may be opened during this contract.  If the complex opens, the Detention Division bid sheet will reflect that bureau, shift and days off.*

C.     Patrol Division Vacation Bidding

Employees will be allowed to bid for vacation based on seniority. Leave slips for vacation may be submitted up to six (6) months in advance of a vacation. Once approved by an employee's supervisor, no other leave by another employee, even if senior, may supercede this approved leave. An employee may bid a single shift or more as a vacation. Vacation bidding shall include bidding for bonus time, professional days and compensatory time.

D.     Detention Services Division Vacation bidding

Vacation bidding in Detention Services Division will occur by seniority as specified below:

> During the annual vacation bid, the employee will be allowed to bid for a combined total of two hundred and eighty hours (280) over three (3) separate bid processes. On the first bid process, employees will be allowed to bid up to a total of one hundred sixty (160) hours for up to four (4) separate blocks of time. On the second bid process, eighty (80) hours for up to two (2) separate blocks of time. On the third time through the bid process, the employee can have up to a total of another forty (40) hours for one (1) block of time. A block of time is defined as a single shift or more, that is separated by an officer's RDO's. A block of time cannot be added before or after an officer's RDOs so as to count as a continuous single block of time. Officers cannot bid for more vacation time than will be accrued at the time the officer's vacation starts.

> If a vacation spot is canceled, that vacation time will be made available and can be requested via memo to the shift lieutenant. The request must be sent via department e-mail, with the memo attached, to the respective shift lieutenant in order to record the time and date sent/received. Priority will be given based upon the earliest request.

> Officers are responsible for the management of their own vacation time, compensatory time, and bonus time accruals to ensure vacation caps are not exceeded at year's end.

> *Annotation: Additional guidelines are outlined in a Memorandum of Understanding that was signed by the Department and the Association dated April 23, 2014. That MOU and those guidelines remain in effect and will be followed and adhered to in implementing the vacation bidding process at CCDC.*

E.     Disputes

Any disputes that may arise regarding the application of seniority may only be processed as a grievance to the appropriate Deputy Chief and will not be subject to any further appeal.

# ARTICLE 20 - ACCIDENT PREVENTION BANK

**20.1 Accident Prevention Bank.** Employees will be rewarded for non-negligent and/or an accident-free department driving record. The reward will be the ability to accrue hours that will be banked for use in the event they receive a disciplinary suspension for a traffic accident.

**20.2 Accrual and Use of Hours.** Hours will only be accrued on a non-negligent and/or an accident-free basis and will be credited at the end of a two (2) year eligibility period. This eligibility period is established based on an employee's graduation date from the academy. All hours will be recalculated based on this formula.

Based on the above parameters, employees will accrue 20 hours of bank time per two (2) year period. The maximum accrual will be capped at 40 hours.

These hours may be used at the employee's option for disciplinary suspensions applied for traffic accidents and will not be used for any other purpose (i.e., the hours will not be compensated under any circumstance). This benefit will have no effect on decisions made by the Accident Review Board; however, the Accident Review Board will be responsible for determining the amount of hours an employee has in his/her bank based on the formula set out above and the accident records maintained by the Board.

# ARTICLE 21 - LABOR/MANAGEMENT COMMITTEE

*21.1 Meetings.* A standing Labor/Management Committee made up of representatives of the Department and the Association shall meet at a mutually agreed upon time and place. The meetings will be set by the Executive Director of the Association or his/her designee and the Director of Labor Relations. The Labor/Management Committee will be comprised of the Executive Director of the Association/designee, the Director of Labor Relations, and any division commander that would be involved in the subject matter to be discussed. In addition to what is set out above, others may be asked or required to attend and participate in these meetings. It shall be the responsibility of the respective parties to notify the constituents they believe are needed to attend such meetings.

*21.2 Purpose.* The purposes of such meetings may be to:

- Discuss the administration of the Agreement;

- Notify the Association of changes made or contemplated by the Department which may affect the working conditions of employees represented by the Association;

- Disseminate general information of interest to the parties; and

- Give the Association representatives the opportunity to share the views of their members and/or make suggestions on subjects of interest to their members.

- Either party may raise an issue at a Labor/Management Committee meeting and if an issue is raised it will be discussed.

*21.3 Notice to Supervisors.* To facilitate the adjustment of work schedules, the Association's representatives will notify their immediate supervisors of the dates and times of such meetings.

*21.4 Compensation.* Association committee members shall not lose pay nor be entitled to overtime for the time spent in any meetings authorized by the provisions of this Article.

*21.5 Resolutions.* All items resolved by the parties at the meetings will be distributed to the Association and Department members as appropriate.

# ARTICLE 22 - DUTY WEAPON

*22.1 Maintenance.* Aside from general upkeep and cleaning, the Department will be responsible for maintenance of weapons. Any mechanical problems with weapons shall be referred to the Department armorer.

*22.2 Replacement.* Any weapon that is damaged or destroyed as a result of a duty related incident will be replaced by the Department.

*22.3 Stock.* The Department will stock a sufficient number of replacement weapons for temporary use when weapons become unserviceable.

*Annotation: The voucher program that was part of this Article was deleted in 2005 as the annual clothing/equipment allowance was enhanced to provide sufficient monies for purchase, maintenance and replacement of personal weapons.*

# ARTICLE 23 - TRANSFERS

The Association and the Department agree there are three types of transfer - voluntary, administrative, and disciplinary.

Administrative transfers occur as a result of an action to enhance operations, further the Department's mission, or improve efficiency and effectiveness.  The parties agree these types of transfers from specialized units will be evaluated for necessity.  Administrative transfers will be approved at the Bureau Commander level; the employee will have the ability to review that decision to the Deputy Chief. Generally, administrative transfers do not occur as a result of single events or incidents.

Disciplinary transfer is an option which may occur where it is determined that an employee's conduct or performance warrants that level of discipline.  Disciplinary transfers are appealable pursuant to Article 12.

The Association understands that assignments are not a property right whether or not an assignment differential is applied.  Despite this, the Department will work to avoid transfers that cause a loss of pay if another form of discipline can be applied to correct the problem.

# ARTICLE 24 - RANDOM DRUG TESTING

*24.1 Parameters.*  Department Procedure 5/110.26 specifies the procedures for random drug testing.  In addition to this procedure, the following parameters will apply under this contract:

The random drug testing program shall only apply to illicit drugs as set out in Procedure 5/110.26.

- Covered employees will be randomly selected based on assignment/unit and required to provide a sample. Refusal to test or substantial evidence indicating alteration or adulteration of the sample will be cause for termination. Substantial evidence of alteration or adulteration at the collection site and laboratory means evidence which would support a reasonable conclusion that adulterants or foreign substances were added to the urine, that the urine was diluted, or that the specimen was substituted.  If there is articulable reasonable evidence at the collection site and/or laboratory that there has been an alteration or adulteration of a sample, the sample alleged to have been altered or adulterated will be secured and processed under the same standards and process as if the sample was a proper urine sample; however, the Chain of Custody and Control Form used in submitting the specimen for testing will be labeled **SUSPECTED ALTERED/ADULTERATED SAMPLE.**  The collector will write the reasons describing what factors led the collector to suspect alteration or adulteration on the form. The employee will be required to submit another sample if alteration or adulteration is suspected at the collection site.

  Any alteration or adulteration allegation will be cause for an internal investigation to determine whether there is substantial evidence to demonstrate whether the employee altered or adulterated his/her sample.  In any event, the employee retains all rights provided them by his/her collective bargaining agreement and the Department manual.

  An employee will not be ordered or required to disclose protected health information and maintains his/her rights to privacy under the Health Insurance Portability and Accountability Act of 1996 (HIPAA), federal law, or Nevada state law.

- The employee who tests positive will be subject to termination, subject to the provisions of Article 12 of this agreement.

- As a result of a verified positive test, the employee will have the option of resigning his/her employment.

*24.2 Voluntary Identification.* An employee may voluntarily identify himself/herself as an abuser of prescription drugs prior to being identified through other means. Such self-identification may occur through any person in the employee's chain-of-command or an Association representative. Under these circumstances the employee will participate in a mandatory rehabilitation program paid for by the employee and/or the appropriate health insurance carrier. The employee will also be subject to the conditions of a last-chance agreement, limited only to the issue of a repeated instance of prescription drug abuse, which will include unannounced testing for a two (2) year period. Because a last-chance agreement is provided in lieu of a termination, no other discipline will be applied in conjunction with the last-chance agreement. A last-chance agreement, as provided herein, will remain in an employee's personnel file for the duration of his/her employment or re-employment.

Voluntary identification of the use of illicit drugs will subject the employee to termination.

## ARTICLE 25 - GENERAL PROVISIONS

*25.1 Savings Clause.* The Department and the Association do agree that if any provision of the Agreement is subsequently declared by the proper legislative or judicial authority to be unlawful, unenforceable, or not in accordance with applicable statutes or ordinances, all other provisions of this Agreement shall remain in full force and effect for the duration of the Agreement. Should such a declaration occur, the parties agree to negotiate a successor for the clause in question. This Agreement shall become effective only when signed by the designated representatives of the Department and the Association.

*25.2 Contract/Civil Service Rule Duplication.* The Department and Association agree that matters subject to bargaining under N.R.S. 288.150 which are in this contract will supersede any corresponding Civil Service Rule of the Department for all Department employees represented by the Association.

*25.3 Personnel Files.*

*Employee Access.* Each employee shall, during normal business hours of the Labor Relations Section, have a right to access his or her own personnel file by appointment.

*Employee Copies.* The contents of personnel records shall be made available to the employee for inspection and review at the time of his/her appointment. At an employee's request, he or she shall be provided one (1) copy of any or all documents posted in the employee's file.

*Rebuttal Statement.* Before an adverse comment or document can be put into an employee's personnel file, the employee must be made aware of the comment or document by having read the comment or document and initialed or signed the same. An employee has the right to refuse to sign the comment or document after reading it, and the fact that the employee refused to sign the comment or document shall be noted on the face of the document itself. The employee may file a written response that is specific to the adverse comment or document entered into his/her personnel file within 30 days after he or she is asked to initial or sign the comment or document. If a written response is prepared by the employee, the Department must attach the employee's written response to the adverse comment or document. All formal disciplinary actions shall be recorded in the employee's personnel file and shall constitute the official record to be utilized in disciplinary proceedings.

*Access by Others.* The only other persons permitted to have access to the contents of an employee's personnel file, excluding background investigations and references from previous employers, are a designated representative of the employee having the employee's signed authorization and the Department's authorized staff, which may include outside legal counsel.

An employee's physical file shall not be made available to any persons or organizations other than the Department and the employee without the employee's expressed authorization, unless pursuant to a court order or other statutory requirements.

*Purging.* All disciplinary matters will be removed from the personnel file at the following times and under

the following conditions.  A subsequent discipline of a similar nature is defined as a disciplinary action that is similar because it is:

- a performance issue;
- misconduct issue as defined in Civil Service Rule 510; or
- adjudicated through the Accident Review Board process.

Aside from the separate categories set out above, extension retention in the personnel file will occur in both the area of performance or misconduct if there is a reasonable similarity.  For example, a performance discipline will extend a misconduct discipline if it is reasonably similar to the performance discipline in question.

Written Reprimand - 18 months after the date the employee signs or is given the opportunity to sign the adjudication or three (3) months after the filing of the statement of complaint.  The earlier of these two dates will start the purge period.  Any subsequent discipline of a similar nature shall extend the purging of the original discipline by another 12 months or the purge length of the latest disciplinary action, whichever is shortest.

Minor Suspension - three (3) years after the date the employee signs or is given the opportunity to sign the adjudication or three (3) months after the filing of the statement of complaint.  The earlier of these two dates will start the purge period.  Any subsequent discipline of a similar nature shall extend the purging of the original discipline by another 24 months or the purge length of the latest disciplinary action, whichever is shortest.

Major Suspension - five (5) years after the date the employee signs or is given the opportunity to sign the adjudication or three (3) months after the filing of the statement of complaint.  The earlier of these two dates will start the purge period.  Any subsequent discipline of a similar nature shall extend the purging of the original discipline by another 24 months or the purge length of the latest disciplinary action, whichever is shortest.

Disciplinary Transfer - two (2) years after the date the employee signs or is given the opportunity to sign the adjudication or three (3) months after the filing of the statement of complaint.  The earlier of these two dates will start the purge period.  Any subsequent discipline of a similar nature shall extend the purging of the original discipline by another 24 months or the purge length of the latest disciplinary action, whichever is shortest.

In all circumstances where investigations are delayed because of a criminal investigation, the purging date will begin the date the employee signs or is given the opportunity to sign the adjudication, or three (3) months after the completion of the criminal investigation or the date Internal Affairs is cleared to conduct their investigation.  The earlier of these dates will start the purge period.  In cases of any extended period of absence of the employee, the purge period will begin the date the employee signs or is given the opportunity to sign the adjudication.

A contact report will not be maintained in the personnel file.  Contact reports in a supervisory file may be utilized to show that discipline was warranted.

Purged documents may be retained by the Department pursuant to any applicable statutory document retention schedules; however, such documents may not be used by the Department for disciplinary purposes in the future.   Evidence of purged discipline can only be raised for rebuttal purposes in an administrative hearing if the employee claims he/she has no disciplinary history.

*Annotation: It was understood by the parties that purging of Internal Affairs files directly associated with the disciplinary actions mentioned above will be purged in like fashion.*

*Changes in the purge criteria that were adopted on 2011, are applied prospectively for disciplinary actions taken on or after July 1, 2011. All other disciplinary actions will be purged under the schedule that was in place at the time the disciplinary action was taken.*

***Notice of Placement of Item in File.*** No unfavorable comment or document will be placed in the file unless:

    a) The officer has read and initialed the comment or document; or

    b) If the officer refuses to initial the comment or document, a notation to that effect is noted on or attached to the comment or document.

An employee must be given a copy of any adverse comment or document that is placed in his/her personnel file.

No citizen complaint shall be placed in an employee's personnel file.

***Official File.*** Only one official personnel file shall be maintained on a bargaining unit member.

***Information Contained in File.*** Personnel investigations that result in "exonerated", "unfounded", or "not sustained" dispositions shall not be made a part of the employee's personnel file or supervisor's file. Additionally, "exonerated", "unfounded", or "not sustained" complaints shall not be used as a basis for a subsequent discipline nor shall they be used as evidence in a subsequent investigation on a different matter.

### 25.4 Performance Appraisals.

Signatures and Rebuttal

The evaluation shall be completed by the employee's immediate supervisor, as the rater, on a form prescribed by the Department. Once the evaluation is completed, it will be examined by the reviewer. Once finalized, the evaluation will be signed by the rater and reviewer, then presented to the employee for signature. The employee shall indicate agreement or disagreement with the evaluation, and shall sign the evaluation which indicates that the individual has read the contents of the evaluation. Employees may attach a rebuttal within 30 calendar days of receipt of the evaluation. The rebuttal may only contain information specific to issues addressed in the evaluation. No comments are to be added after the employee has signed the report. All evaluations shall comply with the Department guide to performance appraisals.

Appeal

If an employee disagrees with his/her appraisal, he/she may request, *in writing*, a review. Any performance appraisal proven to contain an error or improper reference, through this process, shall be corrected. Any appraisal ordered corrected will have ALL records related to the process purged from the employee's personnel file.

Step 1    All performance appraisals shall be discussed with the chain-of-command above the reviewer. The written request shall be dated and delivered within 15 calendar days of receipt of the appraisal, based on the date the employee signed the appraisal.

           Within 15 calendar days of receipt, that level of supervision will investigate to determine if the appraisal contains error of fact or improper reference and then meet with the employee to explain the results of the investigation.

           If the issue is not resolved at this level, the employee will receive the written response including the summary of findings within 15 calendar days of that meeting.

Step 2    The employee may initiate this with the next level of supervision within 15 calendar days of receipt of the written response/summary from step one. At this level, the supervisor shall schedule

a meeting with employee within 15 calendar days to attempt to resolve the issue. The supervisor will provide the employee a written response within 15 days of the meeting.

This is the final step of the procedure and cannot be grieved. In no event will an appeal go beyond the level of the Undersheriff. However, if the employee is not satisfied with the response of the supervisor, the employee may still file a rebuttal as specified above within 30 days of the final written response.

Time Limits: Time limits may be extended only by written mutual agreement of both parties. If a request is not processed by the department within the time limits set forth above, it will be deemed conclusive in the employee's favor and ordered corrected.

If a request is not processed by the association within the time limits set forth above, performance appraisal will be sustained as written.

*25.5 Legal Representation.* The parties agree to discuss the payment of legal representation fees in the event an employee is charged with a crime that results from the course and scope of duties.

## ARTICLE 26 - TERM OF AGREEMENT

This Agreement shall become effective as of July 1, 2014, except as otherwise set out in the agreement or as directed by the interest arbitration process and shall be effective through June 30, 2016. This agreement shall remain in full force and effect during negotiations for a successor agreement with the exception of any compensation other than regular rate of pay as defined in Article 10.12 Cash Out.   Retroactivity provided herein shall only apply to employees of the Department as of the date of the signing of this agreement.


For the Department

Douglas C. Gillespie
Sheriff


For the Association

Chris Collins
Executive Director


For the Fiscal Affairs Committee

Jim Hammer
Chairman

# ATTACHMENT A

## Salary Schedule

| PPA Effective 07/01/14 - 06/30/15 (1.5% COLA) | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Sch. | Step 1 | Step 2 | Step 3 | Step 4 | Step 5 | Step 6 | Step 7 | Step 8 | Step 9 | Step 10 |
| M20 | 24.90 | 25.89 | 26.93 | 28.00 | 29.11 | 30.29 | 31.50 | 32.76 | 34.06 | 35.43 |
| M21 | 27.45 | 28.53 | 29.69 | 30.88 | 32.09 | 33.38 | 34.71 | 36.10 | 37.56 | 39.07 |

| PPA Effective 07/01/15 - 06/30/16 (2% COLA) | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Sch. | Step 1 | Step 2 | Step 3 | Step 4 | Step 5 | Step 6 | Step 7 | Step 8 | Step 9 | Step 10 |
| M20 | 25.40 | 26.41 | 27.47 | 28.56 | 29.69 | 30.90 | 32.13 | 33.42 | 34.74 | 36.14 |
| M21 | 28.00 | 29.10 | 30.27 | 31.50 | 32.73 | 34.05 | 35.40 | 36.82 | 38.31 | 39.85 |

# ATTACHMENT B

## NRS 289.010 through 289.120

### GENERAL PROVISIONS

**NRS 289.010  Definitions.**  As used in this chapter, unless the context otherwise requires:

1.   "Administrative file" means any file of a peace officer containing information, comments or documents about the peace officer. The term does not include any file relating to an investigation conducted pursuant to NRS 289.057 or a criminal investigation of a peace officer.

2.   "Choke hold" means the holding of a person's neck in a manner specifically intended to restrict the flow of oxygen or blood to the person's lungs or brain. The term includes the arm-bar restraint, carotid restraint and lateral vascular neck restraint.

3.   "Peace officer" means any person upon whom some or all of the powers of a peace officer are conferred pursuant to NRS 289.150 to 289.360, inclusive.

4.   "Punitive action" means any action which may lead to dismissal, demotion, suspension, reduction in salary, written reprimand or transfer of a peace officer for purposes of punishment.

### RIGHTS OF PEACE OFFICERS

**NRS 289.020  Punitive action: Prohibited for exercise of rights under internal procedure; opportunity for hearing; refusal to cooperate in criminal investigation punishable as insubordination.**

1.   A law enforcement agency shall not use punitive action against a peace officer if the peace officer chooses to exercise the peace officer's rights under any internal administrative grievance procedure.

2.   If a peace officer is denied a promotion on grounds other than merit or other punitive action is used against the peace officer, a law enforcement agency shall provide the peace officer with an opportunity for a hearing.

3.   If a peace officer refuses to comply with a request by a superior officer to cooperate with the peace officer's own or any other law enforcement agency in a criminal investigation, the agency may charge the peace officer with insubordination.

**NRS 289.025  Confidentiality of home address and photograph of peace officer in possession of law enforcement agency; exceptions.**

1.   Except as otherwise provided in subsections 2 and 3 and NRS 239.0115, the home address and any photograph of a peace officer in the possession of a law enforcement agency are not public information and are confidential.

2.   The photograph of a peace officer may be released:
     a)   If the peace officer authorizes the release; or
     b)   If the peace officer has been arrested.

3.   The home address of a peace officer may be released if a peace officer has been arrested and the home address is included in any of the following:
     a)   A report of a 911 telephone call.
     b)   A police report, investigative report or complaint which a person filed with a law enforcement agency.
     c)   A statement made by a witness.
     d)   A report prepared pursuant to NRS 432B.540 by an agency which provides child welfare services, which report details a plan for the placement of a child.

**NRS 289.027 Law enforcement agency required to adopt policies and procedures concerning service of certain subpoenas on peace officers.**

1. Each law enforcement agency shall adopt policies and procedures that provide for the orderly and safe acceptance of service of certain subpoenas served on a peace officer employed by the law enforcement agency.
2. A subpoena to be served upon a peace officer that is authorized to be served upon a law enforcement agency in accordance with the policies and procedures adopted pursuant to subsection 1 may be served in the manner provided by those policies and procedures.

**NRS 289.030  Law enforcement agency prohibited from requiring peace officer to disclose financial information; exception.**

A law enforcement agency shall not require any peace officer to disclose the peace officer's assets, debts, sources of income or other financial information or make such a disclosure a condition precedent to a promotion, job assignment or other personnel action unless that information is necessary to:

1. Determine the peace officer's credentials for transfer to a specialized unit;

2. Prevent any conflict of interest which may result in any new assignment; or

3. Determine whether the peace officer is engaged in unlawful activity.

**NRS 289.040  Law enforcement agency prohibited from placing unfavorable comment or document in administrative file of peace officer; exception; right to respond; provision of copy of comment or document; right to review administrative file under certain circumstances.**

1. Except as otherwise provided in subsection 3, a law enforcement agency shall not place any unfavorable comment or document in any administrative file of a peace officer maintained by the law enforcement agency unless:
   a) The peace officer has read and initialed the comment or document; or
   b) If the peace officer refuses to initial the comment or document, a notation to that effect is noted on or attached to the comment or document.

2. If the peace officer submits to the law enforcement agency a written response within 30 days after the peace officer is asked to initial the comment or document, the peace officer's response must be attached to and accompany the comment or document.

3. If a peace officer is the subject of an investigation of a complaint or allegation conducted pursuant to NRS 289.057, the law enforcement agency may place into any administrative file relating to the peace officer only:
   a) A copy of the disposition of the allegation of misconduct if the allegation is sustained; and
   b) A copy of the notice of or statement of adjudication of any punitive or remedial action taken against the peace officer.

4. A peace officer must be given a copy of any comment or document that is placed in an administrative file of the peace officer maintained by the law enforcement agency.

5. Upon request, a peace officer may review any administrative file of that peace officer maintained by the law enforcement agency that does not relate to a current investigation.

**NRS 289.050  Consequences of refusal to submit to polygraphic examination.**

1. If a peace officer refuses to submit to a polygraphic examination:
   a) No law enforcement agency may take any disciplinary or retaliatory action against the peace officer; and
   b) No investigator may make a notation of such a refusal in the investigator's report or in any other manner maintain evidence of such a refusal.

2.  Evidence of any refusal by a peace officer to submit to a polygraphic examination is not admissible at any subsequent hearing, trial or other judicial or administrative proceeding.

**NRS 289.055  Establishment and availability of written procedures for investigating complaints and allegations of misconduct.**

Each agency in this State that employs peace officers shall:

1.  Establish written procedures for investigating any complaint or allegation of misconduct made or filed against a peace officer employed by the agency; and

2.  Make copies of the written procedures established pursuant to subsection 1 available to the public.

**NRS 289.057  Investigation of allegation of misconduct; suspension without pay; review of file by peace officer in certain circumstances; law enforcement agency prohibited from keeping or making record of investigation or punitive action in certain circumstances.**

1.  An investigation of a peace officer may be conducted in response to a complaint or allegation that the peace officer has engaged in activities which could result in punitive action.

2.  Except as otherwise provided in a collective bargaining agreement, a law enforcement agency shall not suspend a peace officer without pay during or pursuant to an investigation conducted pursuant to this section until all investigations relating to the matter have concluded.

3.  After the conclusion of the investigation:
    a)  If the investigation causes a law enforcement agency to impose punitive action against the peace officer who was the subject of the investigation and the peace officer has received notice of the imposition of the punitive action, the peace officer or a representative authorized by the peace officer may, except as otherwise prohibited by federal or state law, review any administrative or investigative file maintained by the law enforcement agency relating to the investigation, including any recordings, notes, transcripts of interviews and documents.
    b)  If, pursuant to a policy of a law enforcement agency or a labor agreement, the record of the investigation or the imposition of punitive action is subject to being removed from any administrative file relating to the peace officer maintained by the law enforcement agency, the law enforcement agency shall not, except as otherwise required by federal or state law, keep or make a record of the investigation or the imposition of punitive action after the record is required to be removed from the administrative file.

**NRS 289.060  Notification and requirements for interview, interrogation or hearing relating to investigation; prohibition against use of certain statements or answers in subsequent criminal proceedings.**

1.  Except as otherwise provided in this subsection, a law enforcement agency shall, not later than 48 hours before any interrogation or hearing is held relating to an investigation conducted pursuant to NRS 289.057, provide a written notice to the peace officer who is the subject of the investigation. If the law enforcement agency believes that any other peace officer has any knowledge of any fact relating to the complaint or allegation against the peace officer who is the subject of the investigation, the law enforcement agency shall provide a written notice to the peace officer advising the peace officer that he or she must appear and be interviewed as a witness in connection with the investigation. Any peace officer who serves as a witness during an interview must be allowed a reasonable opportunity to arrange for the presence and assistance of a representative authorized by NRS 289.080. Any peace officer specified in this subsection may waive the notice required pursuant to this section.

2.  The notice provided to the peace officer who is the subject of the investigation must include:
    a)  A description of the nature of the investigation;
    b)  A summary of alleged misconduct of the peace officer;
    c)  The date, time and place of the interrogation or hearing;

d) The name and rank of the officer in charge of the investigation and the officers who will conduct any interrogation or hearing;
e) The name of any other person who will be present at any interrogation or hearing; and
f) A statement setting forth the provisions of subsection 1 of NRS 289.080.

3. The law enforcement agency shall:
a) Interview or interrogate the peace officer during the peace officer's regular working hours, if reasonably practicable, or revise the peace officer's work schedule to allow any time that is required for the interview or interrogation to be deemed a part of the peace officer's regular working hours. Any such time must be calculated based on the peace officer's regular wages for his or her regularly scheduled working hours. If the peace officer is not interviewed or interrogated during his or her regular working hours or if his or her work schedule is not revised pursuant to this paragraph and the law enforcement agency notifies the peace officer to appear at a time when he or she is off duty, the peace officer must be compensated for appearing at the interview or interrogation based on the wages and any other benefits the peace officer is entitled to receive for appearing at the time set forth in the notice.
b) Immediately before any interrogation or hearing begins, inform the peace officer who is the subject of the investigation orally on the record that:
   1) The peace officer is required to provide a statement and answer questions related to the peace officer's alleged misconduct; and
   2) If the peace officer fails to provide such a statement or to answer any such questions, the agency may charge the peace officer with insubordination.
c) Limit the scope of the questions during the interrogation or hearing to the alleged misconduct of the peace officer who is the subject of the investigation. If any evidence is discovered during the course of an investigation or hearing which establishes or may establish any other possible misconduct engaged in by the peace officer, the law enforcement agency shall notify the peace officer of that fact and shall not conduct any further interrogation of the peace officer concerning the possible misconduct until a subsequent notice of that evidence and possible misconduct is provided to the peace officer pursuant to this chapter.
d) Allow the peace officer who is the subject of the investigation or who is a witness in the investigation to explain an answer or refute a negative implication which results from questioning during an interview, interrogation or hearing.

4. If a peace officer provides a statement or answers a question relating to the alleged misconduct of a peace officer who is the subject of an investigation pursuant to NRS 289.057 after the peace officer is informed that failing to provide the statement or answer may result in punitive action against him or her, the statement or answer must not be used against the peace officer who provided the statement or answer in any subsequent criminal proceeding.

**NRS 289.070  Use of polygraphic examination in investigation.**

1. During an investigation conducted pursuant to NRS 289.057, the peace officer against whom the allegation is made may, but is not required to, submit to a polygraphic examination concerning such activities.

2. A person who makes an allegation against a peace officer pursuant to NRS 289.057 may not be required to submit to a polygraphic examination as a condition to the investigation of the person's allegation, but may request or agree to be given a polygraphic examination. If such a person requests or agrees to be given a polygraphic examination, such an examination must be given.

3. If a polygraphic examination is given to a peace officer pursuant to this section, a sound or video recording must be made of the polygraphic examination, the preliminary interview and the postexamination interview. Before the opinion of the polygraphic examiner regarding the peace officer's veracity may be considered in a disciplinary action, all records, documents and recordings resulting from the polygraphic examination must be made available for review by one or more polygraphic examiners licensed or qualified to be licensed in this State who are acceptable to the law enforcement agency and to the officer. If the opinion of a reviewing polygraphic examiner does not agree with the initial polygraphic examiner's opinion, the peace officer must be allowed to be reexamined by a polygraphic examiner of the peace officer's choice who is licensed or qualified to be licensed in this State.

4. The opinion of a polygraphic examiner regarding the peace officer's veracity may not be considered in a disciplinary action unless the polygraphic examination was conducted in a manner which complies with the provisions of chapter 648 of NRS. In any event, the law enforcement agency shall not use a polygraphic examiner's opinion regarding the veracity of the peace officer as the sole basis for disciplinary action against the peace officer.

**NRS 289.080  Right to presence and assistance of representatives at interview, interrogation or hearing relating to investigation; confidential information; disclosure; record of interview, interrogation or hearing; right of subject of investigation to review and copy investigation file upon appeal.**

1. Except as otherwise provided in subsection 4, a peace officer who is the subject of an investigation conducted pursuant to NRS 289.057 may upon request have two representatives of the peace officer's choosing present with the peace officer during any phase of an interrogation or hearing relating to the investigation, including, without limitation, a lawyer, a representative of a labor union or another peace officer.

2. Except as otherwise provided in subsection 4, a peace officer who is a witness in an investigation conducted pursuant to NRS 289.057 may upon request have two representatives of the peace officer's choosing present with the peace officer during an interview relating to the investigation, including, without limitation, a lawyer, a representative of a labor union or another peace officer. The presence of the second representative must not create an undue delay in either the scheduling or conducting of the interview.

3. A representative of a peace officer must assist the peace officer during the interview, interrogation or hearing. The law enforcement agency conducting the interview, interrogation or hearing shall allow a representative of the peace officer to explain an answer provided by the peace officer or refute a negative implication which results from questioning of the peace officer but may require such explanation to be provided after the agency has concluded its initial questioning of the peace officer.

4. A representative must not otherwise be connected to, or the subject of, the same investigation.

5. Any information that a representative obtains from the peace officer who is a witness concerning the investigation is confidential and must not be disclosed.

6. Any information that a representative obtains from the peace officer who is the subject of the investigation is confidential and must not be disclosed except upon the:
   a) Request of the peace officer; or
   b) Lawful order of a court of competent jurisdiction.
   A law enforcement agency shall not take punitive action against a representative for the representative's failure or refusal to disclose such information.

7. The peace officer, any representative of the peace officer or the law enforcement agency may make a stenographic, digital or magnetic record of the interview, interrogation or hearing. If the agency records the proceedings, the agency shall at the peace officer's request and expense provide a copy of the:
   a) Stenographic transcript of the proceedings; or
   b) Recording on the digital or magnetic tape.

8. After the conclusion of the investigation, the peace officer who was the subject of the investigation or any representative of the peace officer may, if the peace officer appeals a recommendation to impose punitive action, review and copy the entire file concerning the internal investigation, including, without limitation, any recordings, notes, transcripts of interviews and documents contained in the file.

**NRS 289.085  Inadmissibility of evidence obtained unlawfully during investigation.**

If an arbitrator or court determines that evidence was obtained during an investigation of a peace officer concerning conduct that could result in punitive action in a manner which violates any provision of NRS 289.010 to NRS

LVMPD & LVPPA - July 1, 2014 - June 30, 2016                                      Page | 48

289.120, inclusive, and that such evidence may be prejudicial to the peace officer, such evidence is inadmissible and the arbitrator or court shall exclude such evidence during any administrative proceeding commenced or civil action filed against the peace officer.

**NRS 289.090  Investigation concerning alleged criminal activities.**

The provisions of NRS 289.057, 289.060, 289.070 and 289.080 do not apply to any investigation which concerns alleged criminal activities.

**NRS 289.100  Limitations on application of chapter.**

1.  This chapter does not prohibit any agreements for cooperation between the law enforcement agency and agencies in other jurisdictions.

2.  This chapter does not affect any procedures which have been adopted by the law enforcement agency if those procedures provide the same or greater rights than provided for in this chapter.

**NRS 289.110  Report concerning improper governmental action; investigation of report; reprisal by employer prohibited.**

1.  A peace officer may disclose information regarding improper governmental action by filing a report with:
    a)  The district attorney of the county in which the improper governmental action occurred; or
    b)  The Attorney General if the district attorney referred to in paragraph (a) is involved in the improper governmental action.

2.  Upon the filing of a report pursuant to subsection 1, the district attorney or Attorney General may investigate the report and determine whether improper governmental action did occur. Upon the completion of the investigation the district attorney or Attorney General:
    a)  If the district attorney or Attorney General determines that improper governmental action did occur, may prosecute the violation. The Attorney General may prosecute such a violation if the district attorney fails or refuses so to act.
    b)  Shall notify the peace officer who filed the report of the results of the investigation.

3.  The employer of a peace officer shall not take any reprisal or retaliatory action against a peace officer who in good faith files a report pursuant to subsection 1.

4.  Nothing in this section authorizes a person to disclose information if disclosure is otherwise prohibited by law.

5.  This section does not apply to a peace officer who is employed by the State.

6.  As used in this section, "improper governmental action" means any action taken by an officer or employee of a law enforcement agency, while in the performance of the officer's or employee's official duties which is in violation of any state law or regulation.

**NRS 289.120  Judicial relief available for aggrieved peace officer.**

Any peace officer aggrieved by an action of the employer of the peace officer in violation of this chapter may, after exhausting any applicable internal grievance procedures, grievance procedures negotiated pursuant to chapter 288 of NRS and other administrative remedies, apply to the district court for judicial relief. If the court determines that the employer has violated a provision of this chapter, the court shall order appropriate injunctive or other extraordinary relief to prevent the further occurrence of the violation and the taking of any reprisal or retaliatory action by the employer against the peace officer.