Richard G. McCracken SBN 2748
Andrew J. Kahn, SBN 3751
Paul L. More, SBN 9628
McCRACKEN STEMERMAN & HOLSBERRY
1630 S. Commerce St.
Las Vegas, NV 89101
Telephone:     (702) 386-5132
Fax:           (415) 597-7201
Email:         rmccracken@dcbsf.com
               ajk@dcbsf.com
               pmore@dcbsf.com

*Attorneys for Plaintiffs*

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| LAS VEGAS POLICE PROTECTIVE ASSOCIATION METRO INC.; LAS VEGAS METRO POLICE MANAGERS & SUPERVISORS ASSOCIATION, | CASE NO. 2:15-CV-01928-LDG-CWH |
| Plaintiffs, | |
| vs. | SUPPLEMENTAL DECLARATION OF JOHN FAULIS IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION |
| LAS VEGAS METROPOLITAN POLICE DEPARTMENT; | |
| Defendant. | |

I, JOHN FAULIS, declare:

1. I am the Chairman of Plaintiff Police Managers & Supervisors Association ("PMSA"). I have read Mr. Crosby's brief speculating that the police associations could do just fine letting me and the other current representatives go and replacing us with cheaper help, perhaps retirees or outside lawyers. The problem with these speculations is that they do not correspond to the real world: my fellow representatives and I are up to speed on a rapidly-changing department and its new ways of providing policing services to the community. Someone who retired a few years ago would be lost in this new environment,

1

and have to spend many months getting up to speed. Moreover, I do not believe there are any Metro retirees with any association experience who would be interested in our jobs if these jobs paid significantly less than what my coworkers and I make. Metro retirees still interested in active work can (and do) go to departments in other states and still receive their Nevada PERS pensions while working in positions which are better paid and less stressful than being an association representative. We are constantly called into Internal Affairs investigatory meetings where the employees under investigation and the witnesses each are entitled to two representatives, and more often than not unwilling to waive such right. These sessions occur on average several times per week. The associations' regular attorneys Mr. Roger and Mr. Roberts cannot be everywhere at once, so expecting them to cover all the internal affairs meetings themselves is absurd.

2. Nor could our associations save money by hiring outsiders instead of reimbursing the Department for our pay. Our regular attorney works part-time for personal reasons and in exchange for part time-hours, has agreed to a reduced rate which saves us significantly on legal and employee costs. We would have to pay him market hourly rates to give up part-time status; rates which from talking with various lawyers I understand to be over $200 per hour even for new associates. My coworkers and I receive much less than $200 an hour. I know of no lawyers or other outsiders in Southern Nevada with experience and interest in police officer representation other than current counsel for our associations. Our outside litigation counsel's firm charges $250 an hour. Hiring instead as staff someone just out of law school or another type of union with likely no experience in police work would severely degrade the quality of the representation being received by our association's members. While the two associations' outside lawyers are allowed onto crime scenes, that is only because they have an escort from among current Department employees, namely the on-leave association representatives. If those representatives were eliminated, outside lawyers would not be allowed on scene under current and foreseeable security policy in the Department. This would hurt the quality of the representation provided by the associations.

3. While the details of day-to-day health benefit administration are handled by trust administrative staff, we association representatives serve as trustees and as such are required to attend meetings to review and revise trust policies and disputed claims. Reviewing the materials presented us to prepare for these meetings and attending the meetings consumes an average of several hours per week for each of us. Because the healthcare benefits field is changing so rapidly, we also have to spend time attending educational conferences about this field.  Through this role we representatives have made significant contributions to improving and maintaining the quality of the care received by the Department's commissioned officers.

4. Our advocacy work is not only the above-described work, but also includes lobbying for and against local and state legislation, and urging support or defeat of political candidates (for example, our association along with the PPA actively supported Mr. Lombardo's opponent in the Sheriff's election). We head into bargaining early next year, and obviously this SB 241 issue will severely taint bargaining if not resolved by a court decision before then. For example, we would have to submit two sets of proposals, one assuming the law is valid (in which major raises are demanded in order to finance a major dues increase along with perhaps restructuring of Metro's operations so it takes over some functions which our association now provides) and another very different and less disruptive proposal assuming SB241 is invalid. I am certain the parties will disagree at length over whether our unit already paid in the past for its leave (we contend we must have done so because there is documentary proof that Metro did exactly this with the Civilian Employees' 4th position and there is no reason Metro would have treated our associations better and let us have something for nothing), while the Sheriff contends past consideration does not count. Our bargaining disputes can only be resolved via binding arbitration (strikes being banned), but we cannot imagine how an arbitrator would deal with a situation where there has been no ruling on SB 241 (issue two different orders in the alternative?).

5. If a preliminary injunction is in effect for several months into a new contract, but is later

3

1   found erroneous, we do have significant reserves and assets that would make it possible

2   for us to repay Metro for our salaries and benefits for that time period, even though our

3   association's financial reserves are below the level recommended by police association

4   experts at conferences to deal with crises in bargaining or major litigation or disaster

5   situations.

6   I declare under penalty of perjury of the laws of the United States and Nevada that the foregoing

7   is true and correct. Executed this 18th day of November 2015.

8

9   JOHN FAULIS

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

4

1

## CERTIFICATE OF SERVICE

2        The certify that on November 19, 2015, I electronically transmitted the attached document to

3  the Clerk's Office using the CM/ECF System for filing and transmittal and a Notice of Electronic

4  Filing was electronically transmitted from the court to the e-mail address on file.

5

6                          */s/ Joyce Archain*

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28