1  Richard G. McCracken SBN 2748
   Paul L. More, SBN 9628
2  McCRACKEN STEMERMAN & HOLSBERRY
3  1630 S. Commerce St.
   Las Vegas, NV 89101
4  Telephone:     (702) 386-5132
   Fax:           (415) 597-7201
5  Email:         rmccracken@dcbsf.com
                  pmore@dcbsf.com
6
7  *Attorneys for Plaintiffs*

8   DAVID ROGER                              JAY ROBERTS
    General Counsel                          General Counsel
9   Las Vegas Police Protective Association  Las Vegas Metro Police Managers &
    9330 W. Lake Mead Blvd. Ste. 200         Supervisors Association
10  Las Vegas, NV 89134                      801 S. Rancho Drive, Suite A-1
11  Tel:   (702) 384-8692 ext. 204           Las Vegas, Nevada 89106
    Email: DRoger@LVPPA.com                  Tel:    702-309-7675
12  *Attorney for Plaintiff LVPPA*           Office: 702-384-2924, x23
                                             Fax:    702-384-3024
13                                           Email: jayr@lvpmsa.org
14                                           *Attorney for Plaintiff PMSA*
15
16               **UNITED STATES DISTRICT COURT**

17                     **DISTRICT OF NEVADA**

18  LAS VEGAS POLICE PROTECTIVE ASSOCIATION    **CASE NO. 2:15-cv-01928-LDG-CWH**
19  METRO INC.;  LAS VEGAS METRO POLICE
    MANAGERS & SUPERVISORS ASSOCIATION,
20                                              **MOTION FOR SUMMARY**
21               Plaintiffs,                    **JUDGMENT**
22         vs.
23  LAS VEGAS METROPOLITAN POLICE
    DEPARTMENT;
24
25               Defendant.
26
27
28

**TO THE COURT AND DEFENDANT AND NEVADA ATTORNEY GENERAL:**

**PLEASE TAKE NOTICE** that Plaintiffs hereby move for Summary Judgment against Defendant.  This motion is made on the grounds that there is no genuine issue as to any material fact and that Plaintiffs are entitled to judgment as a matter of law.  This motion is based on the memorandum below, on the pleadings and the court record for this action, and on such other and further evidence as may be presented prior to, and at, the hearing on this motion.

Dated: April 20, 2016                **McCRACKEN STEMERMAN & HOLSBERRY**

By: */s/ Paul L. More*
      Richard G. McCracken
      Paul L. More

*Attorneys for Plaintiffs*

<u>**MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**</u>

**I.    INTRODUCTION AND SUMMARY**

In May 2015, the Nevada Legislature enacted SB 241, a ban on local governments providing paid leave to public employees engaging in the First Amendment-protected activities of advocating on behalf of employee organizations.  The Legislature did not ban paid leaves to work <u>against</u> unions, nor ban paid leaves to advocate for various other organizations, nor ban local spending on other types of advocacy.  SB 241 represents impermissible viewpoint discrimination of the sort which has invalidated federal, state, and local funding restrictions in *Rosenberger v. Regents, Univ. Va.*, 515 U.S. 819 (1995), *Legal Services Corp. Velasquez*, 531 U.S. 533 (2001) and other cases.  Defendant Metro is the agency responsible for implementing SB 241 to the detriment of Plaintiffs Las Vegas Protective Association Metro Inc. and Las Vegas Police Managers and Supervisors Association (collectively, "Plaintiff Associations").  Because SB 241 is facially unconstitutional, the Court should grant the Plaintiff Associations summary judgment on the three causes of action in their Amended Complaint.

**II.    STATEMENT OF FACTS**

In May 2015, the Nevada Legislature adopted SB 241, which provides:

> A local government employer may agree to provide leave to any of its employees for time spent by the employee in performing duties or providing services for an employee organization if the full cost of such leave is paid or reimbursed by the employee organization or is offset by the value of concessions made by the employee organization in the negotiation of an agreement with the local government employer pursuant to this chapter.

(SB 241, § 1; Am. Compl. ¶ 7; Ans. ¶ 7.)  "Employee organization" is defined as "an organization of any kind having as one of its purposes improvement of the terms and conditions of employment of local government employees."  Nev. Rev. Stat. § 288.040.  Traditionally, employees have taken paid union leave to collectively bargain contracts for their fellow workers, mediate differences between employee representatives and management, seek redress for workplace grievances, and more.  *See* Nev. Rev. Stat. §§ 288.030, 288.063, 288.140, 288.150 288.190 [defining rights of public employees].

SB 241 only prohibits unreimbursed leave for employees "performing duties or providing services for an employee organization." (SB 241, § 1.) It does not affect other forms of advocacy. Every legislative session, localities spend several millions of dollars on lobbying in Carson City, which again the Legislature has not banned. *See* ECF Dkt. 6-1, Ex. A to Kahn Decl. ¶ 1. Defendant Metro pays officers their salaries while the officers lobby in Caron City and before the county government. ECF Dkt. 6-2, John Faulis Decl. ¶ 6. SB 241 also does not affect any other forms of paid leave provisions. For example, Nevada state employees are entitled to use paid leaves to represent state employees on state boards and commissions dealing with employment issues. *See* Nev. Admin. Code § 284.589(6)(c); Nev. Rev. Stat. §§ 284.068, 284.030; 285.030. SB 241 does not impinge on this practice. SB 241 does not affect other professional associations of government employees—it only applies to those associations that seek to improve the "terms and conditions of employment." *See* Nev. Rev. Stat. § 288.040 (defining employee organization). Meanwhile, Defendant Metro provides paid leave to employees performing duties or services for the Black Police Officers Association; the Latino Peace Officers Association; the Nevada Chiefs and Sheriffs Associations; and the Police Athletic League; among others. *See* Faulis Decl. ¶ 6; ECF Dkt. 6-3, Mark Chaparian Decl. ¶ 6; ECF Dkt. 6-4, Melissa Johanning Decl. ¶ 6. Nothing in SB 241 bans this. Rather, SB 241 targets employee organizations focused on labor issues, commonly known as labor unions.

For years, the Plaintiff Associations, both public employee organizations within the definition of SB 241, have represented government employees working for Defendant Metro.[1] (Am. Compl. ¶ 5; Ans. ¶ 5.) As part of their on-going contractual relationships, the parties historically agreed upon a contract provision that provides paid leave for employees who have been elected or designated as a union officials. (Am. Compl. ¶ 5; Ans. ¶ 5.) The leave provisions permit employees to take a certain number of hours to conduct union business while being paid wages and benefits by Defendant Metro. (Am. Compl. ¶ 5; Ans. ¶ 5.)

---

[1] Defendant Metro is a "local government employer," as referenced in SB 241 § 1. (Am. Compl. ¶ 6; Ans. ¶ 6.)

Defendant Metro did not provide paid leave provisions gratuitously; rather, Defendant Metro receives benefits from the paid union leave provisions.  For example, employees on paid union leave are responsible for administering health benefits for Metro's employees, a function normally done by employer benefit staff.  Johanning Decl. ¶ 3; Faulis Decl. ¶ 3; Chaparian Decl. ¶ 3; ECF Dkt. 16-2, Supp. Decl. of John Faulis ¶ 3.  Union representatives also counsel fellow employees who are running into problems at work, helping them obtain professional assistance and improve their performance.  Johanning Decl. ¶ 8; Faulis Decl. ¶ 8; Chaparian Decl. ¶ 8.

This long-standing contractual arrangement was upended by the passage of SB 241.  For the parties here, SB 241 will be formally effective when their current labor agreements expire on July 1, 2016.  (Am. Compl. ¶¶ 7, 8; Ans. ¶¶ 7, 8.)  Defendant Metro informed the Plaintiff Associations that it will rely on SB 241 to bar union officials from continuing to take paid union leave without full reimbursement by their association or bargaining unit.  (Am. Compl. ¶ 8; Ans. ¶ 8.)

Nearly all of the Plaintiff Associations' non-clerical, representational staff consists of Defendant Metro employees on paid union leave.  Faulis Decl. ¶ 1; Chaparian Decl. ¶ 1.  Plaintiff Las Vegas Protective Association Metro Inc. has 7 officers all on paid union leave who represent approximately 2,835 commissioned officers employed by Metro.  Chaparian Decl. ¶ 1.  Plaintiff Las Vegas Police Managers and Supervisors Association has 2 representatives on full-time paid union leave who represent approximately 430 officers.  Faulis Decl. ¶ 1.

Defendant Metro's enforcement of this unconstitutional law threatens the Plaintiff Associations' abilities to advocate for and represent Defendant Metro's employees.  The paid leave provisions permit Association representatives to advocate for and represent their fellow employees while maintaining their job benefits and security.  While on paid union leave, these union representatives perform a variety of representational advocacy and activities: union representatives on paid union leave engage in political advocacy, lobby legislative bodies, file grievances on behalf of members, bargain over the terms and conditions of work, and organize their fellow workers.  Johanning Decl. ¶¶ 3-4; Faulis Decl. ¶ 4-5; Chaparian Decl. ¶ 3-5; ECF Dkt. 16-1, Decl. of Mike Ramirez ¶¶ 9-11; Supp. Faulis Decl. ¶ 4.  Absent such paid leave, these

representatives would not be able to continue providing services at the same level.  Johanning Decl. ¶ 3; Faulis Decl. ¶ 3; Chaparian Decl. ¶ 3; Ramirez Decl. ¶¶ 3-7; Supp. Faulis Decl. ¶¶ 1-2, 5.  Because of the reduced funding for these services, the Plaintiff Associations will have to take measures which will inevitably result in reduced membership—which in turn reduces Plaintiff Associations' ability to communicate with the workforce and advocate as organizations. Johanning Decl. ¶ 4; Faulis Decl. ¶ 4; Chaparian Decl. ¶ 4.

Because Defendant Metro's enforcement of SB 241 threatens the sustainability of Plaintiff Associations' expressive activities and advocacy, the Plaintiff Associations filed the instant action.

## III.    STANDARD

"The court *shall* grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P 56 (emphasis added).  First, the moving party must demonstrate the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Then, the burden then shifts to the non-moving party to go beyond the pleadings and set forth specific facts demonstrating there is a genuine issue for trial.  *Id.*; *see also Estate of Tucker v. Interscope Records*, 515 F.3d 1019, 1030 (9th Cir. 2008) (quoting Fed. R. Civ. Pro. 56(e)).  A party may "move for summary judgment at any time, even as early as the commencement of the action."  Fed. R. Civ. P. 56(c)(1) advisory comm. note to 2009 amends.; Fed. R. Civ. P. 56(b).  Limited discovery is especially appropriate for facial attacks on statutes, which can be resolved on summary judgment as a matter of law.  *See FW/PBS, Inc. v. Dallas*, 493 U.S. 215, 221 (1990) (explaining that parties engaged in expedited discovery before court ruled on cross-motions for summary judgment).

## IV.    ARGUMENT

Defendant Metro's enforcement of SB 241 deprives the Plaintiff Associations of their federally protected rights.  *See Flagg Bros., Inc. v. Brooks*, 436 U.S. 149 (1978) (challenging constitutionality of state statute by bringing suit against entity enforcing state law).  The Plaintiff

Associations challenge the constitutionality of this statute on the grounds of viewpoint

discrimination, associational status discrimination, and equal protection.

**A. SB 241 is Unconstitutional and Unenforceable Because it Impermissibly Discriminates Against the Plaintiff Associations Based on their Viewpoint and Associational Status.**

The First Amendment provides that "Congress shall make no law . . . abridging the

freedom of speech." U.S. Const. amend. I. "[A]s a general matter, the First Amendment means

that government has no power to restrict expression because of its message, its ideas, its subject

matter, or its content." *Ashcroft v. American Civil Liberties Union*, 535 U.S. 564, 573 (2002)

(internal quotation marks omitted). SB 241, on its face, is a content-based law that

impermissibly discriminates against the Plaintiff Associations because of their viewpoint and

associational status. As such, it is subject to the most exacting form of judicial scrutiny.

*1. SB 241 regulates protected speech and expression.*

SB 241 specifically regulates the expressive activities of labor unions. By its terms, SB

241 regulates employees "performing duties or providing services for an employee

organization." SB 241, § 1. Those duties and services cover time labor representatives spend

"improv[ing] the terms and conditions of employment of local government employees." *See*

Nev. Rev. Stat. § 288.040. Indisputably, employees utilize paid union leave to collectively

bargain contracts for their fellow workers, mediate differences between the employee

representatives and management, seek redress for workplace grievances, and more. Nev. Rev.

Stat. §§ 288.030, 288.063, 288.140, 288.150 288.190. They also use paid union leave to engage

in political advocacy, legislative lobbying, grievance representation, and associational

organizing. Johanning Decl. ¶¶ 3-4; Faulis Decl. ¶¶ 4-5; Chaparian Decl. ¶ 3-5. In total, these

activities form the very essence of the Plaintiff Associations' purpose: political speech and

representational advocacy aimed at improving the terms and conditions of public employees'

work lives. The Plaintiff Associations use paid union leave funding "to pursue their collective

effort to foster beliefs which they admittedly have the right to advocate," and government

regulations which "may induce members to withdraw from the Association and dissuade others

from joining it," infringe on the Plaintiff Associations' advocacy rights.  *See NAACP v. Alabama ex rel. Patterson*, 357 U.S. 449, 463 (1958).

The advocacy and organizing work of employee organizations is protected by the First Amendment.  *See, e.g.*, *Morfin v. Albuquerque Pub. Sch.*, 906 F.2d 1434, 1438 (10th Cir. 1990) ("The First Amendment protects the right of a public employee to join and participate in a labor union."); *Thomas v. Cnty. of Riverside*, 763 F.3d 1167 (9th Cir. 2014); *McKinley v. City of Eloy*, 705 F.2d 1110 (9th Cir. 1983).  These activities implicate both freedom of speech and association.  There is a "close nexus between the freedoms of speech and assembly" because "[e]ffective advocacy of both public and private points of view, particularly controversial ones, is undeniably enhanced by group association."  *NAACP*, 357 U.S. at 460 (collecting cases).  "[I]t is immaterial whether the beliefs sought to be advanced by association pertain to political, economic, religious or cultural matters, . . . state action which may have the effect of curtailing the freedom to associate is subject to the closest scrutiny."  *Id.* at 460-61.

Employee organizations' speech and associational rights are protected even in the context of government funding schemes.  Although there is no *per se* right to government funding of speech under the First Amendment, the First Amendment bans viewpoint discrimination in funding decisions as to private speech.  For example, the Supreme Court struck down a law barring religious student groups from public university funding provided to other groups, even though the university showed scarcity of funds, in *Rosenberger v. Rector & Visitors of Univ. of Virginia*, 515 U.S. 819, 835 (1995) (granting injunctive relief to Christian organizations refused funding due to public agency's refusal to fund any student organizations with religious orientation).  *Accord Legal Servs. Corp. v. Velasquez*, 531 U.S. 533 (2001) (applying *Rosenberger* doctrine to the funding of legal services); *United Food & Commercial Workers Local 99 v. Brewer*, 817 F. Supp. 2d 1118, 1124 (D. Ariz. 2011) (enjoining statute that prohibited government from collecting payroll deductions for certain unions).  While the government is "not required to fund" a particular program, once it chooses to create a program, it cannot define the scope of funding to exclude certain vital theories and ideas."  *Legal Servs. Corp.*, 531 U.S. at 548.

**2.   SB 241 is a content-based regulation subject to strict scrutiny.**

Under the First Amendment, a government "'has no power to restrict expression because of its message, its ideas, its subject matter, or its content.'"  *Reed v. Town of Gilbert*, 135 S. Ct. 2218, 2228 (2015) (quoting *Police Dept. of Chicago v. Mosley*, 408 U.S. 92, 95 (1972)).  A statute's regulation is content based if the statute "applies to particular speech because of the topic discussed or the idea or message expressed."  *Id.* at 2227 (collecting cases).  Analyzing this "commonsense" question "requires a court to consider whether a regulation of speech 'on its face' draws distinctions based on the message a speaker conveys."  *Id.* (quoting *Sorrell v. IMS Health, Inc.*, 131 S. Ct. 2653, 2664 (2011)).  Determining whether a statute is facially content-based involves more than assessing whether a specific expression is proscribed:

> Some facial distinctions based on a message are obvious, defining regulated speech by particular subject matter, and others are more subtle, defining regulated speech by *its function or purpose*.  Both are distinctions drawn based on the message a speaker conveys, and, therefore, are subject to strict scrutiny.

*Id.* at 2227 (emphasis added).  The regulation of an entire subject or purpose of speech is as abhorrent to the Constitution as the regulation of a particular message.  *Id.* at 2239-30; *id.* at 2233 (Alito, J., concurring) ("Limiting speech based on its 'topic' or 'subject' favors those who do not want to disturb the status quo.")

SB 241 is content-based on its face.  The law only applies to a particular topic or subject of speech by a particular speaker: government employee organizations advocating to improve the terms and conditions of work.  SB 241, § 1; Nev. Rev. Stat. § 288.040.  SB 241 does not regulate local governments' funding of other advocacy and does not regulate the funding of professional organizations that do not seek to improve the terms and conditions of employment.  As written, SB 241 necessarily requires local governments to distinguish the groups eligible for paid leave based on the message of the group.

It is no answer to argue that SB 241 targets particular "speakers" rather than a particular "content" or "message."  Such an interpretation would not save the statute from strict scrutiny because "speech restrictions based on the identity of the speaker are all too often simply a means to control content."  *Reed*, 135 S. Ct. at 2230 (quoting *Citizens United v. FEC*, 558 U.S. 310, 340

(2010) (the First Amendment prohibits "restrictions distinguishing among different speakers; allowing speech by some but not others."); *Citizens United*, 558 U.S. at 340-41 ("Quite apart from the purpose or effect of regulating content, moreover, the Government may commit a constitutional wrong when by law it identifies certain preferred speakers. . . . The First Amendment protects speech and speakers, and the ideas that flow from each."). Consequently, the Supreme Court has "insisted that 'laws favoring some speakers over others demand strict scrutiny when the legislature's speaker preference reflects a content preference.'" *Reed*, 135 S.Ct. at 2230 (quoting *Turner Broadcasting Sys., Inc. v. FCC*, 512 U.S. 622, 658 (1994)).

Not only is SB 241 a content-based regulation of expression—it is the most "egregious form of content discrimination": viewpoint discrimination. *Id.* at 2230 (quoting *Rosenberger v. Rector and Visitors of Univ. of Va.*, 515 U.S. 819, 829 (1995)). "The government must abstain from regulating speech when the specific motivating ideology or the opinion or perspective of the speaker is the rationale for the restriction." *Rosenberger*, 515 U.S. at 829 (citing *Perry Ed. Assn. v. Perry Local Educators' Assn.*, 460 U.S. 37, 46 (1983)). Viewpoint discrimination occurs when the government burdens "speech by particular speakers, thereby suppressing a particular view about a subject." *Moss v. U.S. Secret Service*, 572 F.3d 962, 970 (9th Cir. 2009) (internal quotations omitted). Labor organizations represent a distinct viewpoint, and indeed exist for the purpose of engaging in speech with such viewpoint. The Nevada Legislature has done nothing to bar local governments from providing paid leave to employees wishing to advocate *against* public employee organizations, only spending on leaves to advocate or provide services *for* such organizations. (SB 241, § 1.)

While the Plaintiff Associations could prove an improper subjective motive on the part of the legislative majority, they do not need to, because singling out one set of advocates to ban from receiving funds is enough. "A law that is content based on its face is subject to strict scrutiny regardless of the government's benign motive, content-neutral justification, or lack of 'animus toward the ideas contained' in the regulated speech." *Reed*, 135 S. Ct. at 2228 (citing *Cincinnati v. Discovery Network, Inc.*, 507 U.S. 410, 429 (1993)). A "party opposing the

government 'need adduce no evidence of an improper censorial motive.'"  *Id.* (quoting *Simon & Schuster, Inc. v. Members of N.Y. State Crime Victims Bd.*, 502 U.S. 105, 115 (1991)).

Barring paid leave for union representatives cripples those with a legal duty to represent employees, while allowing all other employees to continue receiving salaries for their advocacy and representational activities.  Thus, the Legislature's targeting of labor organizations alone for stripping of leave rights requires strict scrutiny.

### 3.  SB 241 Fails the Test for Strict Scrutiny as a Matter of Law.

Statutes that regulate expression based on content are "'presumptively invalid,' and the Government bears the burden to rebut that presumption."  *United States v. Playboy Entm't Group, Inc.*, 529 U.S. 803, 817 (2000) (quoting *R.A.V. v. St. Paul*, 505 U.S. 377, 382 (1992)).  "Content-based laws. . .  may be justified only if the government proves that they are narrowly tailored to serve compelling state interests."  *Reed*, 135 S. Ct. at 2228 (collecting cases).

The government cannot provide a compelling interest to justify this discrimination.  *See United Bhd. of Carpenters & Joiners of Am. Local 586 v. N.L.R.B.*, 540 F.3d 957, 965 (9th Cir. 2008) ("Because free speech protections were designed to protect critical speech, we cannot find the suppression of critical speech to be a compelling interest.")  Government restrictions on funding for private organizations' speech, when based on identity of speaker or viewpoint, are unconstitutional.  "Where private speech is involved, even Congress' antecedent funding decision cannot be aimed at the suppression of ideas thought inimical to the Government's own interest."  *Legal Servs. Corp.*, 531 U.S. at 549 (citing cases).  Nor can Defendants rely on any motive related to saving taxpayer dollars.  The Supreme Court rejected the argument that a scarcity of funds justified content-discrimination in *Rosenberger*:

> The University urges that, from a constitutional standpoint, funding of speech differs from provision of access to facilities because money is scarce and physical facilities are not. Beyond the fact that in any given case this proposition might not be true as an empirical matter, the underlying premise that the University could discriminate based on viewpoint if demand for space exceeded its availability is wrong as well. The government cannot justify viewpoint discrimination among private speakers on the economic fact of scarcity.

*Rosenberger*, 515 U.S. at 835.  *Accord Graham v. Richardson*, 403 U.S. 365, 374 (1971) ("a concern for fiscal integrity is no more compelling a justification for the questioned classification

in these cases that it was in *Shapiro* [*v. Thompson*, 394 U.S. 618 (1969), striking down law requiring one-year residency for entitlement to welfare benefits]").  Moreover, if the Legislature's primary concern was preventing taxpayers' funds from being spent on advocacy, the Legislature would also have banned paying salaries to employees who are engaged in municipalities' lobbying, in advocacy  for anti-union causes, and for state employees' representation.

Strict scrutiny not only requires a compelling state interest, but also that the statute be "narrowly tailored to achieve that interest."  *Citizens United*, 558 U.S. at 340.  Here, SB 241 is both underinclusive and overbroad in addressing the purported state interest.  It is underinclusive in not banning leaves for state employee representation, leaves for non-labor advocacy or lobbying expenditures by local governments.  "Underinclusiveness raises serious doubts about whether the government is in fact pursuing the interest it invokes, rather than disfavoring a particular speaker or viewpoint."  *Brown v. Entertainment Merchants Ass'n.,* 131 S. Ct. 2729, 2740 (2011).  SB 241 is also overinclusive in banning any paid leave for employee organization work—covering activities that range from lobbying and advocacy to nonadversarial benefit plans administration and performance counseling.  *See United States v. Williams*, 553 U.S. 285, 292 (2008) ("[A] statute is facially invalid if it prohibits a substantial amount of protected speech.")

Because SB 241 is content-based on its face, it is subject to scrutiny.  Yet, under the clear logic of Supreme Court precedent, SB 241 there is no compelling interest justifying it and it is not narrowly tailored.  Thus, SB 241 is unconstitutional and unenforceable as a matter of law.  The Plaintiff Associations are entitled to summary judgment on their First and Second Causes of Action.

**B.  SB 241 is Unconstitutional and Unenforceable Because it Violates the Plaintiff Associations' Rights under the Equal Protection Clause.**

The Fourteenth Amendment commands that no state shall "deny to any person within its jurisdiction the equal protection of the laws."  U.S. Const. Amend. XIV.  Employee organizations, including Plaintiff Associations, have been targeted for unequal treatment under

Nevada law.  SB 241 prohibits local government employers from providing paid union leave to employees "performing duties or providing services for an employee organization."  (SB 241, § 1.)  It does not affect any other form of paid leave provisions that permit government employees to engage in advocacy or investigation.

SB 241 targets only employee organizations focused on labor issues, while other government employees are permitted to receive salaries for performing advocacy or representational duties.  Every legislative session, localities spend several millions of dollars on lobbying in Carson City, which again the Legislature has not banned.  *See* Ex. A to Kahn Decl. ¶ 1.  Government employees, including Defendant Metro employees, are paid to lobby in Carson City and at the county level.  Faulis Decl. ¶ 6.  Nevada state employees are also permitted to represent state employees on state boards and commissions dealing with employment issues.  *See* Nev. Admin. Code § 284.589(6)(c); Nev. Rev. Stat. §§ 284.068, 284.030; 285.030.  SB 241 does not impinge on this practice.  Nor does SB 241 affect other employee professional associations— it only applies to those associations that seek to improve the "terms and conditions of employment."  *See* Nev. Rev. Stat. § 288.040 (defining employee organization).  As a result, Defendant Metro is free to provide paid leave to employees performing duties or services for the Black Police Officers Association; the Latino Peace Officers Association; the Nevada Chiefs and Sheriffs Associations; the Police Athletic League; among others.  *See* Faulis Decl. ¶ 6; Chaparian Decl. ¶ 6; Johanning Decl. ¶ 6.  Nothing in SB 241 bans this.

### 1. *Strict scrutiny applies*.

Because the speech of labor organizations falls within a protected category, strict scrutiny is required for Equal Protection analysis under the Fourteenth Amendment.  *See Clark v. Jeter*, 486 U.S. 456, 461 (1988) ("[C]lassifications affecting fundamental rights are given the most exacting scrutiny.").  Indisputably, the First Amendment right to free speech is a fundamental right.  *See Mosley*, 408 U.S. at 101 & n.8 ("The Equal Protection Clause requires that statutes affecting First Amendment interests be narrowly tailored to their legitimate objectives.").  Because the First Amendment right to free speech is a fundamental right, the court should apply strict scrutiny under the Equal Protection Clause to laws impacting First Amendment rights and

discriminating based on speech classifications.  *See Barr v. Lafon*, 538 F.3d 554, 576 (6th Cir. 2008) ("[W]e apply strict scrutiny under the Equal Protection Clause to a statute infringing on speech protected by the First Amendment...."); *Denney v. Drug Enforcement Admin.*, 508 F. Supp. 2d 815, 835-36 (E.D. Cal. 2007) (applying strict scrutiny to an Equal Protection analysis of a law infringing on the right to free speech).

### 2.   *There is no justification to support SB 241's discrimination.*

Because SB 241 is subject to strict scrutiny, the government must prove that SB 241 has been "tailored to serve a substantial governmental interest."  *Mosley*, 408 U.S. at 99.  Defendant Metro has not adduced such evidence and it is not conceivable what that evidence could be; strangling unions financially does not qualify.  Thus, SB 241 fails on Equal Protection grounds as a matter of law.

Even if rational basis review applied, there is no rational basis for passing a law that bans paid leave for union activities while leaving other speech and associational activities untouched. "The State may not rely on a classification whose relationship to an asserted goal is so attenuated as to render the distinction arbitrary or irrational."  *Cleburne v. Cleburne Living Center, Inc.*, 473 U.S. 432, 446 (1985) (quoting *Zobel v. Williams*, 457 U.S. 55, 61-63 (1982)).  This law merely amounts to union animus, and cannot withstand constitutional scrutiny.  "For if the constitutional conception of 'equal protection of the laws' means anything, it must at the very least mean that a bare congressional desire to harm a politically unpopular group cannot constitute a legitimate governmental interest."  *U.S. Dept. of Agriculture v. Moreno*, 413 U. S. 528, 535 (1973) (declaring statutory amendment invalid under Equal Protection Clause).

Where the government attempts to regulate activities "based on the content of their expression," the regulation is "far from being tailored to a substantial governmental interest, . . . . [and] under the Equal Protection Clause, it may not stand."  *Mosley*, 408 U.S. at 102.  As explained above, SB 241, on its face, regulates activities based on content.  The government cannot show that this type of regulation is narrowly tailored to a substantial government interest. Therefore, Plaintiff Associations must prevail on their Third Cause of Action as a matter of law.

1

## V.      CONCLUSION

Given both long-standing and recent U.S. Supreme Court First Amendment and Equal Protection case law, Plaintiff Associations have shown they are entitled to judgment as a matter of law on all three Causes of Action.  This Court should issue its declaratory judgment that § 1 of SB 241 is unconstitutional and void, and should permanently enjoin Defendant from implementing it.

Dated: April 20, 2016                    **McCRACKEN STEMERMAN & HOLSBERRY**

By: _/s/ Paul L. More_
                                                    Richard G. McCracken
                                                    Paul L. More

                                            *Attorneys for Plaintiffs*

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## CERTIFICATE OF SERVICE

I hereby certify that I am an employee of McCracken, Stemerman, and Holsberry, and that on April 20, 2016, I electronically transmitted the following documents to the Clerk's Office using the CM/ECF System for filing and transmittal, and a Notice of Electronic Filing was electronically transmitted from the court to the e-mail addresses on file in the case:

**Motion for Summary Judgment**

*/s/ Joyce Archain*
Joyce Archain