1  Richard G. McCracken SBN 2748
2  Paul L. More, SBN 9628
   McCRACKEN, STEMERMAN & HOLSBERRY
3  1630 S. Commerce Street, Suite A-1
   Las Vegas, Nevada 89102
4  Telephone:     (702) 386-5107
   Fax:           (415) 597-7201
5  E-mail:        rmccracken@dcbsf.com
6                 pmore@dcbsf.com

7  *Attorneys for Plaintiffs*

8

9    DAVID ROGER                          JAY ROBERTS
     General Counsel                      General Counsel
10   Las Vegas Police Protective Association   Las Vegas Metro Police Managers &
     9330 W. Lake Mead Blvd. Ste. 200     Supervisors Association
11   Las Vegas, NV 89134                   801 S. Rancho Drive, Suite A-1
12   Tel:   (702) 384-8692 ext. 204       Las Vegas, Nevada 89106
     Email: DRoger@LVPPA.com              Tel:    702-309-7675
13   *Attorneys for Plaintiff LVPPA*       Office: 702-384-2924, x23
14                                         Fax:    702-384-3024
                                           Email: jayr@lvpmsa.org
15                                         *Attorneys for Plaintiff PMSA*

16
            **UNITED STATES DISTRICT COURT**
17
                **DISTRICT OF NEVADA**
18

19   LAS VEGAS POLICE PROTECTIVE          Case No.:    2:15-cv-1928 LDG-CWH
     ASSOCIATION METRO INC.; LAS VEGAS
20   METRO POLICE MANAGERS &
     SUPERVISORS ASSOCIATION,             **PLAINTIFFS' REPLY IN SUPPORT OF**
21                                        **THEIR MOTION FOR SUMMARY**
22              Plaintiffs,               **JUDGMENT**

23          vs.

24   LAS VEGAS METROPOLITAN POLICE
     DEPARTMENT,
25
26              Defendant.

27

28

# **TABLE OF CONTENTS**

INTRODUCTION ..................................................................................................................1

LEGAL ANALYSIS............................................................................................................2

    A.    SB 241 Violates the Protections Enshrined in the First Amendment. ...............................2

        1.    SB 241 implicates Plaintiff Associations' speech and associational rights...........2

        2.    SB 241 is content-based, unconstitutional discrimination under *Reed v. Town of Gilbert*...........................................................................................................4

    B.    The State's purpose in enacting SB 241 is only relevant to deciding whether the law can pass strict scrutiny. ..............................................................................................4

    C.    Laws that target speech by its function or purpose, or that target particular speakers, are content-based................................................................................................6

    D.    The doctrine concerning discrimination in the regulation of speech applies to all fora....7

    E.    Funding decisions are also subject to anti-discrimination rules. .......................................7

    F.    Defendant Metro did not provide a compelling reason for SB 241...............................10

    G.    SB 241 Violates Plaintiffs' Associational Rights under the Equal Protection Clause. ...11

CONCLUSION...................................................................................................................15

i

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abood v. Detroit Bd. of Ed.,*
  431 U.S. 209 (1977)........................................................................................................13

*Borough of Duryea v. Guarnieri,*
  131 S. Ct. 2488 (2011)......................................................................................................3

*Burson v. Freeman,*
  504 U.S. 191 (1992)........................................................................................................10

*Citizens United v. FEC,*
  558 U.S. 310 (2010).....................................................................................................2, 6

*De Jonge v. Oregon,*
  299 U.S. 353 (1937)........................................................................................................11

*Graham v. Richardson,*
  403 U.S. 365 (1971)........................................................................................................10

*Healy v. James,*
  408 U.S. 169 (1972)..................................................................................................13, 14

*Hill v. Colorado,*
  530 U.S. 703 (2000)..........................................................................................................5

*Hynes v. Mayor and Council of Oradell,*
  425 U.S. 610 (1976)........................................................................................................13

*Knox v. SEIU,*
  132 S. Ct. 2277 (2012)......................................................................................................3

*Korab v. Fink,*
  748 F.3d 875 (9th Cir. 2014) ..........................................................................................10

*Legal Aid Services of Oregon v. Legal Services Corporation,*
  608 F.3d 1084 (9th Cir. 2010) ..........................................................................................8

*Legal Services Corp. v. Velazquez,*
  531 U.S. 533 (2001)..................................................................................................7, 8, 9

*Members of City Council of Los Angeles v. Taxpayers for Vincent,*
  466 U.S. 789 (1984).........................................................................................................10

PLAINTIFFS' REPLY IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT                    Case No. 2:15-cv-1928 LDG-CWH

*Meyer v. Grant*,
    486 U.S. 414 (1988).................................................................................3

*NAACP v. Alabama ex rel. Patterson*,
    357 U.S. 449 (1958).....................................................................3, 12, 13

*NAACP v. Button*,
    371 U.S. 415 (1963)..........................................................................2, 13

*NAACP v. Claiborne Hardware Co.*,
    458 U.S. 886 (1982)..............................................................................11

*Perry Ed. Assn. v. Perry Local Educators' Assn.*,
    460 U.S. 37 (1983)..................................................................................7

*Police Dept. of Chicago v. Mosley*,
    408 U.S. 92 (1972)..................................................................................8

*RAV v. St. Paul*,
    505 U.S. 377 (1992)................................................................................7

*Reed v. Town of Gilbert*,
    135 S. Ct. 2218 (2015)....................................................................*passim*

*Reed v. Town of Gilbert*,
    707 F.3d 1057 (9th Cir. 2013) .............................................................5, 6

*Roberts v. United States Jaycees*,
    468 U.S. 609 (1984)....................................................................2, 11, 12, 13

*Rosenberger v. Rector of Univ. of Va.*,
    515 U.S. 819 (1995)...................................................................7, 8, 9, 10

*Rumsfeld v. Forum for Academic & Institutional Rights, Inc.*,
    547 U.S. 47 (2006)............................................................................12, 14

*Rutan v. Republican Party of Ill.*,
    497 U.S. 62 (1990)..................................................................................2

*Shelton v. Tucker*,
    364 U.S. 479 ....................................................................................11, 13

*Snyder v. Phelps*,
    562 U.S. 443 (2011)................................................................................7

*Thomas v. Collins*,
    323 U.S. 516 (1945)........................................................................*passim*

iii

*United Bhd. of Carpenters & Joiners of Am. Local 586 v. N.L.R.B.*,
    540 F.3d 957 (9th Cir. 2008) ................................................................ 11

*United Food & Commercial Workers Local 99 v. Bennett*,
    934 F. Supp. 2d 1167 (D. Ariz. 2013) ................................................... 9

*United Mine Workers v. Illinois Bar Ass'n*,
    389 U.S. 217 (1967) .................................................................... 12, 14

*Ward v. Rock Against Racism*,
    491 U.S. 781 (1989) .................................................................. 1, 4, 5

*Ysursa v. Pocatello Education Association*,
    555 U.S. 353 (2009) .................................................................. 1, 8, 9

**Statutes**

Legal Services Corporation Act ................................................................ 8

Nev. Rev. Stat. §§ 288.033, 288.150 ......................................................... 3

Nev. Rev. Stat. § 288.040 ..................................................................... 7

Nev. Rev. Stat. §§ 288.063, 288.190 ......................................................... 3

**Other Authorities**

First Amendment ................................................................... *passim*

PLAINTIFFS' REPLY IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT          Case No. 2:15-cv-1928 LDG-CWH

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## INTRODUCTION

The Supreme Court reset the law of content discrimination under the First Amendment in *Reed v. Town of Gilbert*, 135 S. Ct. 2218 (2015).  Plaintiffs pointed this out in their opening memorandum.  ECF NO. 24, pp. 8-9.  Defendant Las Vegas Metropolitan Police Department ("Metro") completely ignores this all-important case.  It is not even cited in Metro's opposition.  Instead, Metro poses the question before the court as: "whether the particular statute or regulation is content based or content neutral requires an inquiry to whether the government has adopted a regulation of speech because of agreement or disagreement with the message it conveys."  ECF NO. 26, p. 9.  This is precisely the misinterpretation of *Ward* that the Supreme Court repudiated in *Reed*.  135 S.Ct. at 2228-29.  The rest of Metro's analysis proceeds from this fundamentally wrong misconception of the law.  The result is that Metro never addresses the real issues of whether SB 241, § 1 discriminates on the basis of content, viewpoint and speaker, which it does, and therefore whether it can pass strict scrutiny, which it cannot.

Metro's second main point is that the Court's cases banning content and viewpoint discrimination in subsidized speech involve "limited public fora" and no such fora are implicated in this case.  ECF NO. 26, pp. 12-14.  Metro labors under the misimpression that limited public fora must be physical places.  Instead, in Rosenberger and Velazquez, neither of which involved a physical forum, the Court held that when the government decides to subsidize some speech – in whatever form and place – it may not discriminate on the basis of who is speaking and what they are saying.  This is precisely what SB241 does.

Metro relies on *Ysursa v. Pocatello Education Association*, 555 U.S. 353 (2009) but that case actually proves Plaintiffs' point.  The only thing that saved the statute in that case was that it applied to all political deductions, not just ones for labor organizations.  Reading the majority opinion in light of the concurring and dissenting opinions shows that if the statute had been construed to apply only to deductions for unions' political programs it would have been found unconstitutional.

Finally, Metro misconstrues Plaintiffs' Equal Protection claim and as a result fails to address it.  Opposition, pp. 15-16.  The claim is based on SB 241's discriminatory interference with Plaintiffs' members' exercise of their fundamental right of association.  Opening Brief, pp. 12-13.  The interference is obvious: paid leave is denied only for one type of organization.  There is essentially no

1

constitutional tolerance for attacks on groups unpopular with those currently in power.  Only narrow tailoring to serve a compelling government interest will do.  *See Roberts v. United States Jaycees*, 468 U.S. 609, 622 (1984); *NAACP v. Button*, 371 U.S. 415, 431 (1963); *Thomas v. Collins*, 323 U.S. 516, 530 (1945).  Metro doesn't even assert such an interest.

These legal issues are ripe to be decided as a matter of law.  Defendant Metro raises no genuine disputes of material fact.  The disputes before the Court are purely of a legal nature.  As a matter of law, SB 241 is facially unconstitutional.  Plaintiff Associations respectfully ask the Court to grant their Motion for Summary Judgment.

### LEGAL ANALYSIS

**A.  SB 241 Violates the Protections Enshrined in the First Amendment.**

"The First Amendment prevents the government, except in the most compelling circumstances, from wielding its power to interfere with its employees' freedom to believe and associate, or to not believe and not associate."  *Rutan v. Republican Party of Ill.*, 497 U.S. 62, 76 (1990).  Plaintiff Associations challenge the constitutionality of SB 241, § 1, which bars Nevada governments from providing paid leave for union activities.  Not only does SB 241 discriminate based on content, it also discriminates based on viewpoint and the identity of the speaker.  It discriminatorily interferes with government employees' right to associate by targeting only labor organizations.  Defendant Metro has not, and cannot, offer a governmental interest sufficient to justify this law.

**1.  SB 241 implicates Plaintiff Associations' speech and associational rights.**

On its face, SB 241, § 1 seeks to regulate union speech and associational rights; in turn, it violates Plaintiff Associations' rights and the rights of their members.  SB 241 regulates government employees while "performing duties or providing services for an employee organization."  SB 241, § 1. SB 241 closes off an important channel for pursuing speech and associational activities.  Removing the funding for these positions impairs the employees' right to engage in union activity and curtails Petitioner Associations' and other public sector unions' ability to engage in protected speech and associational activities.  Regulating speech-enabling funding sources is equivalent to regulating the speakers.  *See Citizens United v. FEC*, 558 U.S. 310, 339 (2010) (finding restrictions on expenditures to be

2

a ban on speech).  Defunding these positions hampers the ability of government employees to participate in union and the ability of unions to engage in speech.

The work that employees subject to SB 241 perform is indisputably protected speech and associational activity.  Unions, by design, are formed to engage in First Amendment activities.  *See Thomas v. Collins*, 323 U.S. 516, 534 (1945) (finding that unions and their members have "rights of assembly and discussion [that] are protected by the First Amendment").  For example, public sector unions collectively bargain and negotiate with the government.  Nev. Rev. Stat. §§ 288.033, 288.150. "Because a public-sector union takes many positions during collective bargaining that have powerful political and civic consequences," collective bargaining indisputably implicates First Amendment rights.  *Knox v. SEIU*, 132 S. Ct. 2277, 2289 (2012) (citing *Ellis v. Railway Clerks*, 466 U.S. 435, 455 (1984)).  Additionally, employees seek redress for workplace grievances, mediate disputes, and more. *See, e.g.*, Nev. Rev. Stat. §§ 288.063, 288.190.  This, too, implicates First Amendment rights.  *See Borough of Duryea v. Guarnieri*, 131 S. Ct. 2488, 2495 (2011) ("The Petition Clause undoubtedly does have force and application in the context of a personal grievance addressed to the government."). Moreover, employees use paid, union leave to engage in political advocacy, legislative lobbying, and associational organizing. Johanning Decl. ¶¶ 3-4; Faulis Decl. ¶¶ 4-5; Chaparian Decl. ¶ 3-5.  These activities are the cornerstone of First Amendment-protected activities.  *See Meyer v. Grant*, 486 U.S. 414, 420 (1988) (finding that lobbying, advocacy, and communications about legislation are all forms of "core political speech"); *NAACP v. Alabama ex rel. Patterson*, 357 U.S. 449, 463 (1958) (finding that NAACP has a right "to pursue their collective effort to foster beliefs which they admittedly have the right to advocate"); *Knox*, 132 S. Ct. at 2288 ("[T]he ability of like-minded individuals to associate for the purpose of expressing commonly held views may not be curtailed.").

Plaintiff Associations' and their members' rights to engage in these activities cannot be curtailed.  In its defunding scheme, the Nevada Legislature sought to burden union speech while permitting other groups' expressive activities to continue unfettered.

/ / /

/ / /

/ / /

3

**2. SB 241 is content-based, unconstitutional discrimination under *Reed v. Town of Gilbert*.**

Metro ignores *Reed v. Town of Gilbert*—although Plaintiffs discussed it extensively in their opening brief—and relies on the test for content discrimination that the Supreme Court expressly overruled in that case. *Reed* holds that the government's purpose in adopting a law is irrelevant to determining whether the law is facially content-based. *Reed* also made clear that content-discrimination analysis involves more than simply determining whether a law regulates a particular topic of expression. Laws like SB 241 that regulate based on the "function or purpose" of speech, or the identity of the speaker, are subject to strict scrutiny.

**B. The State's purpose in enacting SB 241 is only relevant to deciding whether the law can pass strict scrutiny.**

Metro claims that "the test for determining whether the particular statute or regulation is content based or content neutral requires an inquiry to whether the government has adopted a regulation of speech because of agreement or disagreement with the message it conveys." ECF NO. 26, p. 9. For this "test" Metro cites *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989). *Ibid.* It then states that SB 241's regulation of speech and association was only "incidental" to the law's true purpose of saving taxpayer money. ECF NO. 26, p. 9. This is the approach to content-discrimination analysis that the Supreme Court rejected in *Reed*.

Under *Reed*, 135 S.Ct. 2218, statutes regulating speech and expressive conduct on the basis of content or the speaker's identity are subject to strict scrutiny, regardless of the government's motive or purpose. The *Reed* Court, by a six-justice majority, resolved a tension between two approaches to First Amendment content-discrimination analysis, siding with "an 'absolutist' content-neutrality rule," *id.* at 2232, under which content-based laws are never constitutional unless they pass strict-scrutiny analysis. *Id.* at 2231 (holding that a "clear and firm rule governing content neutrality is an essential means of protecting freedom of speech, even if laws that might seem 'entirely reasonable' will sometimes be 'struck down because of their content-based nature.'").

The Court held that the government's motive or purpose in regulating speech or speech-related conduct is irrelevant to whether the statute is content-based. In *Reed*, the Ninth Circuit had ruled that the Town of Gilbert's sign ordinance was not subject to strict scrutiny, despite the fact that it distinguished between political, ideological, and "directional" signs, because "its justifications for

4

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

regulating temporary directional signs were 'unrelated to the content of the sign.'"  *Reed*, 135 S.Ct. at 2227-28.  The Ninth Circuit had relied on the plurality opinion in *Hill v. Colorado*, 530 U.S. 703, 719-20 (2000), which upheld the constitutionality of a ban on specific forms of speech-related conduct within 100 feet of the entrance to any health care facility by reasoning that "the State's interests in protecting access and privacy, and providing the police with clear guidelines, are unrelated to the content of the demonstrators' speech."  *See Reed v. Town of Gilbert*, 707 F.3d 1057, 1070-72 (9th Cir. 2013).

This approach put the cart before the horse, the *Reed* Court held.  "A law that is content based on its face is subject to strict scrutiny regardless of the government's benign motive, content-neutral justification, or lack of 'animus toward the ideas contained' in the regulated speech."  *Reed*, 135 S.Ct. at 2228 (internal citation omitted).  While the government's content-neutral justifications might be relevant in determining whether the statute was narrowly tailored to serve a compelling government interest, *id*. at 2231-32, they are not relevant to determining whether the statute is facially content-based in the first place.  *Id*. at 2229 ("Innocent motives do not eliminate the danger of censorship presented by a facially content-based statute, as future government officials may one day wield such statutes to suppress disfavored speech.") (citing *Hill*, *supra*, 530 U.S. at 743 (Scalia, J., dissenting)).

In so holding, the Court expressly rejected the characterization of *Ward v. Rock Against Racism*, that Metro makes here:

> The Court of Appeals and the United States misunderstand our decision in *Ward* as suggesting that a government's purpose is relevant even when a law is content based on its face.  That is incorrect.  *Ward* had nothing to say about facially content-based restrictions because it involved a facially content-*neutral* ban on the use, in a city-owned music venue, of sound amplification systems not provided by the city.

*Reed*, 135 S.Ct. at 2228-29 (citing *Ward*, 491 U.S. at 787 and n.2).

"Innocent motives do not eliminate the danger of censorship presented by a facially content-based statute . . . .  That is why the First Amendment expressly targets the operation of the laws— *i.e.,* the 'abridg[ement] of speech'—rather than merely the motives of those who enacted them."  *Reed*, 135 S.Ct. at 2229.  Even if it were true that the State enacted SB 241 for the purpose of saving taxpayer money—a highly doubtful proposition, given the law's targeted scope—this would not save it from strict-scrutiny review.

5

PLAINTIFFS' REPLY IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT                    Case No. 2:15-cv-1928 LDG-CWH

**C.  Laws that target speech by its function or purpose, or that target particular speakers, are content-based.**

*Reed* demands a far-reaching inquiry into whether a statute is facially content-based, one involves more than simply determining whether a specific expression is proscribed:

> Some facial distinctions based on a message are obvious, defining regulated speech by particular subject matter, and others are more subtle, defining regulated speech by *its function or purpose*.  Both are distinctions drawn based on the message a speaker conveys, and, therefore, are subject to strict scrutiny.

*Id*. at 2227 (emphasis added).  The regulation of an entire purpose of speech is as abhorrent to the Constitution as the regulation of a particular message.  *Id*. at 2239-30; *id*. at 2233 (Alito, J., concurring).  As explained, SB 241 does this, singling out a particularly effective means of union speech and association based on its function or purpose.

*Reed* also consolidated the Court's doctrine of treating speaker-based regulation in the same manner as content-based regulation.  The Ninth Circuit characterized the Town's sign ordinance as "turning on 'the content-neutral elements of who is speaking through the sign and whether and when an event is occurring.'"  *Reed*, 707 F.3d at 1069.  The Court rejected such reasoning: "because '[s]peech restrictions based on the identity of the speaker are all too often simply a means to control content,' we have insisted that 'laws favoring some speakers over others demand strict scrutiny when the legislature's speaker preference reflects a content preference.'"  *Reed*, 135 S.Ct. at 2230 (quoting *Citizens United v. Federal Election Comm'n*, 558 U.S. 310, 340 (2010) and *Turner Broadcasting Sys., Inc. v. FCC*, 512 U.S. 622, 658 (1994)); *see Citizens United*, 558 U.S. at 340-41 ("Quite apart from the purpose or effect of regulating content, moreover, the Government may commit a constitutional wrong when by law it identifies certain preferred speakers. . . .  The First Amendment protects speech and speakers, and the ideas that flow from each.").

SB 241 targets one category of <u>speech</u>—speech in service of public-employee organizations—for disfavored status.  It targets one category of <u>speaker</u>—public-employee organizations—and does so to control content.  As Metro admits, one of SB 241's purposes was to "ensure accountability in collective bargaining."  ECF NO. 26, p. 9.  The Legislature's choice to single out unions and union speech requires strict-scrutiny review of its reasons for doing so.

/ / /

/ / /

PLAINTIFFS' REPLY IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT                    Case No. 2:15-cv-1928 LDG-CWH

**D.  The doctrine concerning discrimination in the regulation of speech applies to all fora.**

Regardless of the forum, content regulation requires strict scrutiny.  The Town of Gilbert regulated directional signs in public "right-of-ways" and on private lawns, *Reed*, 135 S. Ct. at 2225, and the Court struck down all the content-based regulations, finding no compelling state interest, without regard to fora.  *Id.* at 2231-32.  The Supreme Court has repeatedly struck down content-based speech regulation in private fora on the basis that the government has no compelling interest.  *See, e.g.*, *RAV v. St. Paul*, 505 U.S. 377, 391-96 (1992) (holding that law criminalizing cross-burning on private property is unconstitutional); *Snyder v. Phelps*, 562 U.S. 443 (2011) (holding that picketers at a private funeral could not be held liable under state law for engaging in First Amendment-protected activities).  Any attempt to make content-based restrictions must be justified by compelling interests.  *See Perry Ed. Assn. v. Perry Local Educators' Assn.*, 460 U.S. 37, 46 (1983) ("[A] content-based prohibition must be narrowly drawn to effectuate a compelling state interest.")

**E.  Funding decisions are also subject to anti-discrimination rules.**

The Government does not have to fund private speech, but once it chooses to do so, it cannot proceed in a discriminatory fashion.  Even if the government is facilitating speech through funding—rather than burdening speech—it may not make funding decisions by discriminating amongst certain speakers' viewpoints.  *Rosenberger v. Rector of Univ. of Va*., 515 U.S. 819, 830 (1995).

Under the First Amendment, "government regulation may not favor one speaker over another" through its funding decisions.  *Id.* at 828; *see also Legal Services Corp. v. Velazquez*, 531 U.S. 533, 542-43 (2001).  Defendant Metro does not and cannot deny that it historically funded paid union leave. Moreover, Defendant Metro does not deny that, after SB 241, it can continue to fund employees' participation in non-union professional organizations and fund employees' efforts to advocate or lobby. SB 241, § 1 targets only one class of speaker: government employee organizations advocating to improve the terms and conditions of work.  SB 241, § 1; Nev. Rev. Stat. § 288.040.  The Nevada Legislature improperly attempted to filter the view of unions' viewpoints out of its paid leave provisions.

PLAINTIFFS' REPLY IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT                    Case No. 2:15-cv-1928 LDG-CWH

*Rosenberger* and *Velazquez* applied "limited public forum" analysis. *See Police Dept. of Chicago v. Mosley*, 408 U.S. 92, 96 (1972) ("Once a forum is opened up to assembly or speaking by some groups, government may not prohibit others from assembling or speaking on the basis of what they intend to say"). A limited public forum need not be a physical place for people to gather and speak. A government program subsidizing speech creates a limited public forum. In *Rosenberger*, the University of Virginia's program to give money to support student publications was a limited public forum. "The [Student Activities Fund] is a forum more in a metaphysical than in a spatial or geographic sense, but the same principles are applicable." 515 U.S. at 830. In *Velazquez*, the Court took this a step further and applied the principles of *Rosenberger* and its predecessors to the legal representation of indigents under the Legal Services Corporation Act. This was not a program to support a variety of views—a virtual forum—unlike the University's fund to support a variety of student publications in *Rosenberger*. Just the same, the Court applied the same principles about content and viewpoint discrimination. 531 U.S. at 543-544. *See Legal Aid Services of Oregon v. Legal Services Corporation*, 608 F.3d 1084, 1094 (9th Cir. 2010) ("The *Velazquez III* Court analyzed the grantee plaintiffs' unconstitutional conditions claim through the lens of the Court's limited public forum cases."). This case is closer to *Rosenberger* because among various types of leave for advocacy only union leave is singled out for exclusion but in any event the Court's cases make it clear that the government's subsidies in the form of leaves in itself creates a limited public forum or its equivalent for analytical purposes.

Metro cites *Ysursa v. Pocatello Education Association*, 555 U.S. 353 (2009) for the unremarkable proposition that the government does not have to subsidize speech. ECF NO. 26, pp. 7-8. *Ysursa*, however, is not controlling here because the majority found no evidence of speaker discrimination. 555 U.S. at 361. The Supreme Court found that the challenged statute, which barred the government from authorizing paycheck deductions for political purposes, "applies to all organizations, to any deduction regarding political issues, applies regardless of viewpoint or message, applies to all employers, and it does not single out any candidates or issues." *Id.* at 355, 361. The concurring and dissenting opinions underscored the significance of this strong and pointed statement. The justices writing separate opinions noted that if the Court had been presented with evidence of

8

viewpoint discrimination, the case would be decided differently.  *See id.* at 1093 (Breyer, J., concurring in part and dissenting in part) ("A restriction that applies to the political activities of unions alone would seem unlikely to further the government's justifying objective, namely providing the appearance of political neutrality."); *id.* at 1105 (Stevens, J., dissenting) ("Because it is clear to me that the restriction was intended to make it more difficult for unions to finance political speech, I would hold it unconstitutional in all its applications."); *id.* at 1108 (Souter, J., dissenting) ("[A] government is not free to draw those lines as a way to discourage or suppress the expression of viewpoints it disagrees with.").

Far from helping Metro, *Ysursa* strongly supports Plaintiffs' contentions.  Unlike the Idaho statute in *Ysursa,* SB 241 singles out unions and does not apply to any other types of organizations. It does precisely what the concurring and dissenting justices in *Ysursa* said would make a statute unconstitutional and what the majority in was at pains to stress that the Idaho statute did not do. Where, as here, the legislature discriminates on the basis of the speaker's viewpoint, *Ysursa* does not control the analysis.  *Accord United Food & Commercial Workers Local 99 v. Bennett*, 934 F. Supp. 2d 1167, 1185-86 (D. Ariz. 2013) ("Unlike *Ysursa*, . . ., in SB 1365 the state has placed an 'obstacle' on union speech that consists of more than just the cost that any party incurs when it speaks.").

Nothing in *Ysursa* undermines the holdings in *Rosenberger* or in *Velazquez*.  In *Reed*, the Supreme Court relied upon *Rosenberger* in its analysis of content discrimination and did not mention *Ysursa*.  *Reed*, 135 S. Ct. at 2230.  The Supreme Court has not once relied on the majority opinion *Ysursa* since the decision was issued seven years ago.[1]  This may reflect the fact that the issue before the Court was actually the narrow and unusual one of whether a State may mandate its political subdivisions not to make wage deductions for political purposes.  *Ysursa*, 555 U.S. at 355.  The Court answered this affirmatively and its discussion of the discrimination issue was largely beside the point. *See id*. at 365 (Ginsburg, J., concurring).

---

[1]  In a concurring opinion in *Pleasant Grove City v. Summum*, Justice Breyer cited his dissenting opinion in *Ysursa*, for the proposition that the Court should consider whether the government funds speech disproportionately.  555 U.S. 460, 484 (2009) (Breyer, J., concurring) (citing *Ysursa*, 555 U.S. at 368-69 (Breyer, J., concurring in part and dissenting in part).

PLAINTIFFS' REPLY IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT                    Case No. 2:15-cv-1928 LDG-CWH

It remains true that the government may not discriminate between different kinds of messages in affording access to funding.  Doing so presumptively violates the Constitution and is subject to the strictest scrutiny.  *See Rosenberger*, 515 U.S. at 830 ("[V]iewpoint discrimination . . . is presumed impermissible.").  SB 241's attempt to filter out union funding is unconstitutional.

## F.  Defendant Metro did not provide a compelling reason for SB 241.

Because SB 241, § 1 is a content-based restriction that discriminates among viewpoints, it is subject to strict scrutiny.  Accordingly, the government has the burden to show that the regulation is *narrowly tailored* to achieve a *compelling* interest.  *See Burson v. Freeman*, 504 U.S. 191 (1992) (stating test).  The rational basis test that Defendant Metro proffers is not applicable, because SB 241 is not a content-neutral "time, manner, place" restriction like the one in *Members of City Council of Los Angeles v. Taxpayers for Vincent,* 466 U.S. 789 (1984).

Defendant Metro offers only two rationales for SB 241, § 1: the "educational system" and "tax payer concerns."  (ECF NO. 26, pp. 9-10.)  Neither of these concerns pass muster under the rational basis test, and both fail under the strict scrutiny.

First, "[t]he government cannot justify viewpoint discrimination among private speakers on the economic fact of scarcity."  *Rosenberger*, 515 U.S. at 835.  *Accord Graham v. Richardson*, 403 U.S. 365, 374 (1971) ("[A] concern for fiscal integrity is no more compelling a justification for the questioned classification in these cases that it was in *Shapiro* [*v. Thompson*, 394 U.S. 618 (1969), striking down law requiring one-year residency for entitlement to welfare benefits]").  "[B]udgetary reasons" have "never been thought to be a sufficient reason to justify discrimination that is subject to increased judicial scrutiny."  *Korab v. Fink*, 748 F.3d 875, 901 (9th Cir. 2014).

If the Legislature's primary concern was simply taxpayers' funds, then the Legislature would have banned a far broader array of advocacy.  Instead, the Legislature targeted a particular area of thought: labor unions.  SB 241 is not narrowly-tailored to address any economic resource concerns.

Second, Defendant Metro made no attempt to explain why concerns about the educational system drove the decision to cut funding to *all* public sector unions.  The logic stretches reason to its limits.  Defunding unions representing police department employees will not improve the educational

10

1  system in any meaningful manner.  Rehashing an economic scarcity argument also will not justify SB
2  241's viewpoint discrimination, as explained above.

3         Metro not shown a compelling governmental interest.  It cannot show <u>any</u> valid interest.
4  Ultimately, the Nevada Legislature wanted to defund employees for "time spent on employee
5  organization activities."  (ECF NO. 26, Ex. A at 4.)  The Nevada Legislature made no attempt to
6  regulate employee time in other organizations.  Rather, the Nevada Legislature sought to suppress
7  union-related activities and speech.  "Because free speech protections were designed to protect critical
8  speech, we cannot find the suppression of critical speech to be a compelling interest."  *United Bhd. of*
9  *Carpenters & Joiners of Am. Local 586 v. N.L.R.B.*, 540 F.3d 957, 965 (9th Cir. 2008).

10        Defendant Metro has not met its burden to proffer a narrowly-tailored, compelling
11  governmental interest.  Accordingly, SB 241, § 1's regulation of employee organization speech is
12  unconstitutional.

13        **G.  SB 241 Violates Plaintiffs' Associational Rights under the Equal Protection Clause.**

14        Unions, including Plaintiff Associations, have been targeted for unequal treatment under
15  Nevada law.  The freedom to associate without fear of governmental intrusion is a fundamental First
16  Amendment right.  *See Shelton v. Tuc ker*, 364 U.S. 479, 485-86 ("[The] right of free association, [is] a
17  right closely allied to freedom of speech and a right which, like free speech, lies at the foundation of a
18  free society.").  Expressive associational rights are separate from, but intimately connected to, the First
19  Amendment's protections of speech, assembly, religion, and petition.  "An individual's freedom to
20  speak, to worship, and to petition the government for the redress of grievances could not be vigorously
21  protected from interference by the State unless a correlative freedom to engage in group effort toward
22  those ends were not also guaranteed."  *Roberts v. United States Jaycees*, 468 U.S. 609, 622 (1984).
23  *Accord NAACP v. Claiborne Hardware Co.,* 458 U.S. 886, 911 (1982) (The First Amendment's
24  protections "of speech, assembly, association, and petition, 'though not identical, are inseparable' "
25  (quoting *Thomas v. Collins*, 323 U.S. 516, 530 (1945)); *De Jonge v. Oregon,* 299 U.S. 353, 364 (1937)
26  (describing the "right of peaceable assembly" as "a right cognate to those of free speech and free
27  presses and . . . equally fundamental").

28

PLAINTIFFS' REPLY IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT                     Case No. 2:15-cv-1928 LDG-CWH

"The Constitution guarantees freedom of association of this kind as an indispensable means of preserving other individual liberties."  *United States Jaycees*, 468 U.S. at 622; *Rumsfeld v. Forum for Academic & Institutional Rights, Inc*., 547 U.S. 47, 68 (2006) ("The reason we have extended First Amendment protection in this way is clear: The right to speak is often exercised most effectively by combining one's voice with the voices of others.").  This right adheres no matter how large, small, or unpopular the espoused ideas are.  *See United Mine Workers v. Illinois Bar Ass'n*, 389 U.S. 217, 223 (1967) ("Great secular causes, with small ones, are guarded," quoting *Thomas*, 323 U.S. at 531); *see also NAACP v. Alabama ex rel. Patterson*, 357 U.S. 449, 462 (1958) (finding the need to protect the "freedom of association, particularly where a group espouses dissident beliefs.").  Accordingly, "[t]he right thus to discuss, and inform people concerning, the advantages and disadvantages of unions and joining them is protected not only as part of free speech, but as part of free assembly."  *Thomas*, 323 U.S. at 531 (citing *Hague v. C.I.O.*, 307 U.S. 496 (1939)).  Freedom of association guarantees not only that groups have a right to speak; but that their members have a right to listen.  *See id.* at 534 ("That there was restriction upon [a union leader's] right to speak and the rights of the workers to hear what he had to say, there can be no doubt.").

On its face, SB 241 regulates government employees while "performing duties or providing services for an employee organization."  SB 241, § 1.  Presently, Plaintiff Associations' executive and managerial staff is comprised predominantly of employees affected by SB 241.  Plaintiff Las Vegas Police Protective Association has 7 officers all on paid union leave who represent approximately 2,835 commissioned officers.  Chaparian Decl. ¶ 1.  Plaintiff Las Vegas Police Managers and Supervisors Association has 2 representatives on full-time paid union leave who represent approximately 430 officers.  Faulis Decl. ¶ 1.  Nearly all of the Plaintiff Associations' representational staff consists of Defendant Metro employees on paid union leave.  Faulis Decl. ¶ 1; Chaparian Decl. ¶ 1.  Defunding these positions hampers the ability of government employees to participate in unions.  Through this scheme, the government has chosen to subsidize employees' decisions to join some professional groups, but restricted payment of salaries to officers choosing to spend their time "performing duties or providing services for an employee organization."  SB 241, § 1.

12

As a result, SB 241, § 1 violates Plaintiff Associations' rights and the rights of their members. "Any interference with the freedom of a party [or association] is simultaneously an interference with the freedom of its adherents," *NAACP v. Button*, 371 U.S. 415, 431 (1963) (quoting *Sweezy v. New Hampshire*, 354 U. S. 234, 250-51 (1957)), and vice versa, *see NAACP v. Alabama*, 357 U.S. at 459-60 (recognizing the NAACP's standing to argue on behalf of its membership's rights).

"Regulation in this area 'must be done, and the restriction applied, in such a manner as not to intrude upon the rights of free speech and free assembly.'" *Hynes v. Mayor and Council of Oradell*, 425 U.S. 610, 616 (1976) (quoting *Thomas*, 323 U.S. at 540-41). Choices to associate are personal decisions that must be protected from governmental interference. *See Abood v. Detroit Bd. of Ed.*, 431 U.S. 209, 234 (1977) ("Equally clear is the proposition that a government may not require an individual to relinquish rights guaranteed him by the First Amendment as a condition of public employment."). Unlike speech, which often occurs in public arenas where the government has some authority to regulate, the decision to associate with a group—or not—is of personal import. *See Shelton*, 364 U.S. at 485-86 (finding law to be an "interference with personal freedom" and a violation of the freedom to associate); *NAACP v. Alabama*, 357 U.S. at 462 ("This Court has recognized the vital relationship between freedom to associate and privacy in one's associations.").

Thus, while the freedom of speech analyses implicate varying levels of scrutiny, there is only one level of scrutiny for impingements on the freedom of association: strict scrutiny. *See United States Jaycees*, 468 U.S. at 623 (requiring least restrictive means to achieve compelling interest); *NAACP v. Alabama*, 357 U.S. at 463 (requiring compelling state interest); *Healy v. James*, 408 U.S. 169, 172 (1972) (holding that "a 'heavy burden' rests on the [state] to demonstrate the appropriateness of" a rule that interferes with associational activities); *Thomas*, 323 U.S. at 531 (explaining that the legislature needs more than a rational basis to support laws which infringe on expressive associational and speech rights).

SB 241 discriminatorily interferes with the right of government employees to associate with organizations of their choice, permitting paid leave to participate in professional organizations *so long as* the associations are not employee organizations. This undoubtedly infringes upon employees' right to associate as they choose. Yet Metro has not proffered a single compelling state interest.

PLAINTIFFS' REPLY IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT          Case No. 2:15-cv-1928 LDG-CWH

Metro repeatedly attempts to justify SB 241, § 1 as *de minimis* incursion.  However, the Supreme Court made clear that First Amendment liberties have "a sanctity and a sanction not permitting dubious intrusions. And it is the character of the right, not of the limitation, which determines what standard governs the choice." *Thomas*, 323 U.S. at 530.  In *Healy*, the Supreme Court held that a state college's refusal to recognize a student group, and the attendant decision to withhold benefits from the unrecognized group, impermissibly infringed on the group's right to associate.  408 U.S. at 183-6.  Although the college's refusal to recognize the group did not directly infringe on the members' First Amendment right, the Supreme Court looked at the effects of non-recognition, proclaiming that "[w]e are not free to disregard the practical realities." *Id.* at 183.  The college's non-recognition burdened the group in a way that other groups were not: the student group was not permitted to meet on campus, publish in school newspaper, or post notices on school bulletin boards. *Id.* at 176. The Supreme Court found this unsupportable, reaffirming that it "has consistently disapproved governmental action . . . denying rights and privileges solely because of a citizen's association with an unpopular organization." *Id.* at 185-86; *see also Rumsfeld*, 547 U.S. at 69 ("[W]e have held laws unconstitutional . . . impose penalties or withhold benefits based on membership in a disfavored group.").

"The First Amendment would . . . be a hollow promise if it left government free to destroy or erode its guarantees by indirect restraints so long as no law is passed that prohibits free speech, press, petition, or assembly as such." *United Mine Workers*, 389 U.S. at 222.  SB 241 § 1, which requires governments to demand concessions of undefined value from unions, in order to grant unions the same benefits that other professional organizations enjoy, is an unconstitutional restriction on union members' rights to associate.

/ / /
/ / /
/ / /
/ / /
/ / /
/ / /

14

1

## **CONCLUSION**

2     Because SB 241, § 1 is unconstitutional, Defendant Metro has no right to enforce this law. The

3  Court should grant the Motion for Summary Judgment in favor of Plaintiffs.

4

5  Dated:  June 13, 2016                     Respectfully submitted,

6

7                                          */s/ Richard McCracken*
                                           Paul More
8                                          Richard McCracken
                                           McCRACKEN, STEMERMAN & HOLSBERRY
9                                          1630 S. Commerce Street, Suite A-1
                                           Las Vegas, NV 89102
10                                         Tel:     702-386-5107
                                           Fax:     702-386-5132
11
12                                         *Attorney for Plaintiffs*

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFFS' REPLY IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT              Case No. 2:15-cv-1928 LDG-CWH

**CERTIFICATE OF SERVICE**

I hereby certify that I am an employee of McCracken, Stemerman, and Holsberry, and that on June 13, 2016, I electronically transmitted the following documents to the Clerk's Office using the CM/ECF System for filing and transmittal, and a Notice of Electronic Filing was electronically transmitted from the court to the e-mail addresses on file in the case:

**PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT**

*/s/ Lesley E. Phillips*

16

PLAINTIFFS' REPLY IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT                    Case No. 2:15-cv-1928 LDG-CWH