Richard G. McCracken SBN 2748
Kimberley C. Weber, SBN 14434
McCRACKEN, STEMERMAN & HOLSBERRY
1630 S. Commerce Street, Suite A-1
Las Vegas, Nevada 89102
Telephone:     (702) 386-5107
Fax:             (415) 597-7201
E-mail:         rmccracken@msh.law
                    kweber@msh.law
*Attorneys for Plaintiffs*


DAVID ROGER
General Counsel
Las Vegas Police Protective Association
9330 W. Lake Mead Blvd. Ste. 200
Las Vegas, NV 89134
Tel:     (702) 384-8692 ext. 204
Email: DRoger@LVPPA.com
*Attorneys for Plaintiff LVPPA*

JAY ROBERTS
General Counsel
Las Vegas Metro Police Managers &
Supervisors Association
801 S. Rancho Drive, Suite A-1
Las Vegas, Nevada 89106
Tel:     702-309-7675
Office: 702-384-2924, x23
Fax:     702-384-3024
Email: jayr@lvpmsa.org
*Attorneys for Plaintiff PMSA*

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| LAS VEGAS POLICE PROTECTIVE ASSOCIATION METRO INC.; LAS VEGAS METRO POLICE MANAGERS & SUPERVISORS ASSOCIATION, <br><br> Plaintiffs, <br> vs. <br><br> LAS VEGAS METROPOLITAN POLICE DEPARTMENT, <br><br> Defendant. | Case No.:     2:15-cv-1928 LDG-CWH <br><br> **PLAINTIFFS' RESPONSE TO METRO'S MOTION FOR SUMMARY JUDGMENT** |

# TABLE OF CONTENTS

I.      INTRODUCTION ...................................................................................................... 1

II.     STATEMENT OF UNDISPUTED FACTS ............................................................. 1

    A.   The Associations Use Paid Leave to Conduct First Amendment Protected Activities. .............. 1

    B.   SB 241 Targets Pro-Union Viewpoints and Union Activity. ......................................... 3

III.    STANDARD OF REVIEW ...................................................................................... 4

IV.     LEGAL ANALYSIS ................................................................................................ 5

    A.   SB 241 Violates the Protections Enshrined in the First Amendment. ........................... 5

        1.   SB 241 implicates the Plaintiff Associations' First Amendment rights to free speech and assembly. ................................................................................................ 5

        2.   The Plaintiff Associations have First Amendment rights to be free of discriminatory government funding schemes ................................................................ 6

        3.   SB 241 unlawfully regulates speech based on its content. ................................. 7

        4.   SB 241 amounts to unlawful viewpoint discrimination. ..................................... 8

        5.   Defendant Metro cannot justify SB 241. ............................................................ 9

    B.   SB 241 Violates the Associations' Rights under the Equal Protection Clause. .......................... 11

        1.   Plaintiff Associations have standing to pursue their Equal Protection claim. ................. 11

        2.   SB 241 violates the Associations' rights. ......................................................... 12

        3.   Strict scrutiny applies .......................................................................................... 12

        4.   Defendant Metro failed to justify SB 241's discrimination. ............................. 13

    C.   Plaintiffs' Claims Are Not Moot. ..................................................................................... 14

V. CONCLUSION ........................................................................................................... 16

i

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Adarand Constructors, Inc. v. Pena*,
  515 U.S. 200 (1995) ................................................................................................ 11

*Allegheny Pittsburgh Coal Co. v. Commission of Webster Cty.*,
  488 U. S. 336 (1989) ............................................................................................... 12

*Armster v. U.S. Dist. Ct.*,
  806 F.2d 1347 (9th Cir. 1986) ................................................................................ 14

*Barr v. Lafon*,
  538 F.3d 554 (6th Cir. 2008) .................................................................................. 13

*Brown v. Entm't Merchants Ass'n.*,
  131 S. Ct. 2729 (2011) ............................................................................................ 10

*Bullock v. Carter*,
  405 U.S. 134 (1972) ................................................................................................ 14

*Celotex Corp. v. Catrett*,
  477 U.S. 317 (1986) .................................................................................................. 4

*Cheatham v. DiCiccio*,
  379 P.3d 211 (Ariz. 2016) ................................................................................. 14, 15

*Citizens United v. FEC*,
  558 U.S. 310 (2010) ............................................................................................ 8, 10

*Clark v. Jeter*,
  486 U.S. 456 (1988) ................................................................................................ 12

*Cleburne v. Cleburne Living Center, Inc.*,
  473 U.S. 432 (1985) ................................................................................................ 13

*Denney v. Drug Enforcement Admin.*,
  508 F. Supp. 2d 815 (E.D. Cal. 2007) ................................................................... 13

*Edward J. DeBartolo Corp. v. Florida Gulf Coast Building & Constr. Trades Council*,
  485 U.S. 568 (1988) ................................................................................................ 12

*Fitzgerald v. Racing Ass'n of Cent. Iowa*,
  539 U.S. 103 (2003) ................................................................................................ 12

*Flagg Bros., Inc. v. Brooks*,
    436 U.S. 149 (1978) ................................................................................ 5

*Graham v. Richardson*,
    403 U.S. 365 (1971) .............................................................................. 10

*Gray v. Sanders*,
    372 U.S. 368 (1963) .............................................................................. 14

*Havens Realty Corp. v. Coleman*,
    455 U.S. 363 (1982) .............................................................................. 11

*Lawrence v. Texas*,
    123 S. Ct. 2472 (2003) (O'Connor, J., concurring) .............................. 13

*Legal Servs. Corp. v. Velasquez*,
    531 U.S. 533 (2001) ......................................................................... 1, 7, 9

*McKinley v. City of Eloy*,
    705 F.2d 1110 (9th Cir. 1983) ................................................................ 5

*Morfin v. Albuquerque Pub. Sch.*,
    906 F.2d 1434 (10th Cir. 1990) .............................................................. 5

*Moss v. U.S. Secret Service*,
    572 F.3d 962 (9th Cir. 2009) .................................................................. 8

*NAACP v. Alabama ex rel. Patterson*,
    357 U.S. 449 (1958) ....................................................................... 6, 11, 13

*New Orleans v. Dukes*,
    427 U.S. 297 (1976) .............................................................................. 12

*Northeastern Fla. Chapter, Associated Gen. Contractors of America v. Jacksonville*,
    508 U. S. 656 (1993) .............................................................................. 11

*Police Dept. of Chicago v. Mosley*,
    408 U.S. 92 (1972) ........................................................................... 12, 13

*Reed v. Town of Gilbert*,
    135 S. Ct. 2218 (2015) ..................................................................... 7, 8, 9

*Rosenberger v. Regents, Univ. Va.*,
    515 U.S. 819 (1995) ....................................................................... *passim*

*Shapiro v. Thomas*,
    394 U.S. 618 (1969) .............................................................................. 10

iii

*Sheet Metal Workers Int'l Assn v. NLRB,*
    491 F.3d 429 (D.C. Cir. 2007) .................................................................. 12

*Sioux City Bridge Co. v. Dakota County,*
    260 U. S. 441 (1923) ............................................................................... 12

*Super Tire Engineering Co. v. McCorkle,*
    416 U.S. 115 (1974) ............................................................................... 15

*Thomas v. Cnty. of Riverside,*
    763 F.3d 1167 (9th Cir. 2014) ................................................................. 5

*Thomas v Collins,*
    323 U.S. 516 (1945) ............................................................................... 12

*U.S. Dept. of Agriculture v. Moreno,*
    413 U. S. 528 (1973) ............................................................................... 13

*United Bhd. of Carpenters & Joiners of Am. Local 586 v. NLRB,*
    540 F.3d 957 (9th Cir. 2008) ................................................................... 9

*United Food & Commercial Workers Local 99 v. Brewer,*
    817 F. Supp. 2d 1118 (D. Ariz. 2011) ..................................................... 7

*United States v. Playboy Entm't Group, Inc.,*
    529 U.S. 803 (2000) ................................................................................. 9

*United States v. Williams,*
    553 U.S. 285 (2008) ............................................................................... 10

*Village of Willowbrook v. Olech,*
    528 U.S. 562 (2000) .......................................................................... 12, 13

*Walling v. Helmerich & Payne, Inc.,*
    323 U.S. 37 (1944) ................................................................................. 15

**Nevada Statutes and Regulations**

Nev. Rev. Stat. § 284.030 ............................................................................ 4

Nev. Rev. Stat. § 284.068 ............................................................................ 4

Nev. Rev. Stat. § 288.030 ..................................................................... 2, 5, 6

Nev. Rev. Stat. § 288.040 ..................................................................... 4, 5, 7

Nev. Rev. Stat. § 288.063 ..................................................................... 2, 5, 6

Nev. Rev. Stat. § 288.140 ..................................................................... 2, 5, 6

Nev. Rev. Stat. § 288.150 ................................................................................. 2, 5, 6

Nev. Rev. Stat. § 288.190 ................................................................................. 2, 5, 6

Nev. Rev. Stat. § 288.225 ..................................................................................... 14

Nev. Admin. Code § 284.589(6)(c) ........................................................................ 4

**Federal Authorities**

U.S. Const., Amend. I .................................................................................... *passim*

U.S. Const., Article III ........................................................................................ 11

U.S. Const. Amend. XIV ........................................................................... 11, 12, 13

Fed. R. Civ. P. 56 ................................................................................................. 4

v

# I.

# INTRODUCTION

When the Nevada Legislature enacted SB 241, it banned local governments from providing paid leave to public employees engaging in First Amendment-protected activities. In so doing, the Legislature targeted employees who support their unions. The Legislature did not ban paid leaves to work against unions; nor did the Legislature ban paid leaves to advocate for any other issue. SB 241 represents impermissible viewpoint discrimination of the sort which has invalidated federal, state, and local funding restrictions in *Rosenberger v. Regents, Univ. Va.*, 515 U.S. 819 (1995), *Legal Services Corp. Velasquez*, 531 U.S. 533 (2001) and other cases. Defendant Metro is the agency responsible for implementing SB 241 to the detriment of Plaintiffs Las Vegas Police Protective Association Metro Inc. and Las Vegas Police Managers and Supervisors Association (collectively, "Plaintiff Associations").

At this stage of the procedural history, the Plaintiff Associations argue four points. First, the legal issues are ripe to be decided as a matter of law. The parties raise no genuine disputes over material facts. The disputes before the Court are purely of a legal nature. Second, SB 241 section 1 discriminates based both on content and on viewpoint. As such, it is an unconstitutional law regardless of whether it affects a private, public, or limited public fora. Third, SB 241 violates the Plaintiff Associations' equal protection rights. Despite the constitutional violations, Defendant Metro has not proffered a compelling governmental interest to justify this law. Nor can it. As a matter of law, SB 241 is facially unconstitutional. Finally, as long as the SB 241 remains on the books, the parties' dispute will continue to be ripe.

# II.

# STATEMENT OF UNDISPUTED FACTS

The parties do not dispute any facts; the parties only argue over which facts are material. A summary of the undisputed facts from the Plaintiff Associations follows:

## A.     The Associations Use Paid Leave to Conduct First Amendment Protected Activities.

Nevada's public policy contemplates that employees will take paid union leave to collectively bargain contracts for their fellow workers, mediate differences between employees and management,

1

seek redress for workplace grievances, and more. *See* Nev. Rev. Stat. §§ 288.030, 288.063, 288.140, 288.150, 288.190 (defining rights of public employees). Historically, the parties to this case agreed to provide paid leave to employees who have been elected or designated as Association officials. (Def.'s Mem. iso MSJ, p. 2; Dkt. 6-2, Faulis Decl. ¶ 1; Dkt. 6-3, Chaparian Decl. ¶ 1; Am. Compl. ¶ 8; Ans. ¶ 8.) Undisputedly, in 2015, Plaintiff Las Vegas Police Protective Association Metro had 7 officers on paid union leave who represented approximately 2,835 commissioned officers employed by Metro. (Dkt. 6-3, Chaparian Decl. ¶ 1.) In 2015, Plaintiff Las Vegas Police Managers and Supervisors Association had 2 representatives on full-time paid union leave who represented approximately 430 officers, as well as part-time officers. (Dkt 6-2, Faulis Decl. ¶ 1.)

The paid-leave provisions permit the Plaintiff Associations' representatives to advocate for and represent their fellow employees. While on paid union leave, the Associations' representatives perform a variety of representational advocacy activities: representatives on paid union leave engage in political advocacy, lobby legislative bodies, file grievances on behalf of members, bargain over the terms and conditions of work, and organize their fellow workers. (Dkt. 6-2, Faulis Decl. ¶¶ 4-5; Dkt. 6-3, Chaparian Decl. ¶ 3-5; Dkt. 6-4, Johanning Decl. ¶¶ 3-4; Dkt. 16-1, Ramirez Decl. ¶¶ 9-11; Dkt. 16-2, Supp. Faulis Decl. ¶¶ 1, 4.) Union representatives also counsel fellow employees who are running into problems at work and represent their members during Internal Affairs investigatory meetings. (Dkt. 6-4, Johanning Decl. ¶ 8; Faulis Decl. ¶ 8; Dkt. 6-3, Chaparian Decl. ¶ 8.) Defendant Metro did not dispute any of these facts in the prior motion for summary judgment. (Dkt. 26.)

The passage of SB 241 up-ended the long-standing contractual arrangement between the Plaintiff Associations and Defendant Metro. After SB 241 was enacted, Defendant Metro threatened the Plaintiff Associations that it would rely on SB 241 to bar union officials from continuing to take paid union leave unless the Plaintiff Associations made new concessions. (Dkt. 6-2, Faulis Decl. ¶ 1; Dkt. 6-3, Chaparian Decl. ¶ 1; Am. Compl. ¶ 8; Ans. ¶ 8.) Indeed, Defendant Metro insisted on the lawfulness of SB 241 during negotiations for the most recent collective bargaining agreements between Defendant Metro and the respective Plaintiff Associations. (Roberts Decl. ¶ 3; Grammas Decl. ¶ 3; Def.'s Mem. iso MSJ, pp. 8-9.) The Plaintiff Associations were forced to make additional concessions during the 2016 bargaining, above and beyond the concessions they had already made in prior

negotiations. (Dkt. 6-2, Faulis Decl. ¶¶ 4-5; Dkt. 6-3, Chaparian Decl. ¶ 3-5; Roberts Decl. ¶ 3; Grammas Decl. ¶¶ 3-4.)

SB 241 burdens Plaintiff Associations' bargaining positions and their capacity to engage in advocacy and associational activities. (Dkt. 6-2, Faulis Decl. ¶ 3; Dkt. 6-3, Chaparian Decl. ¶ 3; Dkt. 6-4, Johanning Decl. ¶ 3; Dkt. 16-1, Ramirez Decl. ¶¶ 3-7; Supp. Faulis Decl. ¶¶ 1-2, 5; Roberts Decl. ¶ 4; Grammas Decl. ¶ 5.) Reduced funding creates a downward spiral for the Plaintiff Associations' speech and associational capabilities. Because of the reduced funding, the Plaintiff Associations will have to take cost-cutting measures and reduce their services. In turn, reduced services will result in reduced membership—which in turn reduces Plaintiff Associations' ability to communicate with the workforce and advocate as organizations. (Dkt. 6-2, Faulis Decl. ¶ 4; Dkt. 6-3, Chaparian Decl. ¶ 4; Dkt. 6-4, Johanning Decl. ¶ 4.)

Defendant Metro's enforcement of this unconstitutional law continues to threaten the Plaintiff Associations' abilities to advocate for Defendant Metro's employees. Because Defendant Metro's enforcement of SB 241 threatens the sustainability of Plaintiff Associations' expressive activities and advocacy, the Plaintiff Associations filed the instant action.

**B.      SB 241 Targets Pro-Union Viewpoints and Union Activity.**

Plaintiff Associations challenge the constitutionality of SB 241, section 1, which bars governments from providing paid leave for union activities. In May 2015, the Nevada Legislature adopted SB 241, which provides:

> A local government employer may agree to provide leave to any of its employees for time spent by the employee in performing duties or providing services for an employee organization if the full cost of such leave is paid or reimbursed by the employee organization or is offset by the value of concessions made by the employee organization in the negotiation of an agreement with the local government employer pursuant to this chapter.

SB 241, § 1. In support of SB 241, sponsor Assemblyman Randy Kimer was quoted: "Government should not be in the business of subsidizing a union." (Dkt. 6-1, Kahn Decl. ¶2 & Ex. B p. 5.)

SB 241 does not affect any other forms of advocacy subsidized by the government. Every legislative session, localities spend several millions of dollars on lobbying in Carson City, which the

3

Legislature has not banned. (Dkt. 6-1, Kahn Decl. ¶ 1 & Ex. A.) Defendant Metro pays salaries to its officers who lobby in Carson City and before the county government. (Dkt. 6-2, Faulis Decl. ¶ 6.) Furthermore, Nevada state employees are still entitled to use paid leaves to represent state employees on state boards and commissions dealing with employment issues. *See* Nev. Admin. Code § 284.589(6)(c); Nev. Rev. Stat. §§ 284.068, 284.030; 285.030. SB 241 does not impinge on these practices—only to advocacy from employee organizations.

SB 241 also does not affect other governmental-employee associations; it only applies to those associations that seek to improve the "terms and conditions of employment." *See* SB 241, § 1 (prohibiting unreimbursed leave for employees "performing duties or providing services for an employee organization."); Nev. Rev. Stat. § 288.040 (defining employee organization). Meanwhile, Defendant Metro provides paid leave to employees performing duties or services for the Black Police Officers Association; the Latino Peace Officers Association; the Nevada Chiefs and Sheriffs Associations; and the Police Athletic League; among others. (Dkt. 6-2, Faulis Decl. ¶ 6; Dkt. 6-3, Chaparian Decl. ¶ 6; Dkt. 6-4, Johanning Decl. ¶ 6.) Defendant Metro has not denied this. (Dkt. 26.) Nothing in SB 241 bars Defendant Metro from providing paid leave to these other employee associations as it has in the past. Instead, SB 241 targets employee organizations focused on the terms and conditions of work, commonly known as labor unions.

### III.

### STANDARD OF REVIEW

The parties agree that they have no dispute over material facts, thus summary judgment is appropriate. Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The Court could and should enter judgment. Plaintiff Associations, however, contend that their arguments should prevail over Defendant Metro's as a matter of law.

/ / /

/ / /

/ / /

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# IV.

# LEGAL ANALYSIS

**A.    SB 241 Violates the Protections Enshrined in the First Amendment.**

Defendant Metro's enforcement of SB 241 deprives the Plaintiff Associations of their federally protected rights. *See Flagg Bros., Inc. v. Brooks*, 436 U.S. 149 (1978) (challenging constitutionality of state statute by bringing suit against entity enforcing state law). The Plaintiff Associations challenge the constitutionality of this statute on the grounds of viewpoint discrimination, associational status discrimination, and equal protection. Plaintiff Associations also respond that their claims are not moot. All the legal claims in this case are ripe for decision.

**1.    SB 241 implicates the Plaintiff Associations' First Amendment rights to free speech and assembly.**

SB 241 specifically regulates the expressive activities of labor unions. By its terms, SB 241 regulates employees "performing duties or providing services for an employee organization." SB 241, § 1. Those duties and services cover the time labor representatives spend "improv[ing] the terms and conditions of employment of local government employees." Nev. Rev. Stat. § 288.040. In total, these activities form the very essence of the Plaintiff Associations' purpose: political speech and representational advocacy aimed at improving the terms and conditions of employees' work lives.

For years, the Plaintiff Associations have used paid union leave to engage in political advocacy, legislative lobbying, and to seek redress of workplace grievances. (Dkt. 6-2, Faulis Decl. ¶¶ 4-5; Dkt. 6-3, Chaparian Decl. ¶ 3-5; Dkt. 6-4, Johanning Decl. ¶¶ 3-4); *see also* Nev. Rev. Stat. §§ 288.030, 288.063, 288.140, 288.150, 288.190. Under court precedent, the advocacy and organizing work of employee organizations is protected by the First Amendment. *See, e.g.*, *Morfin v. Albuquerque Pub. Sch.*, 906 F.2d 1434, 1438 (10th Cir. 1990) ("The First Amendment protects the right of a public employee to join and participate in a labor union."); *Thomas v. Cnty. of Riverside*, 763 F.3d 1167 (9th Cir. 2014); *McKinley v. City of Eloy*, 705 F.2d 1110 (9th Cir. 1983).

In addition to freedom of speech, SB 241 implicates the Plaintiff Associations' freedom of association. Indisputably, the Plaintiff Associations' representatives utilize paid union leave to

collectively bargain contracts for their fellow workers and mediate differences between employees and management. Nev. Rev. Stat. §§ 288.030, 288.063, 288.140, 288.150, 288.190. They also use paid union leave to engage in grievance representation, peer counseling, and associational organizing. (Dkt. 6-2, Faulis Decl. ¶¶ 4-5; Dkt. 6-3, Chaparian Decl. ¶ 3-5; Dkt. 6-4, Johanning Decl. ¶¶ 3-4.) All these activities are protected by the interlinked rights of freedom of speech and freedom of association. There is a "close nexus between the freedoms of speech and assembly" because "[e]ffective advocacy of both public and private points of view, particularly controversial ones, is undeniably enhanced by group association." *NAACP v. Alabama ex rel. Patterson*, 357 U.S. 449, 460 (1958) (collecting cases).

**2.    The Plaintiff Associations have First Amendment rights to be free of discriminatory government funding schemes.**

SB 241 threatens the viability of the Plaintiff Associations. (Dkt. 6-2, Faulis Decl. ¶ 3; Dkt. 6-3, Chaparian Decl. ¶ 3; Dkt. 6-4, Johanning Decl. ¶ 3; Dkt. 16-1, Ramirez Decl. ¶¶ 3-7; Supp. Faulis Decl. ¶¶ 1-2, 5; Roberts Decl. ¶¶ 4-6; Grammas Decl. ¶¶ 5-7.) Because the Plaintiff Associations use paid union leave "to pursue their collective effort to foster beliefs which they admittedly have the right to advocate," any government regulations which "may induce members to withdraw from the Association and dissuade others from joining it," infringe on the Plaintiff Associations' advocacy rights. *See NAACP*, 357 U.S. at 460.

Employee organizations' speech and associational rights are protected even in the context of government funding schemes. Although there is no *per se* right to government funding, the First Amendment bans the government from engaging in viewpoint discrimination when making its funding decisions. For example, after the University of Virginia established a program to fund student groups, the Supreme Court held that it could not withhold the funding from otherwise eligible groups simply because the University preferred to subsidize other groups. *See Rosenberger v. Rector & Visitors of Univ. of Virginia*, 515 U.S. 819, 824, 835 (1995) (granting injunctive relief to Christian organizations refused funding due to public agency's refusal to fund any student organizations with religious orientation). Even though the university had a scarcity of funds, the Supreme Court held that the government could not discriminate when making budgeting choices. *Id.* Once the government has determined that it will fund "private speakers who convey their own messages, the [government] may

not silence the expression of selected viewpoints." *Id.* at 835. *Accord Legal Servs. Corp. v. Velasquez*, 531 U.S. 533 (2001) (applying *Rosenberger* doctrine to the funding of legal services); *United Food & Commercial Workers Local 99 v. Brewer*, 817 F. Supp. 2d 1118, 1124 (D. Ariz. 2011) (enjoining statute that prohibited government from collecting payroll deductions for certain unions). While the government is "not required to fund" a particular program, once it chooses to create a program, it cannot define the scope of funding to exclude certain vital theories and ideas." *Legal Servs. Corp.*, 531 U.S. at 548.

### 3.   SB 241 unlawfully regulates speech based on its content.

Under the First Amendment, a government "'has no power to restrict expression because of its message, its ideas, its subject matter, or its content.'" *Reed v. Town of Gilbert*, 135 S. Ct. 2218, 2228 (2015) (quoting *Police Dept. of Chicago v. Mosley*, 408 U.S. 92, 95 (1972)). A statute's regulation is content-based if the statute "applies to particular speech because of the topic discussed or the idea or message expressed." *Id.* at 2227 (collecting cases). Analyzing this "commonsense" question "requires a court to consider whether a regulation of speech 'on its face' draws distinctions based on the message a speaker conveys." *Id.* (quoting *Sorrell v. IMS Health, Inc.*, 131 S. Ct. 2653, 2664 (2011)). Determining whether a statute is facially content-based involves more than assessing whether a specific expression is proscribed:

> Some facial distinctions based on a message are obvious, defining regulated speech by particular subject matter, and others are more subtle, defining regulated speech by *its function or purpose*. Both are distinctions drawn based on the message a speaker conveys, and, therefore, are subject to strict scrutiny.

*Id.* at 2227 (emphasis added). The regulation of an entire subject or purpose of speech is as abhorrent to the Constitution as the regulation of a particular message. *Id.* at 2239-30; *id.* at 2233 (Alito, J., concurring) ("Limiting speech based on its 'topic' or 'subject' favors those who do not want to disturb the status quo.")

SB 241 is content-based on its face. The law only applies to a particular topic or subject of speech by a particular speaker: government employee organizations advocating to improve the terms and conditions of work. SB 241, § 1; Nev. Rev. Stat. § 288.040. SB 241 does not regulate local governments' funding of other advocacy and does not regulate the funding of professional

organizations that do not seek to improve the terms and conditions of employment. As written, SB 241 necessarily requires local governments to distinguish the groups eligible for paid leave based on the message of the group.

It is no answer to argue that SB 241 targets particular "speakers" rather than a particular "content" or "message." Such an interpretation would not save the statute from strict scrutiny because "speech restrictions based on the identity of the speaker are all too often simply a means to control content." *Reed*, 135 S. Ct. at 2230 (quoting *Citizens United v. FEC*, 558 U.S. 310, 340 (2010) (the First Amendment prohibits "restrictions distinguishing among different speakers; allowing speech by some but not others.")); *Citizens United*, 558 U.S. at 340-41 ("Quite apart from the purpose or effect of regulating content, moreover, the Government may commit a constitutional wrong when by law it identifies certain preferred speakers. . . . The First Amendment protects speech and speakers, and the ideas that flow from each."). Consequently, the Supreme Court has "insisted that 'laws favoring some speakers over others demand strict scrutiny when the legislature's speaker preference reflects a content preference.'" *Reed*, 135 S.Ct. at 2230 (quoting *Turner Broadcasting Sys., Inc. v. FCC*, 512 U.S. 622, 658 (1994)).

### 4.       SB 241 amounts to unlawful viewpoint discrimination.

Not only is SB 241 a content-based regulation of expression—it is the most "egregious form of content discrimination": viewpoint discrimination. *Id*. at 2230 (quoting *Rosenberger*, 515 U.S. at 829). "The government must abstain from regulating speech when the specific motivating ideology or the opinion or perspective of the speaker is the rationale for the restriction." *Rosenberger*, 515 U.S. at 829 (citing *Perry Ed. Assn. v. Perry Local Educators' Assn*., 460 U.S. 37, 46 (1983)). Viewpoint discrimination occurs when the government burdens "speech by particular speakers, thereby suppressing a particular view about a subject." *Moss v. U.S. Secret Service*, 572 F.3d 962, 970 (9th Cir. 2009) (internal quotations omitted). Labor organizations represent a distinct viewpoint—improving the terms and conditions of work—and indeed exist for the purpose of engaging in speech with such viewpoint. The Nevada Legislature has done nothing to bar local governments from providing paid leave to employees wishing to advocate against public employee organizations, only spending on leaves to advocate or provide services for such organizations. SB 241, § 1.

While the Plaintiff Associations could prove an improper subjective motive on the part of the legislative majority, (e.g. Ex. B p. 5 to Kahn Decl. ¶ 2), they do not need to, because singling out one set of advocates to ban from receiving funds is enough. "A law that is content based on its face is subject to strict scrutiny regardless of the government's benign motive, content-neutral justification, or lack of 'animus toward the ideas contained' in the regulated speech." *Reed*, 135 S. Ct. at 2228 (citing *Cincinnati v. Discovery Network, Inc.*, 507 U.S. 410, 429 (1993)). A "party opposing the government 'need adduce no evidence of an improper censorial motive.'" *Id.* (quoting *Simon & Schuster, Inc. v. Members of N.Y. State Crime Victims Bd.*, 502 U.S. 105, 115 (1991)).

Barring paid leave for union representatives cripples those with a legal duty to represent employees, while allowing all other employees to continue receiving salaries for their advocacy and representational activities. Thus, the Legislature's targeting of labor organizations alone for the stripping of leave rights requires strict scrutiny.

**5.    Defendant Metro cannot justify SB 241.**

Statutes that regulate expression based on content are "'presumptively invalid,' and the Government bears the burden to rebut that presumption." *United States v. Playboy Entm't Group, Inc.*, 529 U.S. 803, 817 (2000) (quoting *R.A.V. v. St. Paul*, 505 U.S. 377, 382 (1992)). "Content-based laws. . . may be justified only if the government proves that they are narrowly tailored to serve compelling state interests." *Reed*, 135 S. Ct. at 2228 (collecting cases).

The government cannot provide a compelling interest to justify this discrimination. *See United Bhd. of Carpenters & Joiners of Am. Local 586 v. NLRB*, 540 F.3d 957, 965 (9th Cir. 2008) ("Because free speech protections were designed to protect critical speech, we cannot find the suppression of critical speech to be a compelling interest.") Government restrictions on funding for private organizations' speech, when based on the identity of a speaker or a viewpoint, are unconstitutional. "Where private speech is involved, even Congress' antecedent funding decision cannot be aimed at the suppression of ideas thought inimical to the Government's own interest." *Legal Servs. Corp.*, 531 U.S. at 549 (citing cases). Nor can Defendants rely on any motive related to saving taxpayer dollars. The Supreme Court rejected the argument that a scarcity of funds justified content-discrimination in *Rosenberger*:

> The University urges that, from a constitutional standpoint, funding of speech differs from provision of access to facilities because money is scarce and physical facilities are not. Beyond the fact that in any given case this proposition might not be true as an empirical matter, the underlying premise that the University could discriminate based on viewpoint if demand for space exceeded its availability is wrong as well. The government cannot justify viewpoint discrimination among private speakers on the economic fact of scarcity.

*Rosenberger*, 515 U.S. at 835. *Accord Graham v. Richardson*, 403 U.S. 365, 374 (1971) ("a concern for fiscal integrity is no more compelling a justification for the questioned classification in these cases that it was in *Shapiro* [*v. Thompson*, 394 U.S. 618 (1969), striking down law requiring one-year residency for entitlement to welfare benefits]"). Moreover, if the Legislature's primary concern was preventing taxpayers' funds from being spent on advocacy, the Legislature would also have banned paying salaries to employees who are engaged in municipalities' lobbying, in advocacy for anti-union causes, and for state employees' representation. The Legislature did no such thing.

Strict scrutiny not only requires a compelling state interest, but also that the statute be "narrowly tailored to achieve that interest." *Citizens United*, 558 U.S. at 340. Here, SB 241 is both underinclusive and overbroad in addressing the purported state interest. It is underinclusive in not banning leaves for state employee representation, leaves for non-labor advocacy nor lobbying expenditures by local governments. "Underinclusiveness raises serious doubts about whether the government is in fact pursuing the interest it invokes, rather than disfavoring a particular speaker or viewpoint." *Brown v. Entm't Merchants Ass'n.*, 131 S. Ct. 2729, 2740 (2011). SB 241 is also overinclusive in banning all paid leave for employee organization work given that the Associations' work benefits not only employees and their organizations, but also the public employer and the public at large. (E.g. Dkt. 6-2, Faulis Decl. ¶¶ 2, 4, 8 [Association oversees benefit plans, fulfills Nevada Legislature's required representational functions and aids recruitment efforts]; Dkt. 6-3, Chaparian Decl. ¶¶ 2, 4, 8 [Association oversees benefit plans, fulfills Nevada Legislature's required representational functions and aids recruitment efforts]; Dkt. 6-4, Johanning Decl. ¶ 8 [Association improves morale and retention]; Dkt. 16-1, Ramierz Decl. ¶ 7 [Association represents members as required by Nevada public policy].) "[A] statute is facially invalid if it prohibits a substantial amount of protected speech." *See United States v. Williams*, 553 U.S. 285, 292 (2008).

Because SB 241 is content-based on its face, it is subject to scrutiny. Yet, under the clear logic of Supreme Court precedent, there is no compelling interest justifying SB 241 and it is not narrowly tailored. Thus, SB 241 is unconstitutional and unenforceable as a matter of law.

**B.     SB 241 Violates the Associations' Rights under the Equal Protection Clause.**

Defendant Metro first challenged the Plaintiff Associations' standing in a motion to dismiss. Plaintiffs responded in depth to Defendant Metro's arguments in its Response, (Dkt. 17), and again explain the merit of their claims below.

**1.     Plaintiff Associations have standing to pursue their Equal Protection claim.**

To meet the standing requirement for an equal protection claim, a plaintiff must "allege that some discriminatory classification prevented the plaintiff from competing on an equal footing in its quest for a benefit." *Northeastern Fla. Chapter, Associated Gen. Contractors of America v. Jacksonville,* 508 U. S. 656, 667 (1993); *see also Adarand Constructors, Inc. v. Pena*, 515 U.S. 200, 211 (1995) ("The injury in cases of this kind is that a 'discriminatory classification prevents the plaintiff from competing on an equal footing.'").

Plaintiff Associations alleged in their Complaint have shown that there were singled out for this economic injury because of their labor union status. Coercing Plaintiffs into curtailing their services infringes upon Plaintiffs' associational and speech rights, their members' associational and speech rights, and the sustainability of Plaintiffs' organizations. SB 241 threatens employee organizations like the Plaintiff Associations with serious, concrete financial harm (Dkt. 6-3, Chaparian Decl. ¶¶ 3-5, 8 [PPA Executive Director]; Dkt. 16-1, Ramirez Decl. ¶¶ 3-7 [PPA Asst. Executive Director]; Dkt. 6-2, Faulis Decl. ¶ 3 [PMSA Chairman]; Dkt. 16-2, Supp. Faulis Decl. ¶¶ 1-3.) "[C]oncrete and demonstrable injury to the organization's activities—with the consequent drain on the organization's resources—constitutes" injury for the purposes of Article III standing. *See Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379 (1982) (finding an advocacy group's alleged loss of resources sufficient to establish injury in fact); *see also NAACP*, 357 U.S. at 459-60 ("The reasonable likelihood that the Association itself through diminished financial support and membership may be adversely affected . . . is a further factor pointing towards our holding that [the Association] has standing to complain . . . .").

11

Despite Defendant's assertion, Plaintiffs do not need to show that the Associations are members of a protected class to have standing to bring a claim under the Equal Protection Clause, only that the government has classified persons in a way that injured the Plaintiffs. *See Fitzgerald v. Racing Ass'n of Cent. Iowa*, 539 U.S. 103, 107-08 (2003) (reviewing merits of taxation scheme that differentiates among sources of income, which harmed racetracks); *New Orleans v. Dukes*, 427 U.S. 297, 303 (1976) (reviewing merits of appearances ordinance which harmed some pushcarts). In fact, the Supreme Court has recognized "class of one" Equal Protection claims. *E.g. Village of Willowbrook v. Olech*, 528 U.S. 562, 564-65 (2000); *Sioux City Bridge Co. v. Dakota County*, 260 U. S. 441 (1923*); Allegheny Pittsburgh Coal Co. v. Commission of Webster Cty.*, 488 U. S. 336 (1989). In short, Plaintiffs have made the requisite showing to meet Article III's standing requirement.

### 2. SB 241 violates the Associations' rights.

The Fourteenth Amendment commands that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. Amend. XIV. Employee organizations, including Plaintiff Associations, have been targeted for unequal treatment under Nevada law. SB 241 prohibits local government employers from providing paid union leave to employees "performing duties or providing services for an employee organization." SB 241, § 1. It does not affect any other form of paid leave provisions that permits government employees to associate or advocate. *See*, *supra*, Part II.B.

### 3. Strict scrutiny applies.

Because the speech of labor organizations falls within a protected category,[1] strict scrutiny is required for Equal Protection analysis under the Fourteenth Amendment. *See Clark v. Jeter*, 486 U.S. 456, 461 (1988) ("[C]lassifications affecting fundamental rights are given the most exacting scrutiny."). Indisputably, the First Amendment right to free speech is a fundamental right. *See Mosley*, 408 U.S. at 101 & n.8 ("The Equal Protection Clause requires that statutes affecting First Amendment interests be narrowly tailored to their legitimate objectives."). Because the First Amendment right to free speech is

---

[1] It is clear that most labor speech, even that criticizing a particular employer, receives a higher degree of protection than commercial speech. See, e.g., *Thomas v Collins*, 323 U.S. 516 (1945); *Edward J. DeBartolo Corp. v. Florida Gulf Coast Building & Constr. Trades Council*, 485 U.S. 568, 576 (1988); *Sheet Metal Workers Int'l Assn v. NLRB*, 491 F.3d 429, 437 (D.C. Cir. 2007).

a fundamental right, the court should apply strict scrutiny under the Equal Protection Clause to laws impacting First Amendment rights and discriminating based on speech classifications. *See Barr v. Lafon*, 538 F.3d 554, 576 (6th Cir. 2008) ("[W]e apply strict scrutiny under the Equal Protection Clause to a statute infringing on speech protected by the First Amendment...."); *Denney v. Drug Enforcement Admin.*, 508 F. Supp. 2d 815, 835-36 (E.D. Cal. 2007) (applying strict scrutiny to an Equal Protection analysis of a law infringing on the right to free speech).

### 4. Defendant Metro failed to justify SB 241's discrimination.

Because SB 241 is subject to strict scrutiny, the government must prove that SB 241 has been "tailored to serve a substantial governmental interest." *Mosley*, 408 U.S. at 99. Defendant Metro has not adduced such evidence and it is not conceivable what that evidence could be; strangling unions financially does not qualify as a narrowly tailored government action. Whenever "state action . . . may have the effect of curtailing the freedom to associate [it] is subject to the closest scrutiny." *NAACP*, 357 U.S. 460-61. Thus, SB 241 fails on Equal Protection grounds as a matter of law.

Even if rational-basis review applied, there is no rational basis for passing a law that bans paid leave for union activities while leaving other speech and associational activities untouched. "The State may not rely on a classification whose relationship to an asserted goal is so attenuated as to render the distinction arbitrary or irrational." *Cleburne v. Cleburne Living Center, Inc.*, 473 U.S. 432, 446 (1985) (quoting *Zobel v. Williams*, 457 U.S. 55, 61-63 (1982)). This law merely amounts to union animus, and cannot withstand constitutional scrutiny. "For if the constitutional conception of 'equal protection of the laws' means anything, it must at the very least mean that a bare congressional desire to harm a politically unpopular group cannot constitute a legitimate governmental interest." *U.S. Dept. of Agriculture v. Moreno*, 413 U. S. 528, 535 (1973) (declaring statutory amendment invalid under Equal Protection Clause); *see also Willowbrook*, 528 U.S. at 564-65 (suggesting that mere dislike is not a rational basis for state action); *Lawrence v. Texas*, 123 S. Ct. 2472, 2485-86 (2003) (O'Connor, J., concurring) (discussing the role of bare desire to harm in equal protection jurisprudence).

Where the government attempts to regulate activities "based on the content of their expression," the regulation is "far from being tailored to a substantial governmental interest, . . . . [and] under the Equal Protection Clause, it may not stand." *Mosley*, 408 U.S. at 102. As explained above, SB 241, on

13

its face, regulates activities based on content and targets unions. The government cannot show that this type of regulation is narrowly tailored to a substantial government interest.

### C.    Plaintiffs' Claims Are Not Moot.

Plaintiff Associations do not dispute that the parties have negotiated collective-bargaining agreements, yet, these agreements do not moot the lawsuit. SB 241 is still in full force and effect. Nev. Rev. Stat. § 288.225. Defendant Metro has never denied relying on SB 241 to bar union officials from taking paid union leave without bargaining concessions. (Dkt. 26; Am. Compl. ¶ 8; Ans. ¶ 8.) Even now, Defendant Metro continues to argue for the constitutionality of the law. (Def.'s Mot. iso MSJ, pp. 8-9.) Defendant Metro's present agreement to refrain from trampling upon the Associations' constitutional rights does not guarantee future restraint. "For if the case were dismissed as moot appellants would be 'free to return to their old ways.'" *Gray v. Sanders*, 372 U.S. 368, 376 (1963) (quoting *United States v. W. T. Grant Co*., 345 U. S. 629, 632 (1953)); *see also Bullock v. Carter*, 405 U.S. 134, 141 n.17 (1972) (reasoning that the legislature's passage of a "contingent, temporary law" to suspend the enforcement of a contested statute did not moot the lawsuit). That is especially true when, as here, Defendant Metro has refused to concede that SB 241 is unconstitutional. *See Armster v. U.S. Dist. Ct.*, 806 F.2d 1347, 1359 (9th Cir. 1986) ("It has long been recognized that the likelihood of recurrence of challenged activity is more substantial when the cessation is not based upon a recognition of the initial illegality of that conduct.").

SB 241 has already injured Plaintiff Associations' economic interests and bargaining positions. As Defendant Metro stated, the parties were forced to negotiate "paid leave time [in] compliance with SB 241." (Dkt. 40, Def.'s Mem. iso MSJ, p. 9.) During the last round of bargaining, Plaintiff Associations had to negotiate these contracts under the threat of SB 241 which weakened their negotiation positions. (Roberts Decl. ¶ 4; Grammas Decl. ¶ 5.) Because of SB 241, the Plaintiff Associations had to make additional concessions beyond what the Associations had ceded in prior negotiations. (Roberts Decl. 3; Grammas Decl. ¶¶ 3-4.) The prior contracts already contained carefully negotiated, balanced provisions. As the Supreme Court of Arizona recognized, paid-union-leave provisions must be viewed as a part of the overall contract agreement. *See Cheatham v. DiCiccio*, 379 P.3d 211, 218 (Ariz. 2016). Paid union leave provisions were given in recognition of the services that

police unions provide to the city employer and the public at large. *Id.* (rejecting the view that union leave provisions do not serve the public interest because "that views too narrowly both the role of public employee unions and the public's interest"). Plaintiff Associations contend that they should not have needed to make additional concessions to support their paid-union leave provisions while other groups are able to establish paid leave for any other purpose whatsoever. SB 241 has already left an unlawful mark.

Furthermore, although Plaintiff Associations survived the last round of negotiations, nothing guarantees that Plaintiffs will be safe from future harm. The current collective bargaining agreements are limited to 3 year terms. (Roberts Decl. ¶ 5; Grammas Decl. ¶ 6.) After three years, the contracts will have to be re-negotiated. (Roberts Decl. ¶ 5; Grammas Decl. ¶ 6.) So long as Defendant Metro can—under color of law and statute—use its leverage to extract further additional concessions from the Associations, then future negotiations threaten to put the Plaintiff Associations at risk. *See Walling v. Helmerich & Payne, Inc.*, 323 U.S. 37, 43 (1944) (holding that defendant's decision to cease offering allegedly illegal contract terms did not moot controversy where defendant failed to acknowledge illegality of conduct).

This case fits squarely with the non-moot case, *Super Tire Engineering Co. v. McCorkle*, 416 U.S. 115 (1974). In that case, the New Jersey legislature passed a statute which provided welfare benefits to union members on strike, including to the petitioner-employers' workers who had stopped work during a labor dispute. *Id.* at 117. The employers sought injunctive and declarative relief, complaining that the strike benefits unlawfully interfered with their collective bargaining rights. *Id.* at 118. By the time the case went before a judge, the strike was over and the parties had entered into new collective bargaining agreements. *Id.* 120-121. Because the dispute was over, the union argued that the case was moot. *Id.* The Third Circuit agreed, but the Supreme Court reversed. *Id.* The Supreme Court found that the employers suffered on-going injury because the law disrupted "the economic balance between labor and management." *Id.* at 124-25. The Supreme Court held: "Where such state action or its imminence adversely affects the status of private parties, the courts should be available to render appropriate relief and judgments affecting the parties' rights and interests." *Id.* at 125. Similarly, here, SB 241's existence continues to burden the economic balance between the Plaintiff Associations and

Defendant Metro.

In light of the concrete risk and genuine dispute between the parties, Plaintiff Associations continue to seek declaratory relief, permanent injunctive relief enjoining the enforcement of the law, damages because the preliminary injunction was not granted, and other relief that the Court may find appropriate. (Am. Compl., p. 6.)

## V.

## CONCLUSION

Although the Plaintiff Associations disagree with Defendant Metro's legal arguments, both parties agree that this matter is appropriate for summary judgment.

Dated: May 24, 2018                    Respectfully submitted,


                                       /s/ Kimberley C. Weber
                                       Richard McCracken
                                       Kimberley C. Weber
                                       McCRACKEN, STEMERMAN & HOLSBERRY
                                       1630 S. Commerce Street, Suite A-1
                                       Las Vegas, NV 89102
                                       Tel:    702-386-5107
                                       Fax:    702-386-5132

                                       *Attorney for Plaintiffs*

1

## **CERTIFICATE OF SERVICE**

2
3
4

      The certify that on May 24, 2018, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal and a Notice of Electronic Filing was electronically transmitted from the court to the e-mail address on file.

5
6

                        */s/ Marcie Boyle* _____

7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28